Christopher H. Knauf, State Bar No. 185180
 *ck@goodlaw.biz*
Alexandra Robertson, State Bar No. 298637
 *alex@goodlaw.biz*
KNAUF ASSOCIATES
2001 Wilshire Blvd, Suite 320
Santa Monica, California 90403
Tel: (310) 829-4250;  Fax: (310) 622-7263

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| C.L., an individual;<br><br>           Plaintiff,<br>     v.<br><br>DEL AMO HOSPITAL, INC., a California corporation; and DOES 1-10, inclusive,<br><br>           Defendants. | Case No.:   8:18-cv-00475<br><br>**COMPLAINT FOR DAMAGES, INJUNCTIVE AND DECLARATORY RELIEF**<br><br>1. Americans with Disabilities Act (42 U.S.C. §§ 12181 *et seq.*);<br>2. Rehabilitation Act of 1973 (29 U.S.C. §§ 794 *et seq.*);<br>3. Unruh Civil Rights Act (Cal. Civil Code §§ 51 *et seq.*);<br>4. Unfair Competition Law (Cal. Civil Code §§ 17200 *et seq.*);<br>5. Negligence / Negligence Per Se;<br>6. Intentional Infliction of Emotional Distress. |

# INTRODUCTION

Plaintiff C.L. hereby alleges the following facts and submits the following claims for relief against Defendants DEL AMO HOSPITAL, INC., and DOE Defendants 1 through 10:

1. Plaintiff C.L. holds a Ph.D. and is a practicing licensed speech pathologist. C.L. also has been clinically diagnosed with Post Traumatic Stress Disorder (PTSD), as well as Depression and Anxiety. These disorders result in hyper-vigilance, anxiety attacks, flashbacks, suicidal ideation, and self-harming behaviors, among other consequences, and substantially impact C.L.'s functioning in everyday life.

2. Under advice from her treating medical providers, C.L. uses the assistance of a service dog, Aspen, that has been individually trained to do work and perform tasks to assist C.L. with her daily functioning that is impacted by her disabilities, including to alleviate or avoid hyper-vigilance, heightened anxiety, anxiety attacks, flashbacks, sensory overload, suicidal ideation, and self-injurious behaviors.

3. C.L. has been voluntarily admitted to inpatient mental health treatment at the facility owned, leased and/or operated by Defendant Del Amo Hospital, Inc. ("Del Amo"), on certain occasions from 2015 to the present. C.L. alleges that on each of her stays at Del Amo Hospital for in-patient treatment, denied her reasonable accommodation or modification of its policies when the hospital refused to permit Aspen to accompany her, and would only admit her without her service dog. As a result, C.L. has experienced significant emotional distress, including hyper-vigilance, flashbacks, sensory overload, increased anxiety, anxiety attacks, suicidal ideation and self-injurious behaviors without her service dog present to perform those tasks that alleviate these symptoms.  In addition, C.L. has incurred out-of-pocket expenses, including boarding her service dog while she was in treatment, as well as additional training for her service dog.

4. C.L. brings this action against Defendants for their violations of Title III of the Americans with Disabilities Act (42 U.S.C. §§ 12181 *et seq.*), the Rehabilitation Act of 1973 (29 U.S.C. §§ 794 *et seq.*); California's Unruh Civil Rights Act (Cal. Civil Code §§ 51 *et seq.*), California's Unfair Competition Law (Cal. Civil Code §§ 17200 *et seq.*); common law negligence and negligence per se, as well as intentional infliction of emotional distress. C.L. seeks declaratory and injunctive relief to permit her admission to in-patient treatment at Del Amo Hospital accompanied by her service dog. C.L. further seeks treble her actual damages, consisting of emotional distress, as well as the out-of-pocket expenses.

## JURISDICTION AND VENUE

5. As this action arises in part under the Americans with Disabilities Act, this Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a), and has jurisdiction over the claims for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

6. Venue is proper in the Central District of California under 28 U.S.C. § 1391(b), as the events at issue occurred in this judicial district.

## PARTIES

7. At all relevant times, Plaintiff C.L. has had Post Traumatic Stress Disorder (PTSD), as well as Depression and Anxiety, which substantially limit her daily functioning and major life activities, including but not limited to eating, drinking, socialization, remaining alert in the present moment, driving, and sleeping. As such, C.L. is and has been a person with a disability within the meaning of the Americans with Disabilities Act ("ADA") and California Government Code section 12926. C.L. at all relevant times has resided in Orange County, California.

8. Plaintiff is informed, believes, and based thereon alleges that at all relevant times Defendant DEL AMO HOSPITAL, INC. ("Del Amo"), has been a

California corporation that administers mental health in-patient treatment programs at a facility known as Del Amo Hospital, located at 23700 Camino Del Sol, Torrance, California. At all relevant times, Del Amo has been a "person who owns, leases (or leases to), or operates a place of public accommodation" within the meaning of the ADA (42 U.S.C. §12182), and a "business establishment" within the meaning of the Unruh Civil Rights Act (Cal. Civ. Code §§ 51 *et seq.*).

9. The identities of Defendants DOES 1 through 10 are unknown at this time. DOES 1 through 10 are alleged to be in some manner responsible for the violations of law alleged by Plaintiff. Plaintiff will amend this Complaint when their identities become known.

10. At all relevant times, all Defendants and each of them, were acting in concert with each other and were the agent, principal, subsidiary, representative, alter ego, officer, employer, employee, manager, director, shareholder, partner, co-conspirator, aider and abettor, and fiduciary in proximately causing the injuries and damages alleged herein.

11. At all relevant times, all Defendants and each of them were legally responsible to Plaintiff for each of their co-defendants' wrongs, acts, and omissions alleged herein as though they had each committed each act themselves, and at all times authorized, directed, and ratified the acts and omissions of each remaining defendant.

## ADDITIONAL FACTS COMMON TO ALL CLAIMS

12. C.L. has been diagnosed with Post Traumatic Stress Disorder (PTSD), Depression and Anxiety since the early 2000s.

13. C.L.'s diagnosed disabilities impact her essential functioning in everyday life, including but not limited to:

    a. Diminished feelings of safety and security and heightened concern and worry regarding dangers and threats, which results in hyper-vigilance, and at times can lead to heightened anxiety

and anxiety and/or panic attacks, which interfere with daily activities, such as socialization, or showering or bathing;

b. Flashbacks, sensory overload, and anxiety attacks, which can result in a freeze response, where she is not alert and aware of what is occurring in the present time, which can interfere with everyday activities, such as driving;

c. Nightmares and difficulty sleeping; and

d. Suicidal ideation and/or engaging in self-harming behaviors.

14. At all relevant times, C.L. has been under the care of medical providers who prescribed C.L. a service animal to assist with her daily functional limitations.

15. C.L. has had her service dog since 2013, and since that time C.L. has individually trained her service dog to do work and perform tasks that are directly related to her disabilities. C.L. trained Aspen with the assistance of an organization that specializes in psychiatric service dog training, as well as professional dog trainers.

16. Specifically, C.L.'s service dog has been trained to perform the following work or tasks, among other functions:

a. Perform a "medical alert" task in which the service dog is cued to intervene and interrupt when C.L. exhibits signs of an onset of an anxiety attack or flashback, and if this psychiatric event is severe, the service dog cues C.L. to take medication as needed;

b. Perform an alert task when C.L. is driving to ensure she remains alert and aware of her surroundings to drive safely;

c. Perform a "corners" task to assist with hyper-vigilance, in which C.L. cues her service dog to lead the way around a corner and alerts her if a person is approaching;

d. Perform an "about face" task to assist with hyper-vigilance, in

which C.L. cues her service dog to positions such that she can see behind C.L. and alert her if a person is approaching;

e. Perform an alert task to assist with hyper-vigilance by alerting C.L. to the presence of persons in close proximity or the vicinity of her living space;

f. Perform an alert task to assist with C.L.'s hyper-vigilance while showering or bathing, in which her service dog is cued to sit in a chair outside/near the bathroom and keep watch while C.L. is in the shower or bathing, and alert her if there is someone approaching;

g. Perform a "boundary control" task, in which in crowded environments or situations where strangers are in close proximity, the service dog moves around C.L. to maintain her personal space;

h. Perform a task to interrupt and wake C.L. from nightmares;

i. Perform a task to interrupt any self-injurious behaviors undertaken by C.L.;

j. Interrupts any repetitive or compulsive behaviors, such as pacing or an impulse to flee;

k. Perform a task to provide "deep pressure therapy," in which the service dog is cued to provide dynamic warmth and pressure to alleviate increased anxiety and sensory overload;

l. Perform a "signal alert" task, which permits C.L. to politely excuse herself from social situations that are beginning to trigger flashbacks, heightened anxiety, or anxiety/panic attacks; and

m. Additionally, Aspen assists C.L. in maintaining a routine of everyday activities, including but not limited to waking, eating,

drinking, going outside, and taking medication.

17. On a number of occasions throughout 2015 to the present, C.L. has been voluntarily admitted to in-patient mental health treatment at the facility Del Amo Hospital located at 23700 Camino Del Sol, Torrance, California, which is owned, leased and/or operated by Defendant Del Amo. These in-patient treatment sessions include:

    a. On or about September 3, 2015 to September 23, 2015;
    b. On or about November 18, 2015 to December 6, 2015;
    c. On or about March 18, 2016 to April 9, 2016;
    d. On or about June 15, 2016 to July 2, 2016;
    e. On or about September 21, 2016 to October 7, 2016;
    f. On or about January 23, 2017 to February 4, 2017; and
    g. On or about August 14, 2017 to August 31, 2017.

18. On each of these above-described in-patient treatment sessions, C.L. contacted Del Amo to inform Defendant that she requires the assistance of her service dog due to her disabilities, and requested that Del Amo permit admission to her service dog to accompany her during her stay at the hospital, as a reasonable accommodation. C.L. alleges that on each of her stays at Del Amo, the hospital refused to permit her service dog to accompany her, and would only admit her without her service dog.

19. Prior to the above-described incidents, C.L. had previously undergone in-patient treatment on a few occasions in 2014, and had similarly alleged that she was denied the reasonable accommodation of permitting her service dog to accompany her. C.L. and Del Amo resolved their dispute regarding those 2014 occasions.

20. At the time of her admission for each of the above-described treatment sessions in 2015-2017, the employees, personnel, decision-makers, or other agents of Defendant Del Amo did not inquire into what work or tasks C.L.'s

service dog was trained to perform to assist her.

21. On at least one occasion when C.L. was refused admission with her service dog, and after she was admitted to in-patient treatment at Del Amo without her service dog, Defendant's employee, agent or personnel inquired as to the work or tasks that her service dog performs, took notes, and appeared to report on this information by phone. Plaintiff is informed, believes, and based thereon alleges the information was reported to a Del Amo supervisor or decision-maker.

22. Plaintiff is informed, believes, and based thereon alleges that Del Amo has in place and operates Del Amo Hospital in accordance with policies or practices that discriminatorily restrict admission of individuals with disabilities with bona fide service animals. Such policies and practices have been in place at all relevant times and are ongoing.

23. Without the assistance of her service dog while in in-patient treatment at Del Amo, C.L. has experienced significant emotional distress. Throughout her in-patient treatment sessions at Del Amo from 2015 to present, C.L. has experienced distress, anguish and heightened mental health symptoms, including hyper-vigilance, flashbacks, sensory overload, increased anxiety, anxiety attacks, suicidal ideation and thought and urges to self-injurious behaviors without her service dog present to perform those tasks that alleviate these symptoms.

24. For example, on or about March 23, 2016 and April 1, 2016, C.L. engaged in self-injurious actions, such as scratching her arms and head banging, that could have been prevented or immediately interrupted by her service dog.

25. In addition, throughout her in-patient treatment sessions at Del Amo from 2015 to present, C.L. has struggled with daily functioning without the assistance of her service dog. For example, due to her hyper-vigilance she suffered unnecessary emotional distress without the "about face," "cornering," and other alert tasks her service dog provides. Additionally, without Aspen, C.L. struggled to shower and bathe independently due to hyper-vigilance, causing flashbacks and

anxiety attacks. In addition, C.L. has suffered from severe nightmares while in treatment at Del Amo without her service dog to interrupt them and alleviate her anxiety.

26. As a result of Del Amo's refusal to permit her service dog to accompany C.L. in their inpatient treatment program, C.L. had no choice but to pay out-of-pocket to board her service dog at a dog kennel. As a result of the time apart from her service dog while she was in treatment, C.L. also incurred costs for additional training, as C.L.'s service dog regresses when in boarding and not performing service dog functions on a daily basis. The financial burden, given C.L.'s limited resources, has further caused her emotional distress.

## FIRST CLAIM FOR RELIEF
## TITLE III OF THE AMERICANS WITH DISABILITIES ACT
## 42 U.S.C. §§ 12181 *et seq*.
## By Plaintiff Against all Defendants

27. Plaintiff re-alleges and incorporates by reference all previous paragraphs.

28. Congress enacted the Americans with Disabilities Act upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms of discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. §12101(a)(2).

29. In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. §12101(b)(1)-(2).

30. Title III of the ADA provides in pertinent part: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of

any place of public accommodation by any person who owns . . . or operates a place of public accommodation." 42 U.S.C. §12182(a).

31. The ADA further provides that "it shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." 42 U.S.C. § 12182(b)(1)(A)(ii).

32. Discrimination under the ADA includes "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services . . ." 42 U.S.C. § 12182(b)(2)(A)(iii).

33. The ADA further prohibits "a failure to make reasonable modification in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileged, advantages, or accommodations to individuals with disabilities…" 42 U.S.C. § 12182(b)(2)(A)(ii).

34. Under the U.S. Department of Justice's regulations implementing the ADA, "a public accommodation shall modify policies, practices, or procedures to permit the use of a service animal by an individual with a disability." 28 C.F.R. § 36.302(c)(1).

35. A service animal is defined as "any dog that is individually trained to do work or perform tasks for the benefit of an individual with a disability, including a … psychiatric, intellectual, or other mental disability" and "[t]he work or tasks performed by a service animal must be directly related to the individual's disability." 28 CFR § 36.104. The U.S. Department of Justice's regulations provide examples of service dog work or tasks, including "providing non-violent protection or rescue work" and "helping persons with psychiatric or neurological

disabilities by preventing or interrupting impulsive or destructive behaviors," among other examples. *Id.*

36. At all relevant times, C.L. has been an individual with a disability within the meaning of the ADA.

37. At all relevant times C.L.'s service dog was individually trained to do work or perform tasks for the benefit of C.L. and the work or tasks performed by a service animal were directly related to her disability.

38. Defendant Del Amo's in-patient treatment program and facility is a "place of public accommodation" within the meaning of Title III of the ADA.

39. By denying C.L. admission to in-patient treatments with her service dog, Defendants have violated Title III of the ADA.

40. Pursuant to 42 U.S.C. §§ 12188(a) and 12205, Plaintiff is entitled to declaratory relief and a preliminary and permanent injunction ordering Defendants to cease its violation of the ADA, as well as reasonable attorneys' fees and costs incurred in bringing this action.

41. As noted in Plaintiff's second claim, a violation of the ADA also constitutes a violation of California state disability rights statutes.

## SECOND CLAIM FOR RELIEF
### SECTION 504 OF THE REHABILITATION ACT OF 1973
### 29 U.S.C. §§ 794 *et seq.*
### By Plaintiff Against All Defendants

42. Plaintiff re-alleges and incorporates by reference all previous paragraphs.

43. Section 504 of the Rehabilitation Act ("Section 504") provides in pertinent part: "[N]o otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance. . . ." 29 U.S.C. §794.

44. At all relevant times, C.L. has been a qualified individual with a disability (also referred to as a "handicapped person") within the meaning of Section 504 and met the eligibility requirements for the receipt of the aids, benefits, services, programs, and activities of Defendant Del Amo.

45. At all relevant times C.L.'s service dog was individually trained to do work or perform tasks for the benefit of C.L. and the work or tasks performed by a service animal were directly related to her disability.

46. At all times relevant to this action, Defendant Del Amo was a recipient of federal financial assistance within the meaning of Section 504, including but not limited to Medicare and Medicaid funds.

47. Through its acts and omissions described herein, Defendants have violated Section 504 and its implementing regulations.

48. Plaintiff is informed, believes, and based thereon alleges that Defendants committed the acts and omissions alleged herein with intent, deliberate indifference, and/or reckless disregard of Plaintiff's rights.

49. As a direct and proximate result of the aforementioned acts, Plaintiff has suffered humiliation, hardship, anxiety, indignity, and significant mental and emotional anguish, as well as out-of-pocket expenses she would not have otherwise incurred.

50. Pursuant to 29 U.S.C. § 794a, Plaintiff is entitled to damages, injunctive relief, and reasonable attorneys' fees and costs.

### THIRD CLAIM FOR RELIEF
### UNRUH CIVIL RIGHTS ACT
### California Civil Code §§ 51 *et seq.*
### By Plaintiff Against All Defendants

51. Plaintiff re-alleges and incorporates by reference all previous paragraphs.

52. California's Unruh Civil Rights Act provides: "All persons within the jurisdiction of this state are free and equal, and no matter what their . . . disability [or] medical condition, are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b).

53. The Unruh Act provides that violations of the Americans with Disabilities Act also constitute violations of the Unruh Act. Cal. Civ. Code § 51(f). As such, Plaintiff's first claim for relief is expressly incorporated as a violation of the Unruh Act.

54. C.L. at all relevant times has been a person with a disability and/or medical condition within the meaning of the Unruh Act.

55. At all relevant times C.L.'s service dog was individually trained to do work or perform tasks for the benefit of C.L. and the work or tasks performed by a service animal were directly related to her disability.

56. Defendant Del Amo's in-patient treatment program and facility are business establishments within the meaning of the Unruh Act.

57. By virtue of the acts and omissions alleged herein, Defendants have violated the Unruh Act.

58. As a direct and proximate result of the aforementioned acts, Plaintiff has suffered humiliation, hardship, anxiety, indignity, and significant mental and emotional anguish, as well as out-of-pocket expenses she would not have otherwise incurred.

59. Plaintiff is entitled to declaratory and injunctive relief, as well as up to three times her actual damages, no less than $4,000 per violation, and reasonable attorneys' fees and costs. Cal. Civ. Code § 52(a).

///

///

///

## FOURTH CLAIM FOR RELIEF
### UNFAIR COMPETITION LAW
### California Civil Code §§ 17200 *et seq.*
### By Plaintiff Against All Defendants

60. Plaintiff re-alleges and incorporates by reference all previous paragraphs.

61. By engaging in the conduct described herein, Defendants have committed acts of unlawful and unfair business practices within the meaning of Unfair Competition Act (Cal. Bus. & Prof. Code §§ 17200 *et seq.*).

62. Plaintiff is informed, believes, and based thereon alleges that the unlawful and unfair business policies or practices conducted by Defendants are ongoing and present a threat and likelihood of continuing discrimination against Plaintiff and other members of the general public with disabilities who require the assistance of a service animal and seek treatment at Del Amo Hospital.

63. Plaintiff seeks declaratory and injunctive relief, as well as restitution of monies spent by Plaintiff as a result of Defendant's unlawful and unfair business practices, as permitted by the Act.

64. Pursuant to California Code of Civil Procedures § 1021.5, Plaintiff is entitled to recover from Defendants reasonable attorneys' fees and costs incurred in bringing this action.

## FIFTH CLAIM FOR RELIEF
### NEGLIGENCE / NEGLIGENCE PER SE
### By Plaintiff Against All Defendants

65. Plaintiff re-alleges and incorporates by reference all previous paragraphs.

66. At all relevant times, Defendants owed a duty of due care to Plaintiff, including a heightened duty of care based on Defendants' special relationship to Plaintiff as her health care provider.

67. Defendants breached their duty of care to Plaintiff by denying Plaintiff the reasonable accommodation of permitting her service dog to accompany her during in-patient treatment. By their acts and omissions, Defendants violated the ADA, Section 504, and the Unruh Act as alleged herein. At all relevant times, Plaintiff has belonged to the class of persons for whose protection these statutes and regulations were adopted.

68. Defendants' breach of duty proximately caused, was foreseeable in causing, and was a substantial factor in causing, Plaintiff to suffer significant emotional distress, including hyper-vigilance, flashbacks, sensory overload, increased anxiety, suicidal ideation and self-injurious behaviors, as well as engaged in self-harm, without her service dog present to perform those tasks that alleviate these symptoms. Plaintiff's damages resulted from an occurrence the nature of which the violated statutes and regulations were designed to prevent. Defendant's breach of duty also resulted in Plaintiff incurring out-of-pocket expenses. Such damages were reasonably foreseeable to Defendants.

69. By virtue of Defendants' acts and omissions as alleged herein, Plaintiff is entitled to an award of compensatory damages in an amount according to proof.

## SIXTH CLAIM FOR RELIEF
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
**By Plaintiff Against All Defendants**

70. Plaintiff re-alleges and incorporates by reference all previous paragraphs.

71. Defendants' actions, in callously denying Plaintiff admission accompanied by her service dog who provides needed assistance, including tasks not only to aid her daily functioning, but also to support her mental health and ensure her safety from self-harm, constitute extreme and outrageous behavior.

72. At all times mentioned herein, Defendants' acts were done with

reckless disregard to the probability of causing Plaintiff to suffer significant emotional distress, including hyper-vigilance, flashbacks, sensory overload, increased anxiety, suicidal ideation and self-injurious behaviors, as well as engaged in self-harm, without her service dog present to perform those tasks that alleviate these symptoms.

73. As a direct and proximate result of Defendants' acts, Plaintiff has suffered significant emotional distress in an amount according to proof.

74. Plaintiff is entitled to actual and exemplary damages according to proof.

## PRAYER FOR RELIEF

Plaintiff hereby prays for judgment against Defendants according to proof on all claims for relief, as follows:

1. For a declaration that Defendants' conduct as alleged herein violated the Americans with Disabilities Act, the Rehabilitation Act, and Unruh Civil Rights Act;
2. For a preliminary and permanent injunctive relief to prohibit Defendant Del Amo from discriminatorily denying admission of a bona fide service animal to accompany Plaintiff and other individuals with disabilities to the facilities or during treatment;
3. For statutory and compensatory damages as permitted by law and according to proof at trial, including treble actual damages, pursuant to California Civil Code § 52(a);
4. Interest on compensatory damages at the legal rate from the date of the injury, pursuant to California Civil Code § 3291;
5. Exemplary damages as permitted by law and according to proof;
6. Attorneys' fees and costs of suit, pursuant to 42 U.S.C. § 12188, 42 U.S.C. § 12205, California Civil Code § 52(a), and California Code of Civil Procedure § 1021.5; and

7. For other just and proper relief as the Court may order.

Dated: March 23, 2018

KNAUF ASSOCIATES

*/s/ Christopher H. Knauf*

_____

Christopher H. Knauf
Attorneys for Plaintiff C.L.

-17-
COMPLAINT     *C.L. v. Del Amo Hospital, Inc.*

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby requests a jury trial.

Dated: March 23, 2018

KNAUF ASSOCIATES

*/s/ Christopher H. Knauf*

_____

Christopher H. Knauf
Attorneys for Plaintiff C.L.