1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| C.L.<br><br>     Plaintiff,<br><br><br>     vs.<br><br><br>Del Amo Hospital Inc.; and DOES 1<br>through 10, inclusive,<br><br>     Defendants. | Case No. SA CV 18-00475-DOC (DFMx)<br><br><br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [46]; GRANTING IN PART AND DENYING IN PART PLAINTIF'S PARTIAL MOTION FOR SUMMARY JUDGMENT [49]** |

Before the Court is Defendant Del Amo Hospital's ("Defendant") Motion for Summary Judgment ("Defendant MSJ") (Dkt. 46),[1] and Plaintiff C.L.'s ("Plaintiff") Motion for Partial Summary Judgment ("Plaintiff MSJ") (Dkt. 49). The Court heard oral arguments on June 3, 2019.

## I. BACKGROUND

This case arises out of events related to Defendant's denial of access to Plaintiff's service dog during seven of Plaintiff's inpatient admissions to the Defendant psychiatric hospital.

### A. Facts[2]

Defendant Del Amo Hospital is a psychiatric care hospital. Plaintiff's Statement of Undisputed Facts ("Plaintiff SUF") (Dkt. 49-1) at 2; Defendant MSJ at 1. Plaintiff C.L. has been diagnosed with post-traumatic stress disorder ("PTSD"), depression, and anxiety, and her mental health challenges result in hyper-vigilance, anxiety attacks, flashbacks, suicidal ideation, and self-harming behaviors which substantially affect her everyday functions. Complaint ("Compl.") (Dkt. 1) ¶ 1.

Plaintiff has been voluntarily admitted to in-patient mental health treatment at Del Amo Hospital on at least seven different occasions, from about September 2015 to August 2017. Compl. ¶ 17. Plaintiff alleges that, on each of these seven occasions, she informed Defendant that she required the assistance of her service dog due to her disabilities, and requested admission of her service dog as a reasonable accommodation during her hospital stay. *Id.* ¶ 18. C.L. alleges that, on each of the seven occasions, Defendant refused to permit C.L.'s service dog to accompany her. *Id.* The parties do not dispute that C.L. was admitted on each occasion without her service dog. *See generally* Defendant MSJ, Plaintiff MSJ.

---

[1] The Court takes note of Plaintiff's Objection to Defendant's filing of a Motion for Summary Judgment (Dkt. 47), in which Plaintiff states that Defendant failed to meet and confer in accordance with local rules. Given the import of deciding a Motion for Summary Judgment, the Court notes Plaintiff's Objection, but declines to strike Defendant's Motion for Summary Judgment, finding it more efficacious to decide Defendant's MSJ on its merits.

[2] Unless indicated otherwise, to the extent any of these facts are disputed, the Court concludes they are not material to the disposition of the Motion. Further, to the extent the Court relies on evidence to which the parties have objected, the Court has considered and overruled those objections. As to any remaining objections, the Court finds it unnecessary to rule on them because the Court does not rely on the disputed evidence.

### B. Procedural History

On March 23, 2019, Plaintiff filed the Complaint in the instant action (Dkt. 1). In the Complaint, Plaintiff brings the following six claims: (1) violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181 *et seq.*; (2) violation of the Rehabilitation Act of 1973, 29 U.S.C. §§ 794 *et seq.*; (3) violation of the Unruh Civil Rights Act, California Civ. Code §§ 51 *et seq*; (4) unlawful and unfair business policies or practices in violation of California's Unfair Competition Law ("UCL"), Cal. Business & Professions Code §§ 17200 *et seq.*; (5) negligence and negligence *per se*; and (6) intentional infliction of emotional distress. Compl. ¶¶ 27–74.

On May 25, 2018, Defendant filed a Motion to Dismiss (Dkt. 17). On June 18, 2018, Plaintiff opposed (Dkt. 22) and on June 25, 2018, Defendant replied (Dkt. 23). On August 20, 2018, the Court denied Defendant's Motion to Dismiss (Dkt. 26).

On May 1, 2019, Defendant filed its Motion for Summary Judgment ("Defendant MSJ" or "Def. MSJ") (Dkt. 46). On May 16, 2019, Plaintiff opposed Defendant's MSJ ("Opp'n to Defendant MSJ") (Dkt. 63). On May 23, 2019, Defendant replied ("Reply to Defendant MSJ") (Dkt. 75).

On May 6, 2019, Plaintiff filed its Motion for Partial Summary Judgment ("Plaintiff MSJ" or "Pl. MSJ") (Dkt. 49). On May 13, 2019, Defendant opposed Plaintiff's MSJ ("Opp'n to Plaintiff MSJ"). On May 20, 2019, Plaintiff replied ("Reply to Plaintiff MSJ").

On May 16, 2019, Plaintiff filed a Motion to Strike Defendant's Expert Declarations ("Mot. to Strike") (Dkt. 60). On May 23, 2019, Defendant opposed ("Opp'n to Mot. to Strike") (Dkt. 74), and on May 28, 2019, Plaintiff replied ("Reply to Mot. to Strike") (Dkt. 77).

## II. LEGAL STANDARD

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is to be granted cautiously, with due respect for a party's right to have its factually grounded claims and defenses tried to a jury. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A court must

view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Celotex*, 477 U.S. at 323. When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact as to an essential element of its case. *See Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the burden shifts to the opposing party to set out specific material facts showing a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 248–49. A "material fact" is one which "might affect the outcome of the suit under the governing law . . . ." *Id.* at 248. A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible, evidence identifying the basis for the dispute. *See id.* The Court need not "comb the record" looking for other evidence; it is only required to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty Lobby*, 477 U.S. at 252.

## III. DISCUSSION

### A. Defendant's MSJ

In Defendant's MSJ, it argues that Del Amo did not violate the ADA because the decision not to admit the service dog falls under an exception to reasonable accommodations, because the decision not to admit the service dog was for the health and safety of Plaintiff, and because Plaintiff was not denied the services of the hospital. Defendant MSJ at 9–16. On the basis of Defendant's arguments with respect to the ADA, Defendant also contends that Plaintiff

cannot succeed on her remaining five claims. Mot. at 16–20. In her Opposition, Plaintiff argues that there are issues of genuine dispute as to each of the claims, and that the evidence supports a plausible claim that Defendant violated the ADA in addition to other federal and state law. Opp'n to Defendant MSJ at 1, 8–20.

### 1. ADA Claim

The goal of the ADA, 42 U.S.C.A §§ 12101 is to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." *See What Constitutes "Service Animal" and Accommodation Thereof, Under Americans with Disabilities Act (ADA)*, 75 A.L.R. Fed. 2d 49, 1; *see also* 42 U.S.C. § 12101. "One way the ADA and the associated regulations assist the disabled in achieving equal access is giving persons with disabilities the right to be accompanied by a service animal in places of employment, in government buildings with public access, on public transportation, and in places of public accommodation." 75 A.L.R. Fed. 2d at 1. Under Title III of the ADA, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Discrimination under Title III includes, on the basis of disability, the denial of "the opportunity to participate in or benefit from a good, service privilege, advantage, or accommodation;" and the denial of an "accommodation that is different or separate from that provided to other individuals, unless such action is necessary to provide the individual or class of individuals with a[n]. . . accommodation, or other opportunity that is as effective as that provided to others." 42 U.S.C. § 12182(b)(1)(A)(ii)–(iii).

Further, "individuals with disabilities shall be permitted to be accompanied by their service animals in all areas of a public entity's facilities where members of the public, participants in services, programs or activities, or invitees, as relevant, are allowed to go." 28 C.F.R. § 35.136(g). A place of "public accommodation shall modify policies, practices, or procedures to permit the use of service animals to persons with a disability." 28 C.F.R. § 36.302. A hospital thus improperly discriminates if it "fails to make reasonable

accommodations for a person with a service animal." *Tamara v. El Camino Hospital*, 964 F. Supp. 2d 1077, 1083 (N.D. Cal. 2013). A hospital does not discriminate, however, if either of the following are true: "(1) the accommodation would fundamentally alter the nature of the facility or service it provides, [under] 42 U.S.C. § 12182(b)(2)(A)(ii); or (2) based upon an individual assessment the hospital determines that the service animal poses a substantial and direct threat to health or safety which cannot be mitigated by reasonable accommodations, [under] 28 C.F.R. § 36.208." *Tamara*, 964 F. Supp. 2d at 1083.

If an accommodation fundamentally alters a service or facility, that is an affirmative defense to an action for disability discrimination. *Lentini v. Cal. Ctr. for the Arts, Escondido*, 370 F.3d 837, 845 (9th Cir. 2004). Whether an accommodation causes a fundamental alteration is 'an intensively fact-based inquiry.'" *Lentini*, 370 F.3d at 845 (quoting *Martin v. PGA Tour, Inc.*, 204 F.3d 993, 999 (9th Cir. 2000)).

### a. Right to An Accommodation

Defendant does not appear to dispute that Plaintiff is an individual with a disability within the meaning of the ADA;[3] however, Defendant argues that Plaintiff's dog is more likely than not an emotional support dog and not a service animal, and thus summary judgment in favor of Defendant is appropriate. Defendant MSJ at 20–24. Plaintiff maintains that her dog, Aspen, is a service dog because Aspen is specifically trained to perform numerous tasks that mitigate the effects of Plaintiff's disability. Opp'n to Defendant MSJ at 8; Plaintiff MSJ at 8–11.

A service animal is defined as "any dog that is individually trained to do work or perform tasks for the benefit of an individual with a disability. . . The work or tasks performed by a service animal must be directly related to the individual's disability." 28 C.F.R. § 35.104; 28 C.F.R. § 36.104. Tasks of a service animal may include "helping persons with psychiatric and neurological disabilities by preventing or interrupting impulsive or destructive behaviors." *Id.* On the other hand, "the provision of emotional support, well-being, comfort, or companionship do not constitute work or tasks for the purposes of this definition." *Id.* Guidance

---

[3] *See, e.g.*, Defendant's Statement of Uncontroverted Fact at 3, para. 9 (Dkt. 46-1).

regarding Section 36.104 indicates that "many individuals with PTSD may benefit by using a service animal," and the tasks performed by such a service animal "could include actively cuing the individual by nudging or pawing the individual to alert to the onset of an episode and removing the individual from the anxiety-provoking environment." 28 C.F.R. § Pt. 36. App. A. In addition, the Department of Justice has clarified "an animal that is trained to 'ground' a person with a psychiatric disorder does work or performs a task that would qualify it as a service animal. . . [f]or example, if a service animal sense that a person is about to have a psychiatric episode and it is trained to respond, for example, by nudging, barking, or removing the individual to a safe location until the episode subsides, then the animal has indeed performed a task or done work on behalf of the individual with the disability, as opposed to merely sensing an event." *Id.*

There is a dispute of genuine fact as to whether Plaintiff's dog, Aspen, is a service dog. At the outset, the Court notes that Defendant, in its MSJ, states that Plaintiff's dog is an emotional support dog and not a service dog "more likely than not." Def. MSJ at 20 (formatting omitted). On a motion for summary judgment, the movant must show "there is no genuine dispute as to any material fact," and thus demonstrating that Plaintiff's dog is more likely than not to not be a service dog is not sufficient. *See* Fed. R. Civ. P. 56.

Here, there appears to be an issues of material fact as to whether Plaintiff's dog, Aspen, is a service animal or not. Both Defendant and Plaintiff cite Plaintiff C.L.'s deposition testimony. Defendant points to the following statements of C.L. during her deposition to argue that Aspen is a companion dog rather than a service dog: C.L. states that she is not sure how the dog senses that she is anxious, C.L. states the dog becomes very excited when there is someone unknown near here, and C.L. states that the dog backs up when the dog sees a stranger. Def. MSJ at 22–23 (citing Def. MSJ, Ex. 10). Granted, the behaviors cited by Defendant would not qualify Aspen as a service dog. On the other hand, Plaintiff cites to portions of her declaration and testimony of her psychiatrist, Dr. Michael Foust, who noted in his deposition that "[Plaintiff's dog] provides grounding, so that the individual's back in their body, so to speak, and so they are mentally more present." Plaintiff MSJ, Ex. 7 at 47:17–21. *See also* Plaintiff's

MSJ, Ex. 8. Further, Katie Gonzalez, the founder of a service dog training organization, states that C.L. was accepted into the organization's training program and the organization taught her how to train her psychiatric service dog. Plaintiff's MSJ, Ex. 9 at 4. No expert appears to have assessed the dog with C.L. to determine whether it is a service dog, and Defendant does not produce an expert to state that Aspen is not a service dog.

Accordingly, construing the facts in the light most favorable to Plaintiff, there is a genuine issue of dispute regarding whether Aspen is a service dog, and the Court will not determine that Aspen is not a service dog for the purpose of Plaintiff's claims. Defendant can only be entitled to summary judgment on its ADA claim, then, if it demonstrates that accommodating Plaintiff's service animal would have necessitated a fundamental alteration of Del Amo, or the animal posed a substantial and direct threat to health or safety.

### b. Fundamental Alteration of Del Amo

Defendant argues that permitting Plaintiff to bring her service dog into the facility would have been a fundamental alternation to the nature of services provided because "the hospital would be doing a disservice to plaintiff by failing to provide the full benefit of the services it provides." Def. MSJ at 15. Defendant argues that the hospital's professionals knew "best how to address her psychological symptoms." *Id.* Plaintiff counters that Defendant does not receive deference concerning treatment decisions under the ADA merely because it is a healthcare provider. Opp'n to Def. MSJ at 18.

If an accommodation fundamentally alters a service or facility, that is an affirmative defense to an action for disability discrimination. *Lentini v. Cal. Ctr. for the Arts, Escondido*, 370 F.3d 837, 845 (9th Cir. 2004). *See also Alexander v. Choate*, 469 U.S. 287, 300 (1985). On the other hand, an accommodating facility may be required to make reasonable, rather than fundamental, modifications to accommodate those with a disability. *Alexander*, 469 U.S. at 300. Whether an accommodation constitutes a reasonable modification or a fundamental alteration is not typically determined as a matter of law; rather, the determination is highly fact-specific, requiring a case-by-case inquiry. *Crowder v. Kitagawa*, 81 F.3d 1480, 1485–86 (9th

Cir. 1996); *Chalk v. United States District Court*, 840 F.2d 701,705 (9th Cir. 1988); *Lentini*, 370 F.3d at 845 (quoting *Martin v. PGA Tour, Inc.*, 204 F.3d 993, 999 (9th Cir. 2000)).

Defendant does not provide deposition testimony or other evidence for its contention that accommodating Plaintiff's dog would have caused a fundamental alteration in the services provided by the facility. Defendant does not elaborate regarding how allowing entrance to a service dog would have been a fundamental alteration, rather than a reasonable modification, that would have drastically changed Del Amo or its services. *See* Def. MSJ at 15. Accordingly, Defendant fails to establish the requisite evidence to meet the fundamental alteration exception to necessary accommodations under the ADA.

### c. Animal Poses a Substantial and Direct Threat

Defendant also argues that admitting Plaintiff with her service dog would have been detrimental to her by interfering with effective treatment. Def. MSJ at 11–12. Defendant maintains that the presence of a service dog would have altered the treatment program that C.L. was participating in, and C.L.'s treatment program would have become less effective or ineffective. Def. MSJ at 13. Plaintiff argues that the "direct threat" exception is not applicable to risk to an individual's own health or safety, and that Defendant does not meet the heavy burden of showing a direct threat to health. Opp'n to Def. MSJ at 14–15.

A place of public accommodation "is not required to provide accommodations for disabled persons if the accommodation, based upon an individualized assessment, 'poses a direct threat to the health or safety of others.'" *Tamara*, 964 F. Supp. 2d at 1085 (quoting 28 C.F.R. § 36.208). A 'direct threat' means that "the significant risk cannot be eliminated by a modification of policies, practices, or procedures, or by the provision of auxiliary aids or services," and the entity asserting this direct threat exception "bears a heavy burden of demonstrating that the individual [or accommodation] poses a significant risk to the health and safety of others." *Lockett v. Catalina Channel Exp., Inc.*, 496 F.3d 1061, 1066 (9th Cir. 2007).

Defendant cites a clinician who states that the presence of a service dog during Plaintiff's treatment would have resulted in less effective or ineffective treatment, and therefore would have been detrimental to C.L. Def. MSJ at 13., Ex. 1 at ¶¶ 20–22. However, there is a

genuine issue of fact as to whether the presence of a service dog would have been disruptive to the treatment, as demonstrated by Gonzalez Declaration. *See* Plaintiff's MSJ, Ex. 9 at ¶¶ 15–18 (stating that she has worked with psychiatric hospitals that have found accommodations for service dogs, and that service dogs are trained to be unobtrusive). Moreover, the threat to health and safety exception pertains to a given accommodation that poses a direct threat to the health or safety of *others*. 28 C.R.F. § 36.208. Defendant does not give any indication of whether, or how, allowing Plaintiff to bring her dog into Del Amo would have caused a direct threat to the health or safety of any other individuals in the hospital. As such, Defendant has failed to meet its burden to demonstrate that it was not required to provide an accommodation to Plaintiff,[4] and the Court DENIES Defendant's MSJ as to the ADA claim.

### 2. Rehabilitation Act Claim

Next, Defendant argues that it is entitled to judgment on Plaintiff's Rehabilitation Act claim because its analysis regarding the ADA applies equally to the allegations that the hospital violated the Rehabilitation Act, and because Plaintiff was not denied the services or psychiatric treatment provided by Del Amo. Def. MSJ at 16–17. Plaintiff argues that she suffered significant harm from Defendant's failure to make reasonable modifications. Opp'n to Def. MSJ at 20–21.

Section 504 of the Rehabilitation Act provides that "no otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance." 29 U.S.C. § 794. There "is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act." *City of Los Angeles v. AECOM Servs.*, 854 F.3d 1149, 1160 (9th Cir. 2017) (quoting *Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999)). "A failure to provide reasonable accommodation can constitute discrimination under Section 504 of the Rehabilitation Act. *Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002); *see also* 28 C.F.R.

---

[4] Defendant and Plaintiff also dispute whether Del Amo should have held an interactive process to determine whether Plaintiff could be accompanied by her service dog. As the Court finds that Defendant has not met its burden to demonstrate it did not need to provide an accommodation, the Court need not address the dispute with respect to the interaction process to providing accommodation.

35.130(b)(7). To make out a prima facie case of discrimination under Section 504, the plaintiff must demonstrate that she "(1) is handicapped, (2) is otherwise qualified to participate in the federally financed program and has been excluded from participation by reason of his or her handicap, and (3) the relevant program receives federal financial assistance." *Sullivan v. Vallejo City Unified School Dist.*, 731 F. Supp. 947, 957 (C.D. Cal. 1990) (citation omitted). The Rehabilitation Act requires accommodation to a plaintiff's disability, and courts have found that exclusion of a service dog can constitute discrimination under Section 504. *See Sullivan*, 731 F. Supp. at 958 (finding that plaintiff made a prima facie case of discrimination under Section 504 of the Rehabilitation where the effect of exclusion of a student's service dog is to exclude the student).

Defendant's conclusory assertions that Plaintiff was provided full treatment are insufficient to demonstrate judgment for the hospital as to the Section 504 claim. Seeing as a "failure to provide reasonable accommodation can constitute discrimination under section of the Rehabilitation Act," *Vinson*, 288 F.3d at 1154, and Defendant has not shown that it was exempt from providing accommodation under the ADA claim, Defendant also cannot conclusively demonstrate that it did not violate the Rehabilitation Act with respect to Plaintiff. The Court thus DENIES Defendant's MSJ as to the Rehabilitation Act claim.

### 3. Unruh Civil Rights Act Claim

Defendant argues that it is entitled to judgment on Plaintiff's Unruh Civil Rights Act claim because, as indicated by Defendant's section regarding the ADA, Defendant's treatment team made a clinical determination that the presence of Plaintiff's service dog would be detrimental to her treatment and thus decided not to permit Plaintiff to bring the dog. Def. MSJ at 17–18. Plaintiff argues that there is sufficient evidence to support an Unruh claim for failure to accommodate Plaintiff's service dog, based on the same reasons Plaintiff can proceed with her ADA claim. Opp'n to Def. MSJ at 21.

The Unruh Civil Rights Act, Cal. Civ. Code § 51(b) provides: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status,

sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). The Unruh Civil Rights Act further provides that "a violation of the right of any individual under the federal Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section." *Id.* § 51(f).

As mentioned above, Defendant has not demonstrated an absence of a dispute of material fact with regard to the ADA claim. Accordingly, Defendant has not demonstrated that there is no dispute of material fact with regarding to the Unruh claim, and the Court DENIES Defendant's MSJ as to the Unruh Civil Rights Act claim.

### 4. Unfair Competition Law Claim

Defendant argues that the underlying claim on which the Unfair Competition Law ("UCL") claim depends, the ADA claim, cannot be maintained, and as such Defendant is entitled to summary judgment as to the unfair competition claim as well. Def. MSJ at 18–19. Plaintiff argues summary judgment would not be appropriate as to the UCL claim because there is significant evidence to support the underlying ADA, Rehabilitation Act, and Unruh claims for failure to accommodate Plaintiff's disability. Opp'n, to Def. MSJ at 23.

The UCL prohibits unfair competition, which includes any "unlawful, unfair, or fraudulent business act or practice" that causes the person[s] asserting a claim to have "suffered injury in fact" and "lost money or property." Cal. Bus. & Prof. Code §§ 17200, 17204. "Unlawful," "unfair," and "fraudulent" are recognized as three separate and distinct theories of liability under the UCL. *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 885 (1999); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009). "Unlawful" has been defined as "an act or practice, committed pursuant to business activity that is at the same time forbidden by law." *Bernardino v. Planned Parenthood Fed. Of Am.,* 115 Cal. App. 4th 322, 351 (2004). Thus, under an "unlawful" theory of liability, the UCL incorporates other laws, and violations of those laws are independently actionable. *AT&T Mobility LLC v. AU Optronics Corp.*, 707 F.3d 1106, 1107 n.1 (9th Cir. 2013) (noting that by prohibiting unlawful

business practices, the UCL "'borrows' violations from other laws by making them independently actionable as unfair competitive practices" (internal quotations omitted)); *Chabner v. United Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000).

The "unfair" theory of liability addresses business practices that "offend[] an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 719 (2001). Additionally, "unfair" has not been singularly defined under the UCL, but three tests have emerged from the California Court of Appeal to analyze a violation of this prong. *See Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257–58 (2010). Several courts have utilized the "balancing test," which looks to whether the alleged practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim. *Id.*

Defendant argues that Plaintiff's UCL claim is based on her underlying ADA, Rehabilitation Act, and Unruh claims, and thus summary judgment should be entered against Plaintiff as to the UCL claim because the latter three claims are not tenable. Granted, when summary judgment is granted for a claim on which the UCL claim depends, the defendant is entitled to summary judgment on the UCL claim as well. *See Krantz v. BT Visual Images, LLC.*, 89 Cal. App. 4th 164, 178 (2001). However, as stated above, Defendant is not entitled to summary judgment on the ADA, Rehabilitation Act, or Unruh claims. The Court previously found that Plaintiff's UCL claim could be made based on these three underlying claims. *See* Order Denying Defendant's Motion to Dismiss (Dkt. 26), Aug. 20, 2018. As the underlying claims remain live during the summary judgment stage, Defendant's argument that summary judgment for the UCL claim should be granted based on the status of the three underlying claim is not tenable. Construing the evidence in the light most favorable to Plaintiff, there remains a dispute of material fact as to the three substantive claims that underlie her unfair competition claim under the 'unlawful' theory of liability, and it remains unclear which party would be

successful under the balancing test within the 'unfair' theory of liability under unfair competition law. The Court thus DENIES Defendant's MSJ as to the UCL claim.

### 5. Negligence/Negligence Per Se Claim

Defendant argues that it is entitled to summary judgment on the negligence *per se* claim because Plaintiff has failed to set forth a viable claim for a statutory or regulatory violation. Def. MSJ at 19. Plaintiff argues that a negligence *per se* claim remains viable due to plausible violations of the ADA, Rehabilitation Act, and Unruh Act, and that a negligence claim remains viable because Defendant was aware that Plaintiff uses her service dog to assist in managing her mental health conditions. Opp'n to MSJ at 24–25.

"The elements of a cause of action for negligence are well established. They are (a) a *legal duty* to use due care; (b) a *breach* of such legal duty; [and] (c) the breach as the *proximate or legal cause* of the resulting injury." *Evan F. v. Hughson United Methodist Church*, 8 Cal. App. 4th 828, 834 (1992) (emphasis in original) (internal citations omitted). Additionally, "[t]he presumption of negligence arises if: (1) the defendant violated the statute; (2) the violation proximately caused the plaintiff's injury; (3) the injury resulted from the kind of occurrence the statute was designed to prevent; and (4) the plaintiff was one of the class of persons the statute was intended to protect." *Jacobs Farm/Del Cabo, Inc. v. Western Farm Service, Inc.*, 190 Cal. App. 4th 1502, 1526 (2010).

Again, as stated above, a genuine dispute of material fact remains as to Plaintiff's ADA, Rehabilitation and Unruh claims, and thus these claims remain to serve as the basis for negligence *per se* liability. As to the negligence claim, Plaintiff has presented evidence that Defendant had a legal duty toward Plaintiff, Defendant knew of Plaintiff's disability, and Defendant failed to accommodate Plaintiff's service dog, resulting in harm. *See* Plaintiff MSJ, Ex. 7 at 47:17–21. *See also* Plaintiff's MSJ, Ex. 8. *See generally* Plaintiff's MSJ, Ex. 9. Thue Court therefore DENIES Defendant's MSJ with respect to the negligence/negligence per se claim.

### 6. Intentional Infliction of Emotional Distress Claim

Defendant argues that it had a comprehensive policy regarding non-discrimination of persons with service dogs and adhered to that procedure; accordingly, Defendant argues its decision not to admit the dog was based on sound clinical judgment, and there is no evidence that Del Amo intended to cause harm to Plaintiff. Def. MSJ at 20. Plaintiff argues that Defendant's disregard of its obligation to make the reasonable modification of permitting a service animal is outrageous and can form the basis of an intentional infliction of emotional distress ("IIED") claim.

"The elements of a prima facie case for the tort of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Wilson v. Hynek*, 207 Cal. App. 4th 999, 1009 (2012) (quoting *Cervantes v. J.C. Penney Co.*, 24 Cal. 3d 579 (1979)). To constitute "outrageous" conduct, a defendant's conduct "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Davidson v. City of Westminster*, 32 Cal. 3d 197, 209 (1982) (citing *Alcorn v. Anbro Engineering, Inc.*, 2 Cal. 3d 493, 499 n.5 (1970)). Courts have found that whether a plaintiff suffered "severe or extreme emotional distress" as necessary to succeed on an IIED claim depends, in part, on whether the plaintiff's emotional distress was "enduring." *Plascencia v. U.S.*, 2018 WL 6133713, at *11 (C.D. Cal. May 25, 2018) (citing *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1246 (9th Cir. 2013); *McTimmonds v. Alcohol & Drug Testing Services, LLC*, 2014 WL 6835636, at *4 (E.D. Cal. Dec. 3, 2014)).

Here, Plaintiff raises sufficient evidence to move forward with her IIED claim. Defendant cites to *Miller v. Fortune Commercial Corp.*,[5] in which the California Court of

---

[5] Here, Defendant attaches its policy and procedure with regard to service animals to its MSJ. Def. MSJ, Ex. 8. In Defendant's policy and procedure, the facility describes clear procedures for inpatient stays, stating that patients must clearly describe what service the animal provides, that patients must provide the admitting department with a copy of the animal's vaccination history, and that the hospital may consider many factors before accepting a patient with a service animal. Def. MSJ, Ex. 8 at 2.

Appeals granted the defendants summary judgment on their IIED claim with regard to a service animal. 15 Cal. App. 5th 214, 229 (2017). However, the court in *Miller* noted that the plaintiff conceded that his IIED claim was premised on his statutory violation claims, and consequently, the court granted summary judgment on the IIED claim after finding defendants entitled to summary judgment on the statutory claims. *Miller*, 15 Cal. App. 5th at 143. In contrast, the Court here finds that Defendant is not entitled to summary judgment on Plaintiff's statutory claims. Further, Plaintiff provides evidence for the argument: (1) that Del Amo displayed reckless disregard for the probability of causing emotional distress by failing to accommodate Plaintiff's service dog, *see* Opp'n to Def. MSJ., Ex. 2 at 65–66 (describing the function of Plaintiff's service dog); (2) that Plaintiff suffered server emotional distress, both during and following her stay at the facility, *see* Plaintiff Statement of Genuine Dispute, Ex. B. (details emotional distress during stay) & Opp'n to Def. MSJ, Ex. 6 at 49–50 (details about emotional distress following stay); and (3) that Del Amo's refusal to allow Plaintiff to be accompanied by her service dog caused the emotional distress. *See exhibits mentioned above*. Plaintiff thus provides evidence regarding emotional distress caused by the denial of admission to her service dog, and the Court DENIES Defendant's MSJ as to the IIED claim.

For the aforementioned reasons, the Court DENIES Defendant's Motion for Summary Judgment in its entirety.

### B. Plaintiff's MSJ

Plaintiff seeks partial summary adjudications that (1) Del Amo Hospital is a public accommodation under Title III of the ADA, and (2) that Plaintiff's dog, Aspen, is a "service animal" protected by the ADA and Section 504 of the Rehabilitation Act, as well as the California statutes that incorporate the federal law violations. Pl. MSJ at 2.

### 1. Public Accommodation

Plaintiff argues she is entitled to summary adjudication that Defendant is a public accommodation under Title III of the ADA because Del Amo is a hospital and thus qualifies as a public accommodation. Pl. MSJ at 6–8. Defendant counters that the locked psychiatric ward at Del Amo does not qualify as a public accommodation. Opp'n to Pl. MSJ at 3–5.

Under Title III of the ADA, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). A hospital is included within the definition of a place of public accommodation. 42 U.S.C. 12181(7)(F)." The phrase 'public accommodation' is defined in terms of 12 extensive categories [one of which lists hospitals], which the legislative history indicates 'should be construed liberally' to afford people with disabilities 'equal access' to the wide variety of establishments available to the nondisabled." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 677–78 (2001) (citing S.Rep. No. 101–116, P. 59 (1989); H.R.Rep. No. 101–485, pt. 2, P. 100 (1990), U.S. Code Cong. & Admin.News 1990, pt. 2, at pp. 303, 382–383).

Here, there is no genuine dispute of material fact that the entirety of Del Amo Hospital is a place of public accommodation. As the legislative history of the ADA indicates, "public accommodation" should be construed broadly, and a hospital is specifically named as a place of public accommodation by statute. *See* 42 U.S.C. 12181(7)(F). Further, at least one court has considered the circumstance of a patient with a disability being denied access for their service animal in a locked psychiatric ward, and found that the facility as a whole was a place of public accommodation. *Tamara*, 964 F. Supp. 2d at 1082–83 (defendant hospital refused plaintiff's service animal entry to the lock psychiatric ward; the court found there was "no dispute" as to the hospital's status as a place of public accommodation). Defendant counters that the language of public accommodation is vague, and that the Department of Justice has provided guidance on where service animals may be excluded. Opp'n to Pl. MSJ at 3. However, the guidance Defendant cites to does not exempt portions of a hospital from being a place of public

accommodation, and merely distinguishes operating rooms and burn units as places service animals may not be able to go because they are sterile environments. These concerns are patently not present in the psychiatric ward of Del Amo Hospital. As such, even construing the facts in the light most favorable to the Defendant facility, the Court finds there is no genuine dispute of material fact that Del Amo Hospital, as a whole, is a place of public accommodation. The Court thus GRANTS Plaintiff's MSJ as to the finding that Del Amo is a place of public accommodation.

### 2. Service Animal

Plaintiff also seeks summary adjudication that her dog, Aspen, is a service animal. However, as noted previously, there is a genuine dispute of material facts as to whether Aspen is a service animal. Plaintiff cites her own training with an organization to learn to train a service dog, but does not provide any evidence or expert testimony regarding the status of Aspen as a service dog. *See* Plaintiff's MSJ, Ex. 9 at 4 (noting that Plaintiff herself was trained, but making no mention of the organization training or interacting directly with Aspen). No expert appears to have assessed the dog with C.L. to determine whether it is a service dog. Accordingly, for the reasons mentioned in Section III(A)(1)(a) of this Order, the Court finds there is a genuine dispute of material fact as to whether Aspen is a service animal. The Court thus DENIES Plaintiff's MSJ as to the determination that her dog is a service animal.

## IV. DISPOSITION

For the foregoing reasons, the Court DENIES Defendant's Motion for Summary Judgment [46] and DENIES IN PART AND GRANTS IN PART Plaintiff's Motion for Partial Summary Judgment [49].

*David O. Carter*

_____

DAVID O. CARTER
UNITED STATES DISTRICT JUDGE

Dated:  June 3, 2019