Christopher H. Knauf, State Bar No. 185180
ck@goodlaw.biz
Alexandra M. Robertson, State Bar No. 298637
alex@goodlaw.biz
KNAUF ASSOCIATES
2001 Wilshire Blvd, Suite 305
Santa Monica, California 90403
Tel: (310) 829-4250; Fax: (310) 622-7263

Jennifer E. Mathis, Admitted *Pro Hac Vice*
jenniferm@bazelon.org
Julia W. Garrison, Admitted *Pro Hac Vice*
juliag@bazelon.org
BAZELON CENTER FOR MENTAL HEALTH LAW
1101 15th Street NW, Suite 1212
Washington, DC 20005
Tel: (202) 467-5730; Fax: (202) 223-0409

Celia McGuinness, Esq. (SBN 159420)
Anthony E. Goldsmith, Esq. (SBN 125621)
DERBY McGUINNESS & GOLDSMITH LLP
300 Lakeside Drive, Suite 1000
Oakland, CA 94612
Telephone: (510) 987-8778
Facsimile: (510) 359-4419
Email: info@dmglawfirm.com

UNITED STATES DISTRICT COURT

IN AND FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| C.L., an individual;<br><br>Plaintiff,<br><br>v.<br><br>DEL AMO HOSPITAL, INC., a California corporation; and DOES 1-10, inclusive,<br><br>Defendants. | Case No.: 8:18-cv-00475-DOC (DFMx)<br><br>**PLAINTIFF'S TRIAL BRIEF**<br><br>Trial Date: July 23, 2019<br>Time: 8:30 a.m.<br>Courtroom: 9D<br>Judge: Hon. David O. Carter |

## INTRODUCTION

The Americans with Disabilities Act mandates that public accommodations, including hospitals, "shall" allow disabled persons to bring their service dogs "in all areas of a public entity's facilities where members of the public, participants in services, programs or activities, or invitees, as relevant, are allowed to go." 28 C.F.R. § 35.136(g). Public accommodations "shall" modify their policies, practices, or procedures "to permit the use of service animals to persons with a disability." 28 C.F.R. § 36.302. A hospital thus improperly discriminates if it fails to admit a service animal, with limited, express exceptions.

Yet Del Amo Hospital has for years refused its patient CL her right to bring her service dog, Aspen, with her for inpatient psychiatric treatment. Despite its understanding -- or at least assumption -- that Aspen is a service dog, Del Amo has excluded Aspen in the belief that Aspen' presence would reduce the benefit of the services it provides CL, and that CL does not "need" Aspen while hospitalized because staff can provide the same services which the dog performs.

Forced to justify its behavior within the statutory framework, on summary judgment Del Amo tried to shoehorn its rationale into the "fundamental alteration" affirmative defense. As the Court recognized in its summary judgment Orders, however, "Defendant does not provide . . . evidence for its contention that accommodating Plaintiff's dog would have caused a fundamental alteration in the services provided by the facility. Defendant does not elaborate regarding how allowing entrance to a service dog would have been a fundamental alteration, rather than a reasonable modification that would have drastically changed Del Amo or its services." Order on MSJ, Docket 80 at 9:3-7.

Nothing has changed since summary judgment. The only new evidence establishes that Aspen is beyond factual dispute a service dog trained to perform tasks related to Plaintiff's disability; and that Del Amo's non-retained expert, the

1  Hospital's former Medical Director, admits he has no empirical basis for his opinion
2  that CL would be better off without her dog in the hospital.
3       Most of Plaintiff's case in chief is not disputed:  Plaintiff is a person with a
4  disability; Del Amo is a public accommodation; Del Amo refused entry to Plaintiff's
5  service dog for seven admissions between 2015 and 2017.  Plaintiff will adduce
6  evidence that Aspen is a service dog, evidence relating to the circumstances under
7  which Del Amo refused her entry, and evidence of the harms caused to CL as a
8  result.  Defendant has no evidence to contradict these facts.
9       The main issue to be determined is whether Del Amo can meet its heavy
10 burden to establish that admitting Aspen would cause a fundamental alteration, in
11 the face of Congress' clear message that service dogs are to be accorded the widest
12 possible accommodation in hospitals.   Defendant's witnesses have a lot of opinions
13 but no evidence to support those opinions.  Plaintiff is confident that at the close of
14 evidence the Court (or the jury) will conclude that Del Amo hospital discriminated
15 against CL by excluding her service dog without a lawful reason.
16
17                          **STATEMENT OF THE CASE**
18
19      Plaintiff filed her Complaint on March 23, 2018. See Docket 1.  After its
20 Motion to Dismiss was denied on date, Defendant filed its Answer on October 25,
21 2018. Docket 33.  On May 1, 2019, Defendant brought a motion for summary
22 judgment and Plaintiff brought a motion for summary adjudication. Docket 46. On
23 June 3, 2019, the Court denied Defendant's motion for summary judgment on the
24 grounds that Plaintiff's dog, Aspen, was not a service dog, and Plaintiff's motion for
25 summary adjudication on the same point.  The Court concluded that the issue
26 remained one of disputed fact because neither party had submitted sufficient
27 evidence to resolve the matter. Docket 80.
28      The Court denied Defendant's motion for summary judgment on the grounds

PLAINTIFF PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

that that admitting Plaintiff's service dog would fundamentally alter the nature of the facility or the service it provides. Docket 80. The Court concluded Defendant had not submitted evidence that admitting the service dog would work a fundamental alteration as opposed to being a reasonable modification of its policies. Docket 80 at 9:3-7. The Court granted Plaintiff's motion for summary adjudication on the question of whether Defendant is a public accommodation, concluding as a matter of law that it is. Docket 80 at 18:3-7. The Court made other rulings which are not relevant to the trial. Docket 80.

Since the ruling on the cross-motions, Plaintiff supplemented the Rule 26 report of her service dog expert, Katie Gonzalez, to include her direct evaluation of Aspen and conclusion that Aspen is a service dog. Defendant deposed Ms. Gonzalez. Plaintiff deposed Defendant's unretained expert, Peter B. Hirsch, M.D., who was one of Plaintiff's treating psychiatrists during her stays at Del Amo Hospital.

For the purposes of trial, Plaintiff has narrowed her causes of action to two: Violation of the Americans with Disabilities Act and violation of the Unruh Act, for discrimination on the basis of disability by refusing entry to her service dog. Docket 138 at 2:12-13. Plaintiff also abandoned her claim for damages entirely, and proceeds to trial only on her remedies of injunctive relief and reasonable attorney fees. Docket 138 at 2:6-10.

At the Pretrial Conference the Court ruled on most Motions *in Limine*. Docket 137. The following Motions *in Limine* are under submission: Plaintiff's motion for a bench trial (See Docket 138) ; Plaintiff's motion to Exclude Evidence that Staff Can Perform Tasks Aspen Performs (See Docket 95); Plaintiff's motion to Exclude Evidence Regarding Defendant's "Clinical Judgement" and "Standards of Care in Consulting the Patient" as related to the Decision to Admit or Exclude the Service Dog (See Docket 102); and Plaintiff's Opposition to Defendant's Motion to

Exclude Evidence or For A Daubert Hearing Regarding Defendant's "Clinical Judgement" as Relating to the Decision to Exclude the Service Dog. (See Docket 124)

## STATEMENT OF FACTS

Defendant Del Amo Hospital is a for-profit hospital and a Public Accommodation. Plaintiff CL is a person with a disability, including diagnoses of Post-Traumatic Stress Disorder and Dissociative Disorder. Plaintiff has been a patient of Del Amo Hospital since 2014. Between 2015 and 2017, Plaintiff admitted herself to the inpatient psychiatric unit seven times, on the following dates:

    a. September 3, 2015 to September 23, 2015
    b. November 18, 2015 to December 6, 2015
    c. March 18, 2016 to April 9, 2016
    d. June 15, 2016 to July 2, 2016
    e. September 21, 2016 to October 7, 2016
    f. January 23, 2017 to February 4, 2017
    g. August 14, 2017 to August 31, 2017

She admitted herself voluntarily for treatment of suicidal ideation. Each time she asked Del Amo's staff if she could bring her service dog, Aspen, with her. Each time she was refused.

CL will testify that she purchased Aspen with the intent of training her as a service dog. She took a 16-hour course from Little Angels Service Dogs in how to train one's own service dog. She will testify how she trained Aspen. She trained Aspen to do the following tasks which benefit her, related to her disability:

    1. Grounding, to assist her PTSD flashbacks, sensory overload, anxiety attacks, suicidal ideation, and urges to self-injure.

2. Cornering, to alert CL if an unfamiliar person is approaching unseen, which to assists her PTSD-related hypervigilance, to enable her to leave her room and decrease her social isolation, as well as perform activities of daily living such as shopping.

3. "About Face," to alert CL if an unfamiliar person is approaching to assist her PTSD-related hypervigilance, to enable her to leave her room and decrease her social isolation., and

4. "Boundary control" to assist her PTSD-related hypervigilance, to enable her to leave her room and decrease her social isolation.

5. Nightmare interruption to interrupt her frequent nightmares and reduce the amount of time it takes for her to come back into reality.

6. "Medical alert" to assist CL manage her Anxiety Disorder by alerting CL if she has heightened anxiety and needs to use additional medication as an intervention to manage her anxiety.

7. "Standing guard to alert" to combat CL's PTSD resulting from sexual assault, including hypervigilance, and to enable functioning in the activities of daily life. CL cues Aspen to sit right outside the bathroom door. Aspen alerts CL if anyone is approaching by either barking and staying by the door, or by approaching the shower where CL can see her. This provides CL with a sense of security so that she is able to shower. Ms. Gonzalez is the Director of Little Angels Service Dogs, a nonprofit service dog training and breeding program. She is a Certified Dog Trainer and an American Kennel Club (AKC) Canine Good Citizen Evaluator. She trains service dogs and has taught more than 500 people to train their own service dogs.

Ms. Gonzalez testified that CL took Little Angels Service Dogs 16-hour course on how to train her own service animal, and received Ms. Gonzalez's book of the same title. CL and Ms. Gonzalez communicated frequently as CL trained Aspen

to be a service animal. Ms. Gonzalez has assessed Aspen in public to ascertain whether she was trained to perform tasks related to CL's disability for CL's benefit. Ms. Gonzalez concluded Aspen is a service dog who is well trained to perform specific tasks, including the grounding task called "deep pressure therapy" or "dynamic pressure" and cornering as well as tasks she could not observe, such as waking from nightmares, and grounding when CL dissociates, but which are common tasks for which service dogs are trained. Ms. Gonzalez testified that CL's description of these tasks, and how she trained Aspen for the tasks, indicate that Aspen is trained appropriately to perform them. Trial Exhibit 15, Deposition testimony of Katie Gonzalez.

CL will testify that she had no choice but to enter Del Amo without Aspen because she was afraid she would die if she did not go in-patient. She will testify that while she was in-patient Aspen regressed in her training and, until CL could retrain her, Aspen was less useful. She will also testify she incurred boarding costs each time she was hospitalized. She will testify that Aspen would have been useful to her in the hospital and that it was more difficult to be there and to get better without Aspen present.

Plaintiff expects Defendant's witnesses to testify that the decision to exclude Aspen was made on the grounds that Aspen would interfere with Plaintiff's therapy. Defendant had no concerns for interference with the therapy of other patients. Defendant did not consider the presence of Aspen to be threat to health or safety of others. Trial Exhibit 16, Deposition of Montes as 30(b)(6) at 127-128; Trial Exhibit 22, Defendant's response to Interrogatory no. 14.

Since summary judgment, the only new evidence adduced on Defendant's affirmative defense was the deposition of Peter B. Hirsch, M.D. He testified that he is the former Medical Director of Del Amo Hospital. He was a designated treating psychiatrist for CL for most of her inpatient admissions. However, he never conducted therapy with her. He never met Aspen. He did not make the decision to

exclude Aspen. He does not know who made the decision but recalls being informed of the decision after the fact. He does not know the reason that Del Amo decided to exclude Aspen, but in "a very soft, soft way" he agrees with the decision. His opinion is "soft" and generalized because he knows nothing about CL's situation or her dog. Trial Exhibit 18, Deposition of Peter B. Hirsch at 30-31. He has done no research and has no empirical basis for his opinion. *Id.* at 17, 43.

## ARGUMENT

**I.  The ADA and Unruh Require a Hospital to Admit Service Dogs with only Limited Exceptions, to Effectuate Congress' Stated Policy of Full and Equal Access for People with Disabilities.**

The goal of the Americans with Disabilities Act is to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." *See What Constitutes "Service Animal" and Accommodation Thereof, Under Americans with Disabilities Act (ADA)*, 75 A.L.R. Fed. 2d 49, 1; *see also* 42 U.S.C. § 12101 *et seq*. "One way the ADA and the associated regulations assist the disabled in achieving equal access is giving persons with disabilities the right to be accompanied by a service animal in places of employment, in government buildings with public access, on public transportation, and in places of public accommodation." 75 A.L.R. Fed. 2d at 1. Therefore, a place of "public accommodation shall modify policies, practices, or procedures to permit the use of service animals to persons with a disability." 28 C.F.R. § 36.302(c)(1). Moreover, "[I]ndividuals with disabilities shall be permitted to be accompanied by their service animals in all areas of a place of public accommodation where . . . program participants . . . are allowed to go." 28 C.F.R. § 36.302(c)(7). "It is intended that the broadest feasible access be provided to service animals in all places of public accommodation, including . . . hospitals." 28 C.F.R. pt. 36, app. C. A hospital thus improperly discriminates if it "fails to make reasonable

accommodations for a person with a service animal." *Tamara v. El Camino Hospital*, 964 F.Supp. 2d 1077, 1083 (N.D. Cal. 2013).

The elements of a claim for failure to allow access to a service dog under the ADA Title III are:

    a. Plaintiff is a person with a disability;

    b. Defendant is a private entity that owns, leases, or operates a place of public accommodation;

    c. Plaintiff was denied equal participation in the enjoyment of goods, services, facilities, privileges, advantages or accommodations of a place of public accommodation by Defendant on the basis of her disability in the following manner:

        i. Plaintiff uses the assistance of a service animal;

        ii. Defendant refused entry to Plaintiff's service dog.

42 U.S.C. § 12182(a), (b); *Tamara v. El Camino Hospital*, 964 F. Supp.2d 1077 (N.D. Cal. 2013).

The elements of an Unruh Act violation that Plaintiff must establish are:

    d. Defendant is a business establishment.

    e. Defendant violated the ADA.

CALJIC Instruction 3060; Cal. Civ. Code § 51(f) (violation of a right protected by the ADA constitutes a violation of the Unruh Civil Rights Act); *Lentini v. California Center for the Arts, Escondido*, 370 F.3d 837 (9th Cir. 2004); *Munson v. Del Taco, Inc.*, 46 Cal.4th 661, 665 (2009). The question of whether Defendant is a business establishment is a question of law for the Court to determine. CALJIC Instruction 3060; *Rotary Club of Duarte v. Bd. of Directors*, 178 Cal. App. 3d 1035, 1050 (Ct. App. 1986). Defendant has not conceded this point officially but does not appear to dispute it, either.

Here, all the elements of Plaintiff's case in chief are resolved except the question of whether Aspen is a service dog.

## II. Aspen is a Service Dog

A service animal is "any dog that is individually trained to do work or perform tasks for the benefit of an individual with a disability, including a physical, sensory, psychiatric, intellectual, or other mental disability. . . . The work or tasks performed by a service animal must be directly related to the individual's disability. . . .." 28 C.F.R. § 36.104; *Clavon v. Roscoe BK Restaurant, Inc.*, 572 Fed. Appx. 487, 488-89 (9th Cir. 2014). The salient characteristic of a service dog is that it is trained. "A pet or support animal may be able to discern that the individual is in distress, but it is what the animal is trained to do in response to this awareness that distinguishes a service animal from an observant pet or support animal." 28 C.F.R. Part 36, Appx. A, "service animal." A service animal is a dog that benefits its owner by the work it performs. *Id.*

Work or tasks that psychiatric service dogs perform includes, "providing non-violent protection," "preventing or interrupting impulsive or destructive behaviors," "assist individuals with disabilities to detect the onset of psychiatric episodes and ameliorate their effects," "reminding individuals to take medicine," "providing safety checks or room searches for individuals with PTSD" and "interrupting self-mutilation." (28 C.F.R. § 36.104); 28 C.F.R. Part 36, Appx. A, "service animal." "Grounding" is a task specifically identified in the regulation as a useful task for people with dissociative identity disorder. 28 C.F.R. Part 36, Appx. A, "service animal."

A person with a disability may train a service dog himself or herself and is not required to use a professional service dog training program. *Id.*; U.S. Dep't of Justice, Frequently Asked Questions about Service Animals and the ADA, Question 5, https://www.ada.gov/regs2010/service_animal_qa.pdf. The DOJ's administrative guidance on ADA compliance is entitled to deference. *Bragdon v. Abbott*, 524 U.S. 624, 646 (1998); *Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 904 (9th Cir. 2019);

*see also* 42 U.S.C. § 12186(b) (DOJ issues regulations); 42 U.S.C. § 12206(c) (DOJ renders technical assistance explaining the responsibilities of individuals and institutions); 42 U.S.C. § 12188(b) (DOJ enforces the ADA).

Plaintiff's service dog expert Katie Gonzalez testified in deposition that Aspen is a trained service dog. She testified that Aspen was trained using standard methods in the service dog field, that the tasks Aspen is trained to perform are commonly-used tasks for psychiatric service dogs, and that she observed Aspen to behave as a service animal is expected to behave, including performing specific tasks for which she has been trained.

CL will testify about how she trained Aspen, the tasks for which Aspen is trained, and how those tasks benefit CL. She will testify that she would have used Aspen to perform those tasks while she was hospitalized, if Aspen had not been excluded.

During the time CL was asking the hospital to admit Aspen, Del Amo never contested that Aspen was a service dog. It has not adduced any evidence that Aspen is not a service dog. Indeed, implicit in its assertion that CL does not "need" Aspen because staff can do what Aspen does, is the concession that Aspen performs tasks that benefit CL.

**III. Neither the Belief that CL Does Not "Need" her Service Dog, nor the Concern that the Dog's Presence may Interfere with Her Treatment, Rises to Proof that the Dog's Presence would Cause a Fundamental Alteration in Del Amo's Inpatient Program.**

Defendant raises one affirmative defense: That admitting Plaintiff with Aspen would "fundamentally alter the nature of" Del Amo's "goods, services, facilities, privileges, advantages, or accommodations." 42 U.S.C § 12182(b)(2)(A)(ii); *see Lentini v. Cal. Ctr. for the Arts, Escondido*, 370 F.3d 837, 845 (9th Cir. 2004); *See also Alexander v. Choate*, 469 U.S. 287, 300 (1985). "Fundamental alteration" is an affirmative defense. 28 C.F.R. § 36.302 (c)(1); 28

C.F.R. § 36.302(c)(7); 28 C.F.R. pt. 36, app. C; *Lentini v. Cal. Ctr. for the Arts, Escondido*, 370 F.3d 837, 845 (9th Cir. 2004). Whether an accommodation causes a fundamental alteration is 'an intensively fact-based inquiry.'" *Lentini*, 370 F.3d at 845 (quoting *Martin v. PGA Tour, Inc.*, 204 F.3d 993, 999 (9th Cir. 2000)).

The elements of fundamental alteration that Defendant must establish are:

a. The nature of Del Amo's services, privileges, advantages and/or accommodations;

b. That admitting Aspen would fundamentally alter nature of Del Amo's services, privileges, advantages and/or accommodations, *i.e.*, change an "essential aspect," a "fundamental character," an "essential attribute" or an "indispensable feature" of Del Amo.

142 U.S.C § 12182(b)(2)(A)(ii); *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 682-687 (2001); *Tamara v. El Camino Hospital*, 964 F. Supp.2d 1077 (N.D. Cal. 2013).

The burden to prove fundamental alteration is a heavy one because the right of service dog access is presumed. The Title III service animal regulation "reflects the general intent of Congress that public accommodations take the necessary steps to accommodate service animals and to ensure that individuals with disabilities are not separated from their service animals," and "[i]t is intended that the broadest feasible access be provided to service animals in all places of public accommodation, including . . . hospitals." *Id.* Part 36 Appx. C, § 36.302 (citing H.R. Rep. No. 101-485(II), at 106 (1990), H.R. Rep. No. 101-485(III), at 59 (1990)); *see also Lockett v. Catalina Channel Express, Inc.*, 496 F.3d 1061, 1066 (9th Cir. 2007). Therefore, it is presumed that the use of a service dog is both "reasonable" and necessary to ensure equal access to the public accommodation." *Johnson v. Gambrinus Co./Spoetzl Brewery*, 116 F.3d 1052, 1060, 1064 (5th Cir. 1997).

Exclusion based on fundamental alteration will be justified only in "rare circumstances." 28 C.F.R. Part 36 Appx. C, § 36.302. "Although places of public

accommodation can adopt blanket policies when service animals would fundamentally alter the nature of the service, such policies are rarely appropriate. Because a determination of whether an accommodation fundamentally alters the nature of a service is 'an intensively fact-based inquiry,' courts focus on the specific facts of individual situations and may require an individualized assessment." *Tamara v. El Camino Hosp.*, 964 F. Supp. 2d 1077, 1083 (N.D. Cal. 2013) (*citing Martin v. PGA Tour, Inc.*, 994 F.Supp. 1242, 1249 (D.Or.1998) (finding an individualized assessment was required) aff'd 204 F.3d 994, 1001 (9th Cir.2000) aff'd, 532 U.S. 661, (2001); *Lentini v. California Ctr. for the Arts, Escondido*, 370 F.3d 837, 845 (9th Cir.2004)).

Excluding service animals due to fundamental alteration must be predicated on the inability to make any feasible modifications to accommodate the animal's presence. For example, in hospitals,

> [t]he only generally recognized exception -- allowing blanket prohibitions of service animals—is in "limited-access areas that employ general infection-control measures" such as those requiring strict hygiene rules and protective barriers like gloves, gowns, and masks. See 28 C.F.R. § 36 app. A, subpt. C (following the Centers for Disease Control and Prevention ("CDC"), Guidelines for Environmental Infection Control in Health–Care Facilities: Recommendations of CDC and the Healthcare Infection Control Practices Advisory Committee ("Guidelines") (June 2003)2); CDC, Guidelines 109. Allowing a service animal in such a place would require a fundamental alteration of the nature of the facility. *Id*. As the CDC notes, '**[n]o infection-control measures regarding the use of barrier precautions could be reasonably imposed on the service animal**.' CDC, Guidelines 109. Thus health care providers may properly have general policies prohibiting service animals from operating rooms, burn units, or similar sterile environments."

*Tamara v. El Camino Hosp.*, 964 F. Supp. 2d 1077, 1083–84 (N.D. Cal. 2013) (emph. added). Thus, the determination of fundamental alteration requires an assessment and determination have been made that there is no reasonable way to

prevent a fundamental alteration. For instance, arguments by a psychiatric hospital that the presence of a service dog may cause reactions in other patients "suggest that the presence of a service animal might affect the ward, but not that it will fundamentally alter its nature. This is in contrast to sterile environments, which would be impossible to maintain in the presence of a service animal." *Id*.

### A. As a matter of Law, Del Amo May Not Exclude a Service Dog on the Grounds that Staff Can Perform the Same Services the Dog Performs

As a matter of law, a hospital may not take into account whether staff are able to perform the same tasks as the service dog service dog user otherwise "needs" her service dog. The DOJ Administrative Guidance, "Frequently Asked Questions about Service Animals and the ADA," states:

> Q14. Does a hospital have to allow an in-patient with a disability to keep a service animal in his or her room?
>
> A. Generally, yes. Service animals must be allowed in patient rooms and anywhere else in the hospital the public and patients are allowed to go. They cannot be excluded on the grounds that staff can provide the same services.

https://www.ada.gov/regs2010/service_animal_qa.html, last visited July 11, 2019. Again, the DOJ's administrative guidance is entitled to deference. *Bragdon v. Abbott*, 524 U.S. 624, 646 (1998); *Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 904 (9th Cir. 2019).

### B. Del Amo's Opinion that Aspen would interfere with CL's Treatment is Speculative and Even if Evidence-Based Would not Rise to A Fundamental Alteration of the Program.

#### 1. The Decision to Exclude a Service Dogs Must be Based on Individualized Evidence, not Assumptions.

1  Like other determinations made under the ADA, exclusion of a service dog based on fundamental alteration must be based on the best available evidence and circumstances individual to the animal in question, "not based on fears or generalizations," speculation or unfounded assumptions. *See* 28 C.F.R. Part 36 Appx. A, § 36.302 ("direct threat" determination); *see also Chalk v. U.S. Dist. Court Cent. Dist. of California*, 840 F.2d 701, 707-708 (9th Cir. 1988) (under 504, determining whether the disabled person is "otherwise qualified" for the program). Trial courts are adjured to consider factors such as (a) the nature of the risk, (b) the duration of the risk, (c) the severity of the risk and (d) the probabilities that the risk will eventuate, causing varying degrees of harm. *Sch. Bd. of Nassau Cty., Fla. v. Arline*, 480 U.S. 273, 287 (1987) (under 504, determining whether the person is "handicapped" within the meaning of the statute); *Crowder v. Kitagawa*, 81 F.3d 1480, 1486 (9th Cir. 1996).

A health care provider in particular has a duty to assess risk based on "the objective, scientific information available to him and others in his profession." *Bragdon*, 524 U.S. at 649; *Chalk v. U.S. Dist. Court Cent. Dist. of California*, 840 F.2d 701, 707-708 (9th Cir. 1988). A subjective belief in the existence of a risk, even one made in good faith, will not shield the decisionmaker from liability. *Id*. The decision must be based upon "particularized facts using the best available objective evidence as required by the regulations." *Echazabal v. Chevron*, 336 F.3d 1023, 1028 (9th Cir. 2003). The provider does not receive special deference concerning its treatment decisions under the ADA merely because it is a health care provider. *Bragdon v. Abbott*, 524 U.S. 624 (1998) at 649-50 (dentist was not entitled to deference under Title III of the ADA for decision to exclude patient with HIV because he believed she posed a risk of transmission).

Speculative concerns or suggestions that the presence of a service animal might affect treatment in a psychiatric hospital do not rise to evidence that the dog will fundamentally alter the nature of the psychiatric hospital. *Tamara v. El*

1 *Camino Hosp.*, 964 F. Supp. 2d 1077, 1084 (N.D. Cal. 2013).  Here, the evidence will show that before deciding to exclude Aspen no one from Del Amo assessed her, observed her in a therapeutic context, or consulted CL or her outpatient therapist about how Aspen behaved during therapy.  Most recently, Dr. Hirsch testified that he has no empirical basis for his opinion that Aspens' presence would interfere with therapy or decrease CL's motivation to treat.  Trial Exhibit 18, Deposition of Peter Hirsch, MD.

### 2. Impact on the quality of CL's therapy, if established, would not work a Drastic Change on the Character of Del Amo's Services, Sufficient to Constitute a Fundamental Alteration.

Even if Defendant had some evidence-based foundation for concluding that Aspen's presence would diminish the impact of its services upon Plaintiff, that diminution does not rise to a fundamental alteration of the character of the program. Del Amo would still be providing the same services; the only factor that might change is how long it took CL to benefit from the services provided.  Only CL has the right to determine how quickly she benefits from services.

As a matter of law, diminution in quality of services provided to a service dog user as a result of the presence of a service dog, if established, is not a basis for excluding a service dog.  The decision to balance the benefits the service dog provides against any loss in quality of services is the sole choice of the service dog user.  *Sullivan By & Through Sullivan v. Vallejo City Unified Sch. Dist.*, 731 F. Supp. 947, 961 (E.D. Cal. 1990).  Similarly, the Justice Department's regulations implementing Title III permit a direct threat defense only with respect to purported threats to the health and safety of others, not to the health and safety of the person with the disability. *C.f.* 28 C.F.R. §§ 36.104, 36.208 (public accommodation not required to serve individual "when that individual poses a direct threat to the health or safety of *others*") with 29 C.F.R. § 1630.2(r) (EEOC's regulations implementing ADA Title I permitting "direct threat" defense when the individual poses a

"significant risk of substantial harm to the health or safety *of the individual or others*." (emph. added.)

The reason that the service dog user is empowered to make the choice, not the hospital, is that access to public accommodations under Title III of the ADA is founded upon the autonomy of people with disabilities. "[D]eference must be shown to the manner in which a handicapped person chooses to overcome the limitations created by her disabling condition." *Sullivan By & Through Sullivan v. Vallejo City Unified Sch. Dist.*, 731 F. Supp. 947, 958 (E.D. Cal. 1990). Speaking of the Rehab Act in a context entirely applicable to the ADA, one court observed, "Put simply, the statute requires accommodation to the plaintiff's handicap; it does not require that she accommodate to the views of the public about her condition. In sum, as long as the choices the handicapped person makes concerning how to effectively address her circumstances are reasonable, the Rehabilitation Act both protects those choices from scrutiny, and prohibits discrimination against the disabled person on the basis of those choices." *Id.* The use of a service dog is presumptively reasonable. A belief that a person should rely less on her service dog, or more on other means of coping with her disability, is not a legitimate basis for excluding a service dog from a public accommodation.

## CONCLUSION

At the conclusion of evidence, Plaintiff will request the Court make findings of fact and conclusions of law that, in sum, determine Defendant Del Amo Hospital unlawfully excluded CL's service dog from its public accommodation. *See* Plaintiff's Proposed Findings of Fact and Conclusions of Law, filed concurrently herewith. Plaintiff will request the Court order an injunction to prevent Del Amo from violating the law in the future, including modification of policies and procedures and training of relevant staff. Plaintiff will also request reimbursement of her reasonable attorney fees, costs and litigation expenses.

Dated: July 16, 2019

KNAUF ASSOCIATES
DERBY, McGUINNESS, & GOLDSMITH, LLP

/s/ Celia McGuinness

By: CELIA McGUINNESS, Esq.
Attorneys for Plaintiff

- 18 -
PLAINTIFF PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW