UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| C.L., | CASE NO. SA CV 18-0475-DOC (DFMx) |
| Plaintiff, | |
| vs. | **FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
| DEL AMO HOSPITAL, | |
| Defendant. | |

# I. INTRODUCTION

A bench trial on this matter was held on July 23–26, 2019.

This action arises out of a dispute regarding admission of Plaintiff C.L.[1] to National Treatment Center ("NTC") program at Defendant Del Amo Hospital ("Hospital" or "Del Amo" or "the facility"). Plaintiff has been voluntarily admitted to the NTC program at Del Amo Hospital on numerous occasions, due to persistent mental health conditions including post traumatic stress disorder ("PTSD") and dissociative identity disorder ("DID"). On at least seven occasions, Plaintiff sought to bring her dog, Aspen, with her during her inpatient stay at the Hospital. Plaintiff argues that Del Amo refused to allow Plaintiff to bring Aspen into the facility with her, in violation of state and federal law. Plaintiff argues that Aspen was a service animal on all occasions, and continues to be a service animal. Defendant Del Amo Hospital maintains that Aspen is not a service animal, and even if Aspen is a service animal, that the facility was not required to allow the dog into the Hospital because doing so would cause a fundamental alteration.

The Court issues the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52. To the extent that any findings of fact are included in the Conclusions of Law section, they shall be deemed findings of fact, and to the extent that any conclusions of law are included in the Findings of Fact section, they shall be deemed conclusions of law.

# II. FINDINGS OF FACT

## A. Background

1. Plaintiff C.L. has a Master's degree in speech-language pathology and holds a PhD in Education with an emphasis in disability studies. Until 2011, when her mental health issues began preventing her from working, C.L. was a full-time public school speech-language pathologist. Trial Transcript, July 23, 2019 ("Transcript Day 1"), Vol. I

---

[1] Plaintiff's name is not disclosed for confidentiality purposes; Plaintiff will be referred to as "C.L." throughout the Court's Findings of Fact and Conclusions of Law.

2

(Dkt. 174) at 56:1–59:15.

2. Plaintiff C.L. has been diagnosed with Complex Post-Trauma Stress Disorder ("PTSD") and Dissociative Identity Disorder ("DID") due to a childhood history of severe trauma, including physical, sexual, and emotional abuse. C.L. also has major depressive disorder and anxiety, though these disorders may be symptoms of PTSD. Transcript Day 1, Vol. I at 48:18–21, 54:10–55:23.

3. As a result of her mental health conditions, C.L. experiences hypervigilance, anxiety, flashbacks, intense nightmares, self-harming behaviors, dissociation, and suicidal ideation. Transcript Day 1, Vol. I at 50:10–51:18; Trial Transcript, July 24, 2019 ("Transcript Day 2"), Vol. II at 10: 4–10; Transcript Day 2, Vol. I at 20:23–21:13.

4. C.L. described hypervigilance as a heightened awareness of what is going on around her, which she can experience when she is away from her home. Transcript Day I, Vol. I at 51–52.

5. C.L.'s disabling conditions negatively affect her functioning; for instance, C.L. finds it anxiety-producing to undress or shower, and finds it difficult to go into public places such as grocery stores to shop. Transcript Day 2, Vol. I at 10:14–12:11.

6. Defendant Del Amo Hospital ("Defendant" or "Del Amo") is a psychiatric hospital located at 23700 Camino Del Sol in Torrance, California. Answer (Dkt. 33) ¶ 6.

7. The National Treatment Center Program ("NTC Program") at Del Amo is a specialized inpatient program for the purpose of trauma stabilization and resolution. Trial Transcript July 25, 2109 ("Transcript Day 3"), Vol. III at 32:4–12; Exhibit 118, National Treatment Center for Trauma Recovery Program Patient Handbook.

8. Dr. Michael Foust is C.L.'s treating, outpatient psychologist. Exhibit 60, Deposition of Michael Foust, at 10:8–16. Dr. Foust recommended that C.L. go to Del Amo due to its treatment program. Exhibit 60 at 33–34.

9. The NTC Program involves programming all day, whereas C.L.'s sessions with Dr. Foust occur for one hour, twice per week. Transcript Day 2, Vol. I at 73:20–74:2.

10. Plaintiff voluntarily checked into the NTC program on seven occasions from September 2015 through August 2017. Order Denying Defendant's Motion for Summary Judgment, Granting in Part and Denying in Part Plaintiff's Partial Motion for Summary Judgment ("MSJ Order") (Dkt. 80) at 2.

### B. C.L.'s Dog, Aspen

11. C.L. began to consider getting a service dog in January 2012. Transcript Day 2, Vol. I at 18:9–21.

12. C.L. considered purchasing a training service dog through an agency, but the lowest price she could find was $15,000, which she could not afford. Transcript Day 2, Vol. I at 23:22–24:12.

13. In an email to C.L. in early August 2013, Dr. Foust indicated that he believed a companion dog would be sufficient for her needs. Transcript Day 2, Vol. II at 11:14–24.

14. C.L. took ownership of her dog, Aspen, in August 2013, when Aspen was eight weeks old. Transcript Day 2, Vol. I at 31:10–19.

### C. Training of Aspen

15. When Aspen was three months old, Plaintiff attended a puppy class at Wags and Wiggles. Transcript Day 2, Vol. I at 32:12–18. Wags and Wiggles does not conduct training specific to service dogs, and is not certified in service dog training. Transcript Day 2, Vol. II at 18:21–19:10.

16. Plaintiff then took a basic obedience class at Wags and Wiggles. Transcript Day 2, Vol. II at 19:23–20:3.

17. In April 2014, Plaintiff contacted Little Angels Service Dogs ("Little Angels"), a service dogs training nonprofit organization, about self-training Aspen to be a service dog. Transcript Day 2, Vol. I at 52:25; Transcript Day 2, Vol. II at 36:20–37:7.

18. Katie Gonzalez is the owner of Little Angels. Exhibit 2, Email from Katie Gonzalez to C.L. dated April 28, 2014, at 1. Little Angel is a nonprofit organization that breeds

|   |     | and trains service dogs, and teaches people with disabilities how to train their own |
|---|-----|---|

1 and trains service dogs, and teaches people with disabilities how to train their own
2 service dogs. Exhibit 2. Little Angels is a candidate member of Assistance Dogs
3 International, a worldwide organization focused on assistance dog training.
4 Transcript Day 3, Vol. II at 33:1–34:5.

19. After Plaintiff contacted Katie Gonzalez in April 2014, Gonzalez informed Plaintiff that Little Angels offers a series of three weekend seminars designed to instruct those who wish to train their own service dog to assist them. Exhibit 2, Email from Katie Gonzalez to C.L. dated April 28, 2014, at 1. Katie Gonzalez informed Plaintiff that certification by Little Angels is granted to the handler/dog teams who attend all 3 seminars, over a period of 6 months or longer, and successfully pass the written test and field test demonstrating their ability to work safely in a public setting, with the dog mitigating the disabilities of the handler/recipient. Exhibit 2 at 1. Gonzalez's email to Plaintiff included locations, dates, and pricing of upcoming seminars. Exhibit 2 at 3. The seminar titles and fees were listed as follows:

   a. Service Dog Training 101 (Seminar 1). Fee: $235.00.
   b. Advanced Obedience and Assistance Tasks (Seminar 2). Fee: $310.00.
   c. Public Access (Seminar 3). Fee: $385. 00. Exhibit 2 at 3.

20. To be certified by Little Angels, in addition to attending all 3 seminars, the dog's owner/handler must communicate with Little Angels once a month during training. Transcript Day 3, Vol. I at 49:1–13. Additionally, Katie Gonzalez/Little Angels must see the dog in question perform service tasks before she will approve the dog for certification. Transcript Day 3, Vol. I at 49:18–51:13.

21. Little Angels Seminar 3 includes a field test referred to as the Public Access Certification Test ("PACT"), designed by Assistance Dogs International. Transcript Day 3, Vol. II at 37:17–38:7. The test includes making sure that the dog in question responds the first time 90% of the time to cues, and responds to commands in

|   |     | different public locations. *Id. See also* Exhibit 38, Little Angels Service Dogs Seminar Booklet. |
|---|-----|---|

22. Plaintiff registered for, and attended, Service Dog Training 101 (Seminar 1) on May 24, 2014 and May 25, 2015. Exhibit 4, Email from Katie Gonzalez to C.L. date May 21, 2014; Exhibit 5, Email Chain between Katie Gonzalez and C.L. date May 25, 2014 to July 10, 2014; Transcript Day 2, Vol. II at 38:4–25. Aspen did not attend this class with Plaintiff, as Seminar 1 is designed for instruction without the dog being present and a great deal of the material covered is concentrated on determining which dog will be suitable. Exhibit 2 at 1; Transcript Day 2, Vol. I at 54:9–55:18.

23. Plaintiff did not attend Seminar 2 or Seminar 3, and accordingly, Aspen and Plaintiff did not receive certification from Little Angels as a service dog/handler team. Transcript Day 2, Vol. I at 58:7–59:8; Transcript Day 2, Vol. II at 40:22–41:10.

24. Plaintiff alleges that she likely trained Aspen to perform a cornering task, an about-face task, and a boundary task in 2014. Transcript Day 2, Vol. I at 62:21–63:23. Plaintiff also alleges that she trained Aspen to perform a medical alert and a task to help her stay alert while driving in 2015. Transcript Day 2, Vol. I at 63:23–65:4, 67:5–16. Plaintiff further alleges that she taught Aspen to perform the tasks of grounding, interruption of self-harm, and sitting guard outside of the shower. Transcript Day 2, Vol. I. at 40:10–43:25, 47:19–48:12; Transcript Day 2, Vol. I at 48:13–22.

### D. C.L.'s Hospitalizations at Del Amo

#### 1. Hospitalizations Prior to Seven Relevant Admissions

25. Plaintiff was voluntarily hospitalized at Del Amo prior to 2015 in addition to her seven hospitalizations. C.L. made her first request to bring Aspen into Del Amo Hospital in April 2014. Transcript Day 3, Vol. IV at 91:24–92:7.

26. Plaintiff alleges Aspen could perform the following tasks by the time of this admission: deep pressure to provide grounding, task mastered by the end of 2013,

Transcript Day 2, Vol. I at 40:10–22; alerting for hypervigilance, *Id.* at 44:21–46:20; alerting for anxiety spikes, *Id.*; and waking C.L. from nightmares, *Id.* at 34:3–8, 35:3–9. Other than C.L.'s assertions, there is no evidence in the record as accepted by the Court that Aspen was trained to perform, and could perform, the outlined tasks. *See id*; *see generally* Plaintiff's Revised Proposed Memorandum of Contentions of Fact and Law (Dkt. 190).

27. Del Amo did not allow Plaintiff to bring Aspen into the facility with her during her April 2014 admission. Transcript Day 2, Vol. I at 86:14–87; Transcript Day 2, Vol. II at 61:20–22, 63:21–64:14.

28. During Plaintiff's July 2014 admission to Del Amo, she brought Aspen to the hospital with her. Del Amo informed Plaintiff that Aspen would not be permitted to remain in the hospital with her. Transcript Day 2, Vol. I at 82:8–84:22.

### 2. Seven Relevant Hospital Admissions

29. During C.L.'s seven relevant admissions to Del Amo's NTC program, from September 2015 through August 2017, Plaintiff was not permitted to bring Aspen with her into the inpatient psychiatric program. Exhibits, 139, 145, 154, 165, 173, 183, 193.

30. In addition to the tasks C.L. alleges that Aspen performed prior to her 2014 hospitalization, C.L. alleges that Aspen was trained to perform the following tasks by mid-2015, *see* Plaintiff's Revised Proposed Memorandum of Contentions of Fact and Law ("Plaintiff's Revised FOFCOL") (Dkt. 190) ¶ 57: a cornering task, an about-face task, and a boundary task *see supra* ¶ 23; a medical alert task, *see supra* ¶ 23; interruption of self-harm, *see supra* ¶ 23; and sitting guard outside of the shower, *see supra* ¶ 23.

31. Other than C.L.'s assertions, there is no evidence in the record accepted by the Court that Aspen was trained to perform, and could perform, the outlined tasks. *See id*; *see generally* Plaintiff's Revised FOFCOL.

32. Upon each admission, C.L. was assessed by the admitting psychiatrist and was hospitalized on a locked, closed unit. Exhibits, 139, 145, 154, 165, 173, 183, 193.
33. The goals articulated by Del Amo staff for C.L.'s admissions including alleviation of suicidal risk, decrease in symptoms of depression and anxiety, improved level of cognitive functioning, decrease susceptibility to PTSD with concurrent decrease in frequency of dissociation, and achievement of a level of psychosocial functioning such that C.L.'s treatment could continue in a less acute setting. *See, e.g.*, Exhibit 165.

### E. 2019 Evaluation of Aspen by Katie Gonzalez

34. The first, and only, instance in which Katie Gonzalez observed C.L. and Aspen together occurred in June 2019. Transcript Day 3, Vol. II at 28:19–30:16.
35. After C.L. attended Little Angels Seminar 1 in May 2014, Gonzalez and C.L. exchanged emails for brief period of time. Transcript Day 3, Vol. II at 30:20–22.
36. Gonzalez and Plaintiff had no contact between 2015 and 2019. Transcript Day 3, Vol. II at 30:3–9. Gonzalez is not able to certify dog handlers without frequent communication with them, as outlined in the Little Angels service dog training program. *Id.* at 31:20–24.
37. Gonzalez and Little Angels adhere to the standards of Assistance Dogs International when training service dogs. Transcript Day 3, Vol. II at 33:21–34:5.
38. As Gonzalez did not observe C.L. with Aspen in 2014, 2015, 2016, 2017, or 2018, Gonzalez could not state whether Aspen was a fully trained service dog during those years. Transcript Day 3, Vol. II at 49:22–51:1.
39. Gonzalez stated that she believes Aspen is a fully trained service dog in 2019. Transcript Day 3, Vol. II at 51:9–12. Gonzalez basis this opinion on her observation and experience after meeting and observing C.L. and Aspen for approximately one-hour and a half. Transcript Day 3, Vol. II at 51:13–15. In contrast, the field test that Gonzalez and Little Angels administer prior to certifying a service dog is three hours

in duration. Transcript Day 3, Vol. II at 51:16–19.

40. Gonzalez has not certified Aspen as a service dog, and will not do so, because C.L. did not meet the standards of Assistance Dogs International as followed by Little Angels. Transcript Day 3, Vol. II at 53:12–54:7.

### III. CONCLUSIONS OF LAW

41. Plaintiff C.L. seeks injunctive relief against Defendant Del Amo for alleged violations of the American with Disabilities Act ("ADA") and the Unruh Civil Rights Act ("Unruh Act"). Order Granting Plaintiff's Motion in Limine to Proceed with Bench Trial (Dkt. 150) at 2.

#### A. Americans with Disabilities Act Claim

42. Under Title III of the ADA, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Discrimination under Title III includes, on the basis of disability, the denial of "the opportunity to participate in or benefit from a good, service privilege, advantage, or accommodation;" and the denial of an "accommodation that is different or separate from that provided to other individuals, unless such action is necessary to provide the individual or class of individuals with a[n]. . . accommodation, or other opportunity that is as effective as that provided to others." 42 U.S.C. § 12182(b)(1)(A)(ii)–(iii).

43. To prevail on a discrimination claim under Title III of the ADA, a plaintiff must show that: "(1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodation by the defendant because of her disability." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007) (citing 42

| | |
|---|---|
| 1 | U.S.C. §§ 12183(a)–(b)). |
| 2 | 44. Further, "individuals with disabilities shall be permitted to be accompanied by their |
| 3 | service animals in all areas of a public entity's facilities where members of the |
| 4 | public, participants in services, programs or activities, or invitees, as relevant, are |
| 5 | allowed to go." 28 C.F.R. § 35.136(g). A place of "public accommodation shall |
| 6 | modify policies, practices, or procedures to permit the use of service animals to |
| 7 | persons with a disability." 28 C.F.R. § 36.302. |
| 8 | 45. A hospital is a place of public accommodation. 42 U.S.C. § 12182(7)(F). A hospital |
| 9 | thus improperly discriminates if it "fails to make reasonable accommodations for a |
| 10 | person with a service animal." *Tamara v. El Camino Hospital*, 964 F. Supp. 2d 1077, |
| 11 | 1083 (N.D. Cal. 2013). |
| 12 | 46. A hospital does not discriminate, however, if either of the following are true: "(1) the |
| 13 | accommodation would fundamentally alter the nature of the facility or service it |
| 14 | provides, [under] 42 U.S.C. § 12182(b)(2)(A)(ii); or (2) based upon an individual |
| 15 | assessment the hospital determines that the service animal poses a substantial and |
| 16 | direct threat to health or safety which cannot be mitigated by reasonable |
| 17 | accommodations, [under] 28 C.F.R. § 36.208." *Tamara*, 964 F. Supp. 2d at 1083. If |
| 18 | an accommodation fundamentally alters a service or facility, that is an affirmative |
| 19 | defense to an action for disability discrimination. *Lentini v. Cal. Ctr. for the Arts*, |
| 20 | *Escondido*, 370 F.3d 837, 845 (9th Cir. 2004). "[W]hether an accommodation causes |
| 21 | a fundamental alteration is 'an intensively fact-based inquiry.'" *Lentini*, 370 F.3d at |
| 22 | 845 (quoting *Martin v. PGA Tour, Inc.*, 204 F.3d 993, 999 (9th Cir. 2000)). |
| 23 | 47. A service animal is defined as "any dog that is individually trained to do work or |
| 24 | perform tasks for the benefit of an individual with a disability. . . The work or tasks |
| 25 | performed by a service animal must be directly related to the individual's disability." |
| 26 | 28 C.F.R. § 35.104; 28 C.F.R. § 36.104. Tasks of a service animal may include |
| 27 | "helping persons with psychiatric and neurological disabilities by preventing or |

interrupting impulsive or destructive behaviors." *Id.* On the other hand, "the provision of emotional support, well-being, comfort, or companionship do not constitute work or tasks for the purposes of this definition." *Id.*

48. Guidance regarding Section 36.104 indicates that "many individuals with PTSD may benefit by using a service animal," and the tasks performed by such a service animal "could include actively cuing the individual by nudging or pawing the individual to alert to the onset of an episode and removing the individual from the anxiety-provoking environment." 28 C.F.R. § Pt. 36. App. A. In addition, the Department of Justice has clarified "an animal that is trained to 'ground' a person with a psychiatric disorder does work or performs a task that would qualify it as a service animal. . . [f]or example, if a service animal sense that a person is about to have a psychiatric episode and it is trained to respond, for example, by nudging, barking, or removing the individual to a safe location until the episode subsides, then the animal has indeed performed a task or done work on behalf of the individual with the disability, as opposed to merely sensing an event." *Id.*

49. Plaintiff C.L. is an individual with a disability within the meaning of the ADA, due to her diagnoses of PTSD and dissociative identity disorder. Transcript Day 1, Vol. I at 48:16–21.

50. Del Amo Hospital is a place of public accommodation. 42 U.S.C. § 12182(7)(F). *See* Order Denying Defendant's Motion for Summary Judgment and Granting in Part and Denying in Part Plaintiff's Motion for Summary Judgment ("Summary Judgment Order") (Dkt. 80) at 17–18.

51. Plaintiff has not shown by a preponderance of the evidence that Aspen was a service animal during the seven admissions in question from 2015-2017. The sole evidence Plaintiff put forth that Aspen was a service animal during this time period is her own testimony that she trained Aspen to perform tasks. *See* Transcript Day 2, Vol. I at 40:10–63:23.

52. Plaintiff attended Little Angels Seminar One, but did not complete the Little Angels training course and did not receive a certification of Aspen as a service animal from Little Angels. Transcript Day 2, Vol. I at 58:7–59:8; Transcript Day 2, Vol. II at 40:22–41:10.

53. Little Angels and Katie Gonzalez did not observe Aspen with C.L. until 2019, nor did any other individual, service dog trainer or otherwise, observe Aspen with C.L. and testify that Aspen was a trained service animal during this time period. Transcript Day 3, Vol. II at 30:3–9; Transcript Day 3, Vol. II 41:22–51:1. Accordingly, the Court finds that Plaintiff has not met her burden to show by a preponderance of the evidence that Aspen was a trained service dog from September 2015 to August 2017.

54. Plaintiff has also not shown by a preponderance of the evidence that Aspen is currently a service animal. Though Gonzalez testified that she believes Aspen is a service animal as of June 2019, the Court finds this testimony is contradicted by the fact that Gonzalez—the owner of Little Angels, which follows the standards of Assistance Dogs International, and an expert dog trainer—is still not willing to certify C.L. and Aspen as a service dog and handler team. Transcript Day 3, Vol. II at 53:12–54:7. Accordingly, the Court finds that Plaintiff has not met her burden to show by a preponderance of the evidence that Aspen is currently a trained service dog.

55. As the Court finds that Plaintiff has not shown Aspen is a service animal, Plaintiff cannot show that she "was denied public accommodation by the defendant because of her disability." *Molski*, 481 F.3d at 730. Therefore, Plaintiff has not met the standard to prevail on a discrimination claim under Title III of the ADA, and has not proven that Defendant Del Amo Hospital was in violation of the ADA by refusing to allow Plaintiff to bring Aspen into the inpatient psychiatric facility with her during the seven admissions in question.

**B. Unruh Civil Rights Act Claim**

56. The Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code § 51(b) provides: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b).

57. The Unruh Civil Rights Act further provides that "a violation of the right of any individual under the federal Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section." Cal. Civ. Code § 51(f).

58. To demonstrate a violation of the Unruh Act, a plaintiff must show that the defendant is a business establishment and that the defendant violated the ADA. *See Lentini*, 370 F.3d at 846–47.

59. As noted above, Plaintiff C.L. has not met her burden to establish that Del Amo Hospital violated the ADA by refusing to allow C.L.'s dog, Aspen, to accompany her into psychiatric care. Therefore, Plaintiff has not met the standard to prevail on an Unruh Act claim. *Lentini*, 370 F.3d at 846–47. Plaintiff thus has not proven that Defendant Del Amo Hospital was in violation of the Unruh Act in not allowing Plaintiff to bring Aspen into the psychiatric facility with her during the seven admissions in question.

## IV. CONCLUSION

After considering the parties' arguments, for the reasons explained above, the Court HOLDS that Plaintiff has not met her burden to establish that Defendant Del Amo violated the Americans with Disabilities Act or the Unruh Civil Rights Act in relation to Plaintiff C.L.'s admissions to Del Amo's inpatient psychiatric facility. Defendant shall submit a proposed judgment in accordance with this Court's ruling **on or before September 9, 2019.**

DATED: September 3, 2019

*David O. Carter*

DAVID O. CARTER
UNITED STATES DISTRICT JUDGE