Scott D. Buchholz, Esq. – State Bar No. 139979
Scott.buchholz@dbt.law
Moira S. Brennan, Esq. – State Bar No. 242126
Moira.brennan@dbt.law
**DUMMIT, BUCHHOLZ & TRAPP**
101 W. Broadway, Suite 1400
San Diego, California 92101-8122
(619) 231-7738
Fax (619) 231-0886

Attorneys for Defendant, DEL AMO HOSPITAL, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

C.L., an individual,

Plaintiff,

v.

DEL AMO HOSPITAL, INC. a California corporation; and DOES 1-10, inclusive,

Defendants.

Case No. 8:18-CV-00475-DOC (DFMX)

DEL AMO HOSPITAL'S BRIEF ON REMAND FROM NINTH CIRCUIT COURT OF APPEAL

Hearing Date: June 3, 2021
Time: 4:00 p.m.

Courtroom: 9D
Judge: Hon. David O. Carter

# TABLE OF CONTENTS

I. ISSUE 1 – WHETHER C.L.'S DOG WAS MORE LIKELY THAN NOT A SERVICE DOG AT THE TIME OF TRIAL........................................1

1. Credibility assessment ......................................................................4

II. ISSUE 2 –WHETHER DEL AMO HOSPITAL PROVED ITS AFFIRMATIVE DEFENSE OF FUNDAMENTAL ALTERATION..............2

# TABLE OF AUTHORITIES

## Cases

*Advanced Cardiovascular Systems v. Medtronic*, 579 F. Supp. 554, 561 (Del. 2008) ........ 13

*Allen v. Iranon*, 283 F.3d 1070 (9th Cir. 2002) ........ 2

*Alpha Distrib. Co. of California v. Jack Daniel Distillery* (9th Cir. 1972) 454 F.2d 442, 453 ........ 1

*Anderson v. City of Bessemer City, N.C.* (1985) 470 U.S. 564 ........ 2

*Civil Aeronautics Board v. Friedkin Aeronautics* (9th Cir. 1957) 246 F.2d 173 ........ 1

*Datascope Corp. v. Kontron, Inc.*, 786 F.2d 398, 401 (D.C. Cir. 1986) ........ 13

*Davis v. Ma* (2012) 848 F.Supp.2d 1105 ........ 6

*Irish v. United States* (9th Cir. 1955) 225 F.2d 3 ........ 1

*Jenkins v. N.Y. City of Dep't of Homeless Servs*., (S.D.N.Y. 2009) 643 F. Supp. 507 ........ 8

*Lentini v. California Center for the Arts, Escondido*, 370 F.3d 837, 845 (9th Cir. 2004) ........ 8

*Olmstead v. L. C. by Zimring*, (1999) 527 U.S. 581 ........ 8

*PGA Tour, Inc. v. Martin* (2001) 532 U.S. 661 ........ 9

*Prindable v. Ass'n of Apt. Owners of 2987 Kalakaua*, 304 F. Supp. 2d 1245, 1256 (D. Haw. 2003). ........ 6

*Tamara v. El Camino Hosp.* (2013) 964 F. Supp. 2d 1077 ........ 8

## Statutes and regulations

Fed. Rules Civ. Proc. 52(a) ........ 1

42 U.S.C. §§12181 ........ 13, 14

28 C.F.R. §36.104 .......................................................................................... 6

Consistent with the request of the District Court, Defendant Del Amo Hospital, Inc. hereby submits this brief of the issues on remand.

**I. ISSUE 1 – WHETHER C.L.'S DOG WAS MORE LIKELY THAN NOT A SERVICE DOG AT THE TIME OF TRIAL**

The Court of Appeal's order indicates the necessity of clarifying the District Court's Findings of Fact and Conclusions of Law rendered after trial. Dkt. 199, 218. The Court of Appeal has instructed: "We remand for the district court to consider whether C.L.'s testimony regarding her self-training of Aspen, coupled with Katie Gonzalez's expert testimony, was sufficient to show that Aspen was 'more likely than not' a qualified service dog at the time of trial. *See Sanchez v. Monumental Life Ins. Co*., 102 F.3d 398, 404 (9th Cir. 1996) (describing the preponderance standard for establishing a fact as 'more likely than not')." Dkt. 218 at p. 26. As such, it would be appropriate for the District Court to clarify its Findings of Fact and Conclusions of Law regarding the bases for finding C.L.'s testimony and that of her expert were insufficient to meet her burden establishing Aspen was a trained service dog.

Findings of fact are required under Rule 52(a), F.R.C.P. The findings "'should be explicit enough to give the appellate court a clear understanding of the basis of the trial court's decision, and to enable it to determine the ground on which the trial court reached its decision.' *Zivkovic v. S. Cal. Edison Co*., 302 F.3d 1080, 1090 (9th Cir. 2002) (quoting Alpha Distrib., 454 F.2d at 453)." See also *Irish v. United States*, 225 F.2d 3, 8 (9th Cir. 1955); *Civil Aeronautics Board v. Friedkin Aeronautics*, 246 F.2d 173 (9th Cir. 1957). If the findings fail to provide such an understanding and a factual basis for the conclusion, the appellate court may appropriately vacate the judgment and remand the cause to the district court for supplemental findings of fact. *Alpha Distrib. Co. of California v. Jack Daniel Distillery*, 454 F.2d 442, 453 (9th Cir. 1972).

Consistent with the opinion expressed by the Court of Appeal, clarification is necessary wherein the District Court may elaborate that the absence of certification for Aspen as a service dog was not the basis for its decision. Rather, the Court may supplement and clarify the Findings of Fact and Conclusions of Law to state unequivocally the bases for finding that C.L.'s testimony at trial regarding her self-training of Aspen and Katie Gonzalez's expert testimony did not convince the trier of fact by a preponderance of the evidence that Aspen was a trained service dog at the time of trial in 2019. Further, in order to establish an Americans with Disabilities Act violation by Del Amo Hospital, the Court would also need to determine that Aspen was not a qualified service dog when C.L. sought admission to the hospital in 2014 through 2017. Dkt. 199, 7:14-17.

As stated in the Court's Findings of Fact, the only testimony the Court could rely upon that Aspen was a trained service dog was C.L.'s own testimony at trial that she self-trained the dog and that Aspen could perform certain tasks. Dkt. 199, 7:25-27; 11:24-27. Apparently, this testimony was not convincing and the District Court may clarify that it found C.L.'s testimony in this regard not credible. The credibility findings regarding a witness' testimony are entitled to special deference, for clear error. See *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985); *Allen v. Iranon*, 283 F.3d 1070, 1078 n.8 (9th Cir. 2002).

As noted by the Court of Appeal, the District Court needs to dispel any ambiguity and clearly state that C.L.'s credibility was the basis for its findings. "Contrary to Del Amo's contentions, the court did not challenge or raise questions about C.L.'s credibility, and it made no findings of fact whatsoever on the substance of C.L.'s testimony, her demeanor at trial, or any impeaching evidence. Nor did the court make credibility findings as to Gonzalez, other than noting—apparently based on the court's conflation of the standard for a service dog under the ADA and Little Angels' certification standards—that her testimony contradicted itself. Del Amo points to portions of C.L.'s testimony it believes are inconsistent or not credible, but

because these contentions are post-hoc rationalizations of the district court decision—rather than an accurate representation of the district court's express findings and conclusions—we decline to affirm on credibility grounds and review C.L.'s claim as legal error. See *Alpha Distrib. Co. v. Jack Daniel Distillery*, 454 F.2d 442, 452–53 (9th Cir. 1972) (declining to decide contested factual claim where the district court's findings of fact were unclear); Fed. R. Civ. Proc. 52(a)(6)." Dkt. 218, p. 15. The ability to render differing interpretations of the bases for the District Court's findings clearly indicates the need for clarification.

The District Court stated in its Findings of Fact that: "Other than C.L.'s assertions, there is no evidence in the record as accepted by the Court that Aspen was trained to perform, and could perform, the outlined tasks." Dkt. 199, 7:25-17. The District Court may clarify that, irrespective of any formal certification, the preponderance of the evidence does not demonstrate Aspen was a trained service dog and that, taking C.L.'s credibility into account, the Court does not find the evidence sufficient to meet the burden of proof. Further, the Court may clarify that plaintiff's expert, Katie Gonzalez' testimony indicated that Aspen could not perform the necessary tasks of a service dog. For example, Ms. Gonzalez never observed Aspen engaging in a behavior responsive to C.L.'s psychological signs and symptoms. Dkt 176, RT D3 V2, 48:18-49:21. Ms. Gonzalez never observed Aspen perform dynamic pressure in response to C.L. experiencing anxiety or a panic attack. Dkt 176, RT D3 V2, 48:1-21. Ms. Gonzalez conceded that in June 2019, she merely observed C.L. pick up Aspen and place Aspen on her lap. Dkt. 176, RT D3 V2, 48:1-10. Ms. Gonzalez also observed Aspen going around the corner of a building in front of C.L. Dkt 176, RT D3 V2, 49:25-49:5. However, Ms. Gonzalez acknowledged that on this occasion, the dog did not stop or provide any alert task. Dkt 176, RT D3 V2, 49:10-15. Ms. Gonzalez's testimony indicated that she did not observe service dog tasks, but rather observed behaviors typical of a well-behaved companion animal. Dkt 176, RT D3 V2, 48:18-49:21.

**1. Credibility assessment**

The District Court as the trier of fact, had the opportunity to assess the witnesses' credibility. It was reasonable for the Court to reach the conclusion that Aspen was not trained to perform the tasks identified by C.L. Notably, Plaintiff claimed that Aspen performed the task of alerting her when her anxiety spiked by putting her front paws on her. Dkt 162, RT D2 V1, 45:12-15. But Plaintiff did not demonstrate that this behavior was in response to an anxiety attack since Aspen would also put her front paws on C.L. when she was excited to see her. Dkt 175, RT D2 V2, 44:6-12. Performing behaviors randomly rather than directly related to the handler's disability are not service dog trained tasks.

Other behaviors C.L. described such as sitting outside the shower and alerting if someone approached the front door are also pet dog behaviors. Aspen purportedly woke C.L. from nightmares but C.L. testified that this was a behavior she adopted on her own and was not a trained task. This was also contradicted by defense expert witness, Dr. Anna Solt. C.L. merely testified that it was her opinion that Aspen was a trained service dog and the Court is not required to accept the these opinions are true. For example, if a witness testifies that he or she is a concert pianist but has only rudimentary piano-playing skills, the Court is not obligated to accept the witness' stated facts as true. Plaintiff could have presented evidence at trial to corroborate her testimony rather than insisting that the Court take her testimony as unquestionable truth. C.L. could have submitted a video of Aspen performing at least one task that she opined the dog could perform. Aspen was present in the courtroom during the trial and plaintiff could have presented demonstrative evidence of Aspen performing a trained task. Plaintiff did not do so. Further, even while plaintiff was testifying at trial and the dog was sitting next to her, at no time during the stressful situation of trial testimony did the dog react or perform any of the purportedly trained tasks.

As described previously, plaintiff's expert Katie Gonzalez also did not

observe Aspen performing any trained tasks. These facts, taken together, form a sound basis upon which the District Court can properly make a determination that C.L.'s dog was not a trained service dog at the time of trial.

On this issue, the District Court found:

"As Gonzalez [plaintiff's expert] did not observe C.L. with Aspen in 2014, 2015, 2016, 2017, or 2018, Gonzalez could not state whether Aspen was a fully trained service dog during those years." Dkt. No. 199, 8:2-22.

"Gonzalez stated that she believes Aspen is a fully trained service dog in 2019. [Dkt 176] Transcript Day 3, Vol. II at 51:9–12. Gonzalez bases this opinion on her observation and experience after meeting and observing C.L. and Aspen for approximately one hour and a half. [Dkt 176] Transcript Day 3, Vol. II at 51:13–15. In contrast, the field test that Gonzalez and Little Angels administer prior to certifying a service dog is three hours in duration. [Dkt 176] Transcript Day 3, Vol. II at 51:16–19." Dkt. No. 199, 8:23-9:1.

In its opinion, the Court of Appeal focused on whether Aspen was required to be certified in order to qualify as a service dog. At no time has Del Amo Hospital asserted that plaintiff's dog was required to be certified in order to qualify as a service dog. It is speculative to assume that the District Court used certification as the primary or sole criteria for its findings. As such, clarification of the District Court's Findings of Fact and Conclusions of Law is necessary.

The ambiguities and need for clarification are apparent, such as:

"The plain language of the district court's decision suggests that it relied on Katie Gonzalez's inability to "certify" Aspen under Little Angels' standards to reject C.L.'s claim that Aspen is a service dog." Dkt. No. 218, p. 14.

The use of the term "suggests" is indicative of the ambiguity. Assumptions and implications are not good substitutes for clarification from the source. "Plainly, most animals are not equipped 'to do work or perform tasks for the benefit of an individual with a disability.' See *Bronk*, 54 F.3d at 429 n.6. There must instead be

something -- evidence of individual training -- to set the service animal apart from the ordinary pet." *Prindable v. Ass'n of Apt. Owners of 2987 Kalakaua*, 304 F. Supp. 2d 1245, 1256 (D. Haw. 2003). "Unsupported averments. . . and slight anecdotal evidence of service are not enough… to satisfy Plaintiff's burden...." *Id.* at 1257. Aspen provides C.L. with emotional support and comfort which is exactly the type of assistance that is excluded from the definition of work or tasks as contemplated by federal regulations. 28 C.F.R. §36.104.

A declaration by the dog handler or owner that is "'uncorroborated and self-serving' testimony" is not sufficient to establish that a dog qualifies as a service dog. *Davis v. Ma* (2012) 848 F.Supp.2d 1105, 1112. C.L.'s dog trainer expert, Katie Gonzalez attested to the fact that Aspen was still in training in April through July 2014, during which time C.L. was seeking admission to Del Amo Hospital with Aspen.

"Nor did the court make credibility findings as to Gonzalez, other than noting—apparently based on the court's conflation of the standard for a service dog under the ADA and Little Angels' certification standards—that her testimony contradicted itself." Dkt. 218, p. 15. Again, the use of the word "apparently" indicates that the findings of the District Court are subject to different interpretations and require clarification.

Defendant looks to the following as an indication that the District Court made its determination that Aspen did not qualify as a service dog:

"When Aspen was three months old, Plaintiff attended a puppy class at Wags and Wiggles. [Dkt 162] Transcript Day 2, Vol. I at 32:12–18. Wags and Wiggles does not conduct training specific to service dogs, and is not certified in service dog training. [Dkt 175] Transcript Day 2, Vol. II at 18:21–19:10." Dkt. 199, 4:17-20.

"Plaintiff then took a basic obedience class at Wags and Wiggles. [Dkt 175] Transcript Day 2, Vol. II at 19:23–20:3." Dkt. 199, 4:21-22.

Plaintiff alleges that she likely trained Aspen to perform a cornering task, an about face task, and a boundary task in 2014. Dkt 162, RT D2 VI, 62:21–63:23. Plaintiff also alleges that she trained Aspen to perform a medical alert and a task to help her stay alert while driving in 2015. Dkt 162, RT D2 VI, 63:23–65:4, 67:5–16. Plaintiff further alleges that she taught Aspen to perform the tasks of grounding, interruption of self-harm, and sitting guard outside of the shower. Dkt 162, RT D2 VI, 40:10–43:25, 47:19–48:22. Dkt. 199, 6:13-20.

"The first, and only, instance in which Katie Gonzalez observed C.L. and Aspen together occurred in June 2019. [Dkt 176] Transcript Day 3, Vol. II at 28:19–30:16." Dkt. 199, 8:10-11.

"As Gonzalez did not observe C.L. with Aspen in 2014, 2015, 2016, 2017, or 2018, Gonzalez could not state whether Aspen was a fully trained service dog during those years. [Dkt 176] Transcript Day 3, Vol. II at 49:22–51:1." Dkt. 199, 8:20-22.

"Plaintiff has not shown by a preponderance of the evidence that Aspen was a service animal during the seven admissions in question from 2015-2017. The sole evidence Plaintiff put forth that Aspen was a service animal during this time period is her own testimony that she trained Aspen to perform tasks. *See* [Dkt 162] Transcript Day 2, Vol. I at 40:10–63:23." Dkt. 199, 11:23-27.

"Little Angels and Katie Gonzalez did not observe Aspen with C.L. until 2019, nor did any other individual, service dog trainer or otherwise, observe Aspen with C.L. and testify that Aspen was a trained service animal during this time period. [Dkt 176] Transcript Day 3, Vol. II at 30:3–9; Transcript Day 3, Vol. II 41:22–51:1. Accordingly, the Court finds that Plaintiff has not met her burden to show by a preponderance of the evidence that Aspen was a trained service dog from September 2015 to August 2017." Dkt. 199, 12:5-10.

Clarification of the Findings of Fact and Conclusions of Law is all that is required. The District Court may supplement its Findings of Fact to indicate that the

Court found plaintiff had not met her burden based upon the evidence presented at trial, specifically her own testimony, exclusive of any testimony regarding a certification requirement. The District Court may then enter judgment for Del Amo Hospital on the basis that plaintiff did not meet her burden to establish Aspen was a qualified service dog.

## II. ISSUE 2 –WHETHER DEL AMO HOSPITAL PROVED ITS AFFIRMATIVE DEFENSE OF FUNDAMENTAL ALTERATION

"A hospital does not discriminate, however, if (1) the accommodations would fundamentally alter the nature of the facility or service it provides, 42 U.S.C. § 12182(b)(2)(A)(ii); or (2) based upon an individual assessment, the hospital determines that the service animal poses a substantial and direct threat to health or safety which cannot be mitigated by reasonable accommodations, 28 C.F.R. § 36.208." *Tamara v. El Camino Hosp.* (2013) 964 F. Supp. 2d 1077, 1083.

"Hospitals may refuse to accommodate an individual with a disability if the accommodation would fundamentally alter the nature of the facility or service offered." *Tamara v. El Camino Hosp.*, 964 F. Supp. 2d 1077, 1083 (N.D. Cal 2013); 42 U.S.C. § 12182(b)(2)(A)(ii).) "Such an assertion is an affirmative defense." *Tamara, supra,* at 1083; *Lentini v. California Center for the Arts, Escondido,* 370 F.3d 837, 845 (9th Cir. 2004).

In determining whether an accommodation related to the provision of mental health services would be reasonable or would constitute a fundamental alteration of those services, a hospital as place of public accommodation is generally entitled to rely upon the reasonable assessments of its own medical professionals. *Olmstead v. L. C. by Zimring,* (1999) 527 U.S. 581, 602. (State entitled to rely upon reasonable assessment of its medical professionals in determining accommodations for mentally ill or mentally incapacitated patients under Title II of the ADA); see also *Jenkins v. N.Y. City of Dep't of Homeless Servs*., (S.D.N.Y. 2009) 643 F. Supp. 507, 515. (City entitled to rely upon judgment of medical professional that plaintiff

suffered schizophrenia and was not suitable for general housing assistance under Title II of the ADA).

The Supreme Court addressed the question of whether the use of a golf cart during the PGA and Nike golf tournaments would "fundamentally alter the nature" of the golf tournament events. *PGA Tour, Inc. v. Martin* (2001) 532 U.S. 661, 682. "In theory, a modification of petitioner's golf tournaments might constitute a fundamental alteration in two different ways. It might alter such an essential aspect of the game of golf that it would be unacceptable even if it affected all competitors equally; changing the diameter of the hole from three to six inches might be such a modification. Alternatively, a less significant change that has only a peripheral impact on the game itself might nevertheless give a disabled player, in addition to access to the competition as required by Title III, an advantage over others and, for that reason, fundamentally alter the character of the competition." *Id*. at 682-683.

"[T]he ADA was enacted to eliminate discrimination against 'individuals' with disabilities, *42 U.S.C. § 12101(b)(1)*, and to that end Title III of the Act requires without exception that any 'policies, practices, or procedures' of a public accommodation be reasonably modified for disabled 'individuals' as necessary to afford access unless doing so would fundamentally alter what is offered, *§ 12182(b)(2)(A)(ii)*. To comply with this command, an individualized inquiry must be made to determine whether a specific modification for a particular person's disability would be reasonable under the circumstances as well as necessary for that person, and yet at the same time not work a fundamental alteration. See S. Rep. No. 101-116, at 61; H. R. Rep. No. 101-485, pt. 2, at 102 (public accommodations 'are required to make decisions based on facts applicable to individuals')." *PGA Tour, Inc. v. Martin* (2001) 532 U.S. 661, 688.

Plaintiff sought treatment at Del Amo Hospital through their National Treatment Center Program (NTC Program) which is a specialized inpatient program for the purpose of trauma stabilization and resolution. Dkt. 184, RT D3 V3 32:4-

12.; Exhibit 118, National Treatment Center for Trauma Recovery Program Patient Handbook. Notably, Del Amo Hospital has recently terminated this program and no longer offers the NTC Program at any of its facilities. While operational, the NTC Program was overseen by a treatment team. The treatment team consisted of the NTC Program Director who is a licensed clinical social worker, the NTC Program Coordinator, who is also a licensed clinical social worker, members of the nursing staff, and a psychiatrist. Dkt. 176, RT D3 V2 76:8-77:21.

Treatment within the NTC Program was individualized, highly structured, and intensive. Treatment modalities within the program included cognitive behavioral therapy, behavioral modification, trauma therapy, talk therapy, mindfulness, grounding, grief and loss therapy, and safety and containment. Dkt. 180, RT D3 V4 9:3-15; Dkt. 176, RT D3 V2, 72:16-74:3; Dkt. 180, RT D3 V4 69:9-18; Dkt. 184, RT D3 V3 32:4-12; Exhibit 118, National Treatment Center for Trauma Recovery Program Patient Handbook pp. 6, 8. Patients are expected to support each other by listening and giving supportive feedback. Interaction among patients is a very important part of the therapeutic process. Dkt. 180, RT D3 V4 10:6-18. Plaintiff sought voluntary admission to Del Amo Hospital's inpatient NTC Program on multiple occasions over a four-year period from April 2013 to August 2017.

Del Amo Hospital has had a written service dog policy since at least January 2008. Dkt. 184, RT D3 V3 62:9-12; Exhibit 57. The policy allows employees, patients, visitors and members of the medical staff who have a disability to be accompanied by a service dog, subject to certain conditions and limitations set forth in the policy. Dkt. 184, RT D3 V3 60:22-61:8; Exhibit 117, Policy No. RI-19 – Service Dogs. Plaintiff contacted Del Amo Hospital prior to her April 2014 admission to ask about bringing her dog Aspen with her. Plaintiff told the Program Coordinator, Kristie Yahnian, that she would like to bring her dog with her for comfort and to help her work on her issues. Dkt. 180, RT D3 V4. Yahnian took plaintiff's request to the NTC Treatment Team, and the team discussed the pros and

cons of allowing plaintiff to bring her dog. Yahnian believed that the dog would interfere with plaintiff's treatment, because plaintiff would rely on the dog rather than working other grounding techniques such as developing an internal dialogue to deal with her symptoms. Dkt. 180, RT D3 V4 19:20-22:5, 65:12-66:8. After discussing plaintiff's request, the treatment team decided that the dog's presence would interfere with plaintiff's treatment.

Dr. Hirsch who testified at trial was the attending psychiatrist for each of plaintiff's admissions to the Del Amo Hospital and was the admitting psychiatrist for all but one of plaintiff's admissions. Dkt. 176, RT D3 V2 78:20-79:4; Exhibits 113, 114, 122, 125, 132, 139, 154, 165, 173, 183, 193, Admission Reports. Dr. Hirsch, the NTC Medical Director and plaintiff's attending psychiatrist, agreed with the decision to exclude plaintiff's dog during plaintiff's hospitalizations. Dkt. 176, RT D3 V2 93:22-94:1. While patients may have a choice of different therapies that are available at different facilities with other clinicians, the treatment at Del Amo Hospital was very specific with certain goals and methodology. In Dr. Hirsh's opinion, C.L.'s use of a psychiatric service dog to mitigate the symptoms for which she was being treated would not fit in with that methodology. Dkt. 176, RT D3 V2 100:20-101:5.

In Dr. Hirsch's opinion, the presence of C.L.'s dog would interfere with her therapeutic treatment on the unit because the purpose of the NTC Program was to help patients learn, gain, and utilize healthy methods of coping and functioning. Dkt. 176, RT D3 V2 95:5-14. Dr. Hirsch believed that having her dog with her would interfere with the therapeutic process because the treatment of psychiatric disorders such as PTSD is directed at helping the individual become more tolerant of very uncomfortable feeling states both to understand where those uncomfortable feelings come from and to tolerate them better. Dkt. 176, RT D3 V2 95:7-16.

In Dr. Hirsch's clinical opinion, the therapeutic process during hospitalization required that the patient have a clear experience of the emotional states that are

causing the patient difficulty, and the presence of a psychiatric service dog that would mitigate the full volume or intensity of those emotional states would interfere with that. Dkt. 176, RT D3 V2 95:25-96:7. Dr. Hirsch applied the same standard in declining to treat other individuals who state that they require the use of external objects, situations, or substances as a means of dealing with emotions for which they are involved in therapy. Dkt. 176, RT D3 V3 9:21-10:3. This included patients who refused to give up alcohol or street drugs during treatment. Dkt. 176, RT D3 V3 9:21-10:3. Dr. Hirsch noted that he had no clinical objection to the presence of a service dog that performed other duties, such as seeing eye dogs. His concern related specifically to psychiatric service dogs. Dkt. 176, RT D3 V2 17:18-25.

Plaintiff's treating psychologist, Michael Foust, Ph.D., does not incorporate the use of plaintiff's dog into the therapy that he provides to plaintiff. Dkt. 153, 11:10-14, Foust Deposition, 62:13-15. Dr. Foust acknowledged that if the clinicians at Del Amo Hospital felt the animal would interfere with plaintiff's treatment in their clinical judgment, he would not disagree and would defer to their judgment. Dkt. 153, 9:4-9, Foust Deposition, 49:19-15.

Anna Solt, M.D. was called as an expert by Del Amo Hospital at trial. Dr. Solt is a Board Certified Psychiatrist who completed her residency at Harvard South Shore, psychiatry residency program affiliated with Harvard Medical School and the Boston Veterans Administration. Dkt. 177, RT D4 V1 7:19-9:13. Dr. Solt expressed the opinion with a reasonable degree of medical certainty that the presence of the service dog would have interfered in plaintiff's clinical care. Dkt. 177, RT D4 V1 12:21-24, 22:10-13. Dr. Solt expressed the opinion that plaintiff's service dog reportedly helps her with her psychiatric symptoms which is also what the NTC Program is there to do – to help her develop coping skills and behaviors to deal with symptoms of Post-Traumatic Stress Disorder. Dr. Solt opined that it would be too tempting for plaintiff to try to utilize the service dog instead of implementing tools that are taught within the program. Dkt. 177, RT D4 V1 22:14-23. Based on Dr.

Solt's review of plaintiff's medical records, Dr. Solt saw no indication that the efficacy of plaintiff's treatment at Del Amo was diminished and concluded that it was actually enhanced. Dkt. 177, RT D4 V1 28:23-29:3.

Based upon the foregoing facts, Del Amo Hospital's decision to decline plaintiff's request to be accompanied by her dog was a clinically sound decision made by the clinical staff which considered it to be in the best interests of plaintiff during her hospitalization. Plaintiff was not denied access to goods and services provided by Del Amo Hospital, and plaintiff received the full benefit of the NTC Program with consistent improvement in her mental and psychological condition during each subject admission. Dkt. 176, RT D3 V2 101:6-10; Dkt. 180, RT D3 V3 22:21-23:15.

If an accommodation fundamentally alters a service or facility, that is an affirmative defense to an action for disability discrimination. *Lentini v. Cal. Ctr. for the Arts, Escondido*, 370 F.3d 837, 845 (9th Cir. 2004). See also *Alexander v. Choate*, 469 U.S. 287, 300 (1985). Del Amo Hospital lawfully exercised its right to exclude plaintiff's dog Aspen because in the judgment of clinical staff it would interfere in plaintiff's treatment. To require a licensed healthcare provider to implement care in a manner other than the method believed by the provider to be in the best interest of the patent's treatment would constitute a fundamental alteration of the healthcare provider's services. Medical and other healthcare providers are in the best position to make a clinical determination of the best care and treatment for their patients.

The public interest is disserved by entering a permanent injunction that would limit the choice of physicians in providing treatment they feel is in the best interest of their patients. *Datascope Corp. v. Kontron, Inc.*, 786 F.2d 398, 401 (D.C. Cir. 1986) (affirming denial of preliminary injunction in patent infringement case where data showed that some physicians preferred infringing product); *Advanced Cardiovascular Systems v. Medtronic*, 579 F. Supp. 554, 561 (Del. 2008) (denial of

permanent injunction in patent infringement case where evidence demonstrated that some cardiologists preferred infringing stent.)

In the present case, both plaintiff's former treating psychiatrist, Dr. Hirsch, and defendant's psychiatrist expert, Dr. Solt, have opined that inpatient treatment for plaintiff's trauma-related condition would be significantly more effective without her dog. An injunction mandating a less effective treatment in the clinical judgment of physicians would not be in the public interest. Plaintiff's request for a permanent injunction would unduly intertwine the court in the practice of medicine by mandating that plaintiff's health care providers treat plaintiff in a manner that they believe is not in her best interest.

If the District Court reaches this issue, a finding that mandates the clinicians at Del Amo Hospital modify their treatment in such a manner that is inconsistent with their clinical judgment would be a disservice to their patients. Such a mandate would fundamentally alter the manner in which Del Amo Hospital provides psychiatric services to their patients. The Court should appropriately disallow such a fundamental alternation.

Respectfully submitted,

DATED: May 28, 2021

DUMMIT, BUCHHOLZ & TRAPP

By: /s/ Moira S. Brennan

Scott D. Buchholz
Moira S. Brennan
Attorneys for Defendant, DEL AMO HOSPITAL, INC.