| | |
|---|---|
| Christopher H. Knauf (SBN 185180)<br>  *ck@drlcenter.org*<br>Alexandra M. Robertson (SNB 298637)<br>  *ar@drlcenter.org*<br>DISABILITY RIGHTS LEGAL CENTER<br>1541 Wilshire Blvd., Suite 400<br>Los Angeles, CA 90017<br>Tel: (213) 736-1031<br>Fax: (213) 736-1428 | Jennifer E. Mathis<br>  Admitted *Pro Hac Vice*<br>  *jenniferm@bazelon.org*<br>BAZELON CENTER FOR MENTAL HEALTH LAW<br>1101 15th Street NW, Suite 1212<br>Washington, DC 20005<br>Tel: (202) 467-5730<br>Fax: (202) 223-0409 |

Celia McGuinness, Esq. (SBN 159420)
  *cmcguinness@dmglawfirm.com*
DERBY McGUINNESS & GOLDSMITH LLP
1999 Harrison St, Suite 1800
Oakland, CA  94612
Tel: (510) 987-8778
Fax: (510) 359-4419

Attorneys for Plaintiff C.L.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| C.L., an individual;<br><br>        Plaintiff,<br>   v.<br><br>DEL AMO HOSPITAL, INC., a California corporation; and DOES 1-10, inclusive,<br><br>        Defendants. | Case No.:  8:18-cv-00475-DOC (DFMx)<br><br>**PLAINTIFF'S POST-TRIAL BRIEFING AS ORDERED APRIL 30, 2021, DOCKET NO. 227**<br><br>Hon. David O. Carter |

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION .................................................................................................. 1

POINTS AND AUTHORITIES ........................................................................... 1

    I.    Unrebutted Expert and Percipient Witnesses Testimony Established that Aspen was a Service Dog at the Time of Trial ..................................................................................................... 1

        A. Expert Testimony Established that Aspen Was Trained to Perform Tasks ......................................................................... 2

        B. Aspen's Tasks Benefit C.L.'s Disability.............................. 4

    II.    Del Amo Did Not Prove that Aspen's Presence Would Fundamentally Alter the Nature of its Inpatient Hospital Program ................................................................................................... 5

        A. The Nature of Del Amo Hospital is Providing Mental Health Services and Bed and Board in a Secure Setting ...... 7

        B. Del Amo Did Not Present Any Substantiated Evidence of Aspen's Impact on the Nature of its Services, Let Alone a Fundamental Alteration....................................................... 7

            1. Del Amo Presented Only Speculation, Not Evidence to Support its Defense ....................................................... 10

            2. C.L.'s Use of Her Service Dog Would Not Constitute a Fundamental Alteration to Del Amo's Program............ 14

CONCLUSION ................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bragdon v. Abbott*,
    524 U.S. 624 (1998) .............................................................. 10, 11

*C. L. v. Del Amo Hosp., Inc.*,
    992 F.3d 901 (9th Cir. 2021).................................................... 2, 3

*Crowder v. Kitagawa*,
    81 F.3d 1480 (9th Cir. 1996).................................................... 5, 6

*Jenkins v. New York City Dept. of Homeless Ser.*,
    643 F.Supp.2d 507 (S.D.N.Y. 2009)........................................ 11

*Lentini v. Cal. Ctr. for the Arts, Escondido*,
    370 F.3d 837 (9th Cir. 2004)...................................................... 6

*Martin v. PGA Tour, Inc.*,
    204 F.3d 993 (9th Cir. 2000)...................................................... 6

*Olmstead v. L.C.*,
    527 U.S. 581 (1999) .................................................................. 11

*PGA Tour, Inc. v. Martin*,
    532 U.S. 661 (2001) ....................................................... 6, 7, 14

*Sanchez v. Monumental Life Ins. Co.*,
    102 F.3d 398 (9th Cir. 1996)...................................................... 2

*Sullivan By & Through Sullivan v. Vallejo City Unified Sch. Dist.*,
    731 F. Supp. 947 (E.D. Cal. 1990).......................................... 15

*Tamara v. El Camino Hosp.*,
  964 F. Supp. 2d 1077 (N.D. Cal. 2013) ..................... 6, 8, 10, 11

**STATUTES**

42 U.S.C. § 12182(b)(2)(A)(ii).......................................................... 6, 7

**REGULATIONS**

28 C.F.R. § 36.104 ....................................................................... 1, 4, 6

28 C.F.R. § 36.302........................................................................... 6

28 C.F.R. § 36.302(c)(1) ................................................................. 5

28 C.F.R. Part 36, Appx. A ....................................................... 4, 5, 10

28 C.F.R. Part 36, App. A, subpt. C ..................................................... 5

28 C.F.R. Part 36, App. C ................................................................. 5

**OTHER AUTHORITIES**

Frequently Asked Questions about Service Animals and the ADA,
https://www.ada.gov/regs2010/service_animal_qa.html ..................... 8

## INTRODUCTION

Through unrebutted expert witness testimony, Plaintiff C.L. established by a preponderance of evidence that Aspen was a service dog at the time of trial. Katie Gonzalez, an expert service dog trainer, evaluated Aspen and C.L. as a dog-handler pair, observed them working together, and interrogated C.L.'s training methods to conclude without reservation that Aspen qualified as a service dog at the time of trial. C.L. testified without rebuttal about her training methods and the eight separate tasks Aspen performs, all legitimate psychiatric service dog tasks according to Ms. Gonzalez's undisputed testimony, and many of the tasks recognized by federal regulations. C.L. also testified, without rebuttal, how Aspen's tasks help manage her disability.

C.L. established her prima facie case at trial, and Defendant Del Amo Hospital failed to prove its affirmative defense of "fundamental alteration" to its program. Del Amo's witnesses merely speculated that C.L. would "rely too much" on Aspen instead of the therapeutic techniques they taught her, an unsubstantiated fear that did not, in fact, implicate any risk to the program itself. Del Amo provided no evidence that Aspen's presence on the ward would change *by one iota* the way Del Amo provided treatment, or any other aspect of the program. Accordingly, judgment should be entered in favor of Plaintiff and the requested injunction should issue, allowing C.L. the long-awaited right to bring her service dog to Del Amo upon her next visit.

### I. UNREBUTTED EXPERT AND PERCIPIENT WITNESS TESTIMONY ESTABLISHED THAT ASPEN WAS A SERVICE DOG AT THE TIME OF TRIAL.

The ADA regulations define a service animal as "any dog that is individually trained to do work or perform tasks for the benefit of an individual with a disability," including a psychiatric disability, where the work or tasks are "directly related to the individual's disability." 28 CFR § 36.104. The definition focuses on "the outcome of training—what the dog is capable of doing to ameliorate an

individual's disability." *C. L. v. Del Amo Hosp., Inc.*, 992 F.3d 901, 911 (9th Cir. 2021).

> There must be some evidence of individual training to distinguish the service animal from the ordinary pet. For example, a dog may naturally jump up in its owner's lap, which would constitute a behavior—however, if the owner trains the dog to sit in her lap in a particular position and only in response to certain triggers related to the owner's disability, then the dog has been trained and has ceased to merely behave in a way that dogs naturally do.

*Id.* C.L.'s testimony describing Aspen's training, corroborated by Katie Gonzalez's expert evaluation, established that Aspen was more likely than not a qualified service dog at the time of trial. *See Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) (describing the preponderance standard).

**A. Expert Testimony Established that Aspen Was Trained to Perform Tasks.**

Katie Gonzalez, the only expert to testify regarding Aspen's qualifications, testified that Aspen was a fully trained service dog in June 2019. Court's Findings of Fact and Conclusions of Law, ECF 199, ¶ 39; *C.L.*, 992 F.3d at 909. Ms. Gonzalez, the founder and director of the nonprofit service dog training organization Little Angels Service Dogs, has trained service dogs, including psychiatric service dogs, for twenty years and has published books on service dog training. Gonz. Test. Tr. 3 Vol. 1 at 24:15-25:6, 26:20-22, 59:22-61:20; Exs. 37, 38, 105. Ms. Gonzalez testified as an expert in the training of service dogs, the use of service dogs for psychiatric disabilities, and the laws and regulations for service dogs as applied to the work service dogs perform. *C.L.*, 992 F.3d at 908. Del Amo did not dispute Ms. Gonzalez's credentials. It presented no evidence to rebut Aspen's qualification as a service dog at the time of trial. Ms. Gonzalez's conclusion that Aspen was a service dog at the time of trial is uncontradicted. Gonz. Test. Tr. 3 Vol. 2 at 5:12-17; 11:23-12:17; 51:9-15, 54:4-7, 58:17-59:25.

Ms. Gonzalez's opinion is based on her firsthand observation of Aspen and evaluation of C.L.'s training techniques. Ms. Gonzalez observed Aspen and C.L. as a dog-handler unit in June 2019. She observed them at two locations, a restaurant and a shopping center, where C.L. demonstrated two of Aspen's trained tasks and Ms. Gonzalez evaluated whether Aspen's training and behavior in public was appropriate. *Id.* Tr. 3 Vol. 1 at 69:24-71:18. Ms. Gonzalez also evaluated Aspen's breed and size to evaluate appropriateness for the tasks Aspen was trained to perform. *Id.* at 71:19-72:2-17.

Ms. Gonzalez interviewed C.L. about the methods by which C.L. trained Aspen. *Id.* at 70:13-16; *Id.* Tr. 3 Vol. 2 at 10:15-20, 12:5-11. Ms. Gonzalez testified that the techniques C.L. described using to train Aspen are the same techniques that she and Little Angels' trainers teach in the seminars and in her book *Training Your Own Psychiatric Service Dog*. *Id.* Tr. 3 Vol. 1 at 72:18-23*; Id.* Tr. 3 Vol. 2 at 10:15-12:17. She concluded that Aspen's tasks were trained tasks, rather than mere behaviors. *Id.* Tr. 3 Vol. 2 at 12:12-14.

"[T]he ADA does not require a service dog to perform a particular number of trained tasks or amount of work." *C. L.*, 992 F.3d at 911. However, at the time of trial, Aspen was trained to perform eight tasks that mitigate C.L.'s disability:

(1) Grounding, C.L. Test. Tr. 2 Vol. 1 at 40:10-44:20; Tr. 2 Vol. 2 at 49:23-52:20;

(2) Cornering, Tr. 2 Vol. 1 at 60:19-63:1, 67:24-68:8;

(3) Interrupting nightmares, Tr. 2 Vol. 1 at 34:3-38:3, 38:16-40:7;

(4) Interrupting self-harm, Tr. 2 Vol. 1 at 47:9- 48:22;

(5) Boundary Control, Tr. 2 Vol. 1 at 63:4-22;

(6) About Face, Tr. 2 Vol. 1 at 59:19-60:7;

(7) Standing Guard, Tr. 2 Vol. 1 at 11:25-12:24, 65:5-66:3; and

(8) Alerting for medication, Tr. 2 Vol. 1 at 63:23-65:4.

Ms. Gonzalez testified that all of Aspen's tasks are common psychiatric service dog tasks she routinely trains handlers and service dogs to perform, and in her opinion Aspen had been trained to perform those tasks.[1] The ADA regulations also expressly identify grounding, interrupting self-harm, and nonviolent protection (such as boundary control, about-face, and standing guard) as common psychiatric service dogs tasks. 28 C.F.R. § 36.104; 28 C.F.R. Part 36, Appx. A, "service animal." Defendants offered no rebuttal testimony.

**B. Aspen's Tasks Benefit C.L.'s Disability.**

These tasks undisputedly ameliorate the impact of C.L.'s disabilities. C.L. is diagnosed with Complex Post-Traumatic Stress Disorder ("PTSD") and Dissociative Identity Disorder ("DID"), major depressive disorder and anxiety. C.L. Test. Tr. 1 Vol. 1 at 48:18-21, 54:10-55:23; Deposition of Dr. Michael Foust, Ex. 60 at 18:18-25, 22:6-21, 25:12-26:1. These disorders cause hyper-vigilance, anxiety, flashbacks, intense nightmares, episodes of dissociation, self-harming behavior, and suicidal ideation. C.L. Test. Tr. 1 Vol. 1 at 50:10-51:18, Tr 2 Vol. 1 at 10:4-10, 12:25-13:15; 13:21-14:5; 20:23-21:13; Foust Depo, Ex. 60 at 26:2-14. They substantially affect C.L.'s daily functioning. She isolates herself from other people. Simple tasks like undressing, showering, and grocery shopping cause her extreme anxiety. C.L. Test. Tr. 2 Vol. 1 at 10:14-11:14, 12:2-11.

Each task Aspen performs assists C.L. in having a more functional and independent life. For instance, training Aspen to wake her from nightmares improved C.L.'s sleep and her general functioning. Knowing that Aspen would

---

[1] Gonz. Test. Tr. 3 Vol 1 at 66:10-68:7; Tr. 3 Vol. 2 at 13:10-17, 45:19-46:17; Ex. 37 at 85-87; Ex. 38 at 61 (grounding); *Id.* at 66:3-15, 69:14-16; Ex. 37 at 81-82; Ex. 38 at 62-63 (boundary control); *Id.* at 66:3-13, 69:2-23; Tr. 3 Vol. 2 at 13:18-23; Ex. 38 at 66(about-face); *Id.* at 66:3-23; Ex. 37. (standing guard); *Id.* at 66:7-9, 71:7-18; Ex. 37 at 87-88; Ex. 38 at 64-65; *Id.* at 45:19-21, 46:22-47:9 (cornering); *Id.* Tr 3 Vol 1 at 66:3-6, 68:11-18; Tr 3 Vol 2 at 13:7-9, 59:21-25; Ex. 37 at 82-85; Ex. 38 at 31-34 (waking from nightmares); *Id.* at 5:18-25; Ex. 37. (interrupting self-injury); *Id.* Tr. 3 Vol. 1 at 68:8-25; Ex. 37 at 82-85; Ex. 38 at 31-34 (alert for medication).

wake her, she became less afraid to fall asleep. C.L. Test. Tr 2 Vol. 1 at 13:16-20. Nightmares became shorter and less severe because Aspen interrupts them earlier than she could awaken herself. C.L.'s sleep quality improved, giving her more energy and focus during the day. C.L. Test. Tr. 2 Vol. 1 at 39:13-40:7. Similarly, Aspen's grounding task brings C.L. back from dissociative states and reduces the impact of intrusive, traumatic memories. It helps her refocus from her mind to the external present. *Id.* at 40:16-42:13, 43:10-16.

C.L. finds Aspen a much more effective tool for interrupting self-harm than techniques taught by therapists such as snapping oneself with a rubber band. C.L. Test. Tr. 2 Vol. 1 at 50:21-51:13. Aspen interrupts the behavior but also intervenes earlier by alerting C.L. to her escalation of emotions that leads to self-harm. *Id.* at 55:14-22. Aspen's nonviolent protection tasks enable C.L. to go into public much more frequently. C.L. Test. Tr. 2, Vol. 1 at 11:18-24. Now that Aspen is trained to do cornering, boundary control and about face, she can complete a full grocery shopping trip and she can visit friends' homes. C.L. Test. Tr. 2 Vol. 1 at 61:7-15. All eight of Aspen's trained tasks benefit C.L. and help ameliorate her disability. In sum, Plaintiff has proved that Aspen is a service dog.

## II. DEL AMO DID NOT PROVE THAT ASPEN'S PRESENCE WOULD FUNDAMENTALLY ALTER THE NATURE OF ITS INPATIENT HOSPITAL PROGRAM.

A place of public accommodation "shall modify [its] policies, practices, or procedures to permit the use of service animal" by a person with a disability. 28 C.F.R. § 36.302(c)(1). Health care facilities, in particular, "must allow a person with a disability to be accompanied by a service animal in all areas in which that person would otherwise be allowed," unless the particular service animal presents a direct threat to the health or safety of others. 28 C.F.R. Pt. 36, Appx. A, subpt. C; 28 C.F.R. § 36.104; *see also* 28 C.F.R. Pt. 36, App. C. ("It is intended that the broadest feasible access be provided to service animals in all places of public accommodation, including ... hospitals."); *Crowder v. Kitagawa*, 81 F.3d 1480,

1485 (9th Cir. 1996) (Congressional intent "to ensure that individuals with disabilities are not separated from their service animals.") (internal quotation marks omitted).

Del Amo may deny Aspen admission if Aspen would "fundamentally alter the nature of " Del Amo's "goods, services, facilities, privileges, advantages, or accommodations." 42 U.S.C § 12182(b)(2)(A)(ii); *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 682-689 (2001); *see Lentini v. Cal. Ctr. for the Arts, Escondido*, 370 F.3d 837, 845 (9th Cir. 2004). Exclusion of a service animal based on fundamental alteration is justified only in "rare circumstances." 28 C.F.R. Part 36 Appx. C, § 36.302. It is an affirmative defense. *Lentini*, 370 F.3d at 845.

The decision to exclude a service dog must be based upon a direct and individualized assessment of the specific dog at issue. *Tamara v. El Camino Hosp.*, 964 F. Supp. 2d 1077, 1083 (N.D. Cal. 2013). Whether an accommodation causes a fundamental alteration is 'an intensively fact-based inquiry.'" *Lentini*, 370 F.3d at 845 (quoting *Martin v. PGA Tour, Inc.*, 204 F.3d 993, 999 (9th Cir. 2000)). Del Amo must establish two elements: (1) The nature of its services, privileges, advantages and/or accommodations; and (2) admission of Aspen would fundamentally alter the nature of those services, privileges, advantages and/or accommodations, *i.e.*, change an "essential aspect," a "fundamental character," an "essential attribute" or an "indispensable feature" of Del Amo. 42 U.S.C § 12182(b)(2)(A)(ii); *PGA Tour, Inc.*, 532 U.S. at 663, 682-687; *see also Tamara*, 964 F. Supp.2d at 1083-84 (analysis of whether a service dog would fundamentally alter the nature of the facility or service offered). Del Amo failed to establish Aspen would fundamentally alter its program. Instead, it offered sheer speculation and irrelevancies.

### A. The Nature of Del Amo Hospital is Providing Mental Health Services, and Bed and Board in a Secure Setting.

Del Amo Hospital's psychiatric wing provides mental health services, room and board, and a secure setting. During C.L.'s admissions she receives group therapy or psycho-educational groups, adjunctive therapy such as art or "anger wall", and individual therapy. C.L. Test. Tr. 2 Vol. 1 at 72:23-73:12; Ex. 119 at 2. There is substantial downtime during a patient's stay. Rahimi Test. Tr. 3 Vol. 3 at 84:10-89:6. Del Amo makes exceptions to the general schedule to individuate treatment to the patient's needs. Hirsch Test. Tr. 3 Vol. 2 at 106:11-16; *see also* Rahimi Test. Tr. 3 Vol. 3 at 82:12-21 (treatment individualized to a patient's needs). There may be no distinction between the PTSD treatment at Del Amo and outside Del Amo. Hirsch Deposition, Ex. 18 at 25:18-26:1. However, Del Amo provides a 24-hour closed environment, structure and security to monitor and prevent suicide attempts. C.L. Test. Tr. 2 Vol. 1 at 74:3-9.

### B. Del Amo Did Not Present Any Substantiated Evidence of Aspen's Impact on the Nature of its Services, Let Alone a Fundamental Alteration.

Del Amo failed to produce evidence establishing that Aspen's presence would fundamentally alter some "essential attribute" or an "indispensable feature" of Del Amo's psychiatric services or program. 42 U.S.C § 12182(b)(2)(A)(ii); *PGA Tour*, 532 U.S. at 682-687. In *PGA Tour, Inc.*, the Supreme Court concluded that prohibiting golf carts was not essential to the game of golf, so PGA Tour Inc. had the burden to establish why it was necessary to prohibit Martin from using a cart in PGA competition. It could not do so. *Id.* at 1000.

Here, it is readily apparent that excluding service dogs is not essential to the provision of mental health services at Del Amo. Del Amo has shown nothing about the essential nature of its psychiatric services that would change with Aspen present -- in contrast, for example, to the provision of services in its operating

---

**7**

room. *See Tamara*, 964 F. Supp. 2d at 1084 ("[The evidence suggests] the presence of a service animal might affect the [psychiatric] ward, but not that it will fundamentally alter its nature. This is in contrast to sterile environments, which would be impossible to maintain in the presence of a service animal.").

Del Amo gave two reasons for excluding Aspen: (1) Staff could perform the same services and (2) Aspen may interfere with C.L.'s receptivity to treatment. Neither reason was grounded in evidence or fact of any kind, both are sheer speculation, and neither reason implicated any alteration to the hospital's program.

First, Del Amo claimed that its staff could perform the same services as Aspen. In 2014, Del Amo CEO Lisa Montes wrote to C.L. that Aspen was excluded because "we were not of the opinion that your dog provided a function that was essential to your safety and well-being as described above. The services you require can be provided by the clinical, nursing, and medical staff of the hospital as part of their routine care. It was for this reason your dog was declined." Ex. 19; C.L. Test. Tr. 2 Vol. 1 at 93:11-94::10; *see also* Ex. 22 at 7:14-16. Clinical Coordinator Ms. Yahnian gave the same testimony at trial. Yahnian Test. Tr. 3 Vol. 4 at 20:10-14 ("We could supply a lot of the needs in the hospital,"); Tr. 3 Vol. 4 at 77:16-23.

However, the ability of staff to perform the same services is not a valid consideration in any context. "Service animals must be allowed in patient rooms and anywhere else in the hospital the public and patients are allowed to go. They cannot be excluded on the grounds that staff can provide the same services." DOJ administrative guidance Frequently Asked Questions about Service Animals and the ADA, https://www.ada.gov/regs2010/service_animal_qa.html, last visited May 12, 2021. "Staff can perform the same services" certainly does not implicate

8

a fundamental alteration to the program. Rather the opposite, it implies the dog is congruent with the services the hospital provides.

Second, Del Amo claimed that Aspen's presence would somehow interfere with C.L.'s reaction to the treatment Del Amo provided her. For instance, Ms. Yahnian testified if C.L. had Aspen to assist her with grounding and preventing dissociation, she might rely "too much" on Aspen. Yahnian Test. Tr. 3 Vol. 4 at 21:20-22, 77:3-13. As Ms. Yahnian put it, a service animal would "hinder" her "inability [*sic*] to internalize and be able to get grounding because you need the self-talk. The dog doesn't talk." Yahnian Test. Tr. 3 Vol. 4 at 65:12-20. No one at Del Amo ever discussed this concern with C.L. at any time. Tr. 2 Vol. 1 at 104:11-14.

Defendant's retained psychiatrist, Dr. Anna Solt, also opined that it would be "too tempting" for C.L. to utilize Aspen as a tool instead of the tools taught in the program. Solt Test. Tr. 4 Vol. 1 at 22:10-23.[2] However, Dr. Solt also contradicted this opinion, first inexplicably doubting that Aspen could perform tasks, and then stating that even if Aspen performed tasks, the dog "was not necessarily contributing to her post-traumatic stress getting better." *Id.* at 26:22-27:22. Dr. Solt did little more than provide a slew of contradictory arguments, rather than a solid, evidence-based opinion -- and absolutely nothing that relied upon viewing C.L. and Aspen within the hospital setting.

Del Amo produced no evidence that Aspen's presence would negatively affect C.L.'s response to Del Amo's techniques. But even if substantiated, a diminution in C.L.'s response to treatment would not constitute a fundamental

---

[2] Dr. Solt had no education, training, professional or research experience regarding psychiatric service dogs. Solt Test., Tr. 4 Vol. 1 at 44:10-14, 48:9-17. She prepared for her expert testimony by reading one journal article, Googling basic information about psychiatric service dogs, and reading blogs. *Id.* at 45:4-16; 49:20-24. Her testimony demonstrated she did not understand the tasks Aspen was trained to perform. Tr. Vol. 1 at 65:24-68:18

alteration to the nature of Del Amo's program. For these reasons, Del Amo did not meet its burden to establish the fundamental alteration defense.

### 1. Del Amo Presented Only Speculation, Not Evidence to Support its Defense.

Speculative concerns that the presence of a service animal *might* affect a patient's response to psychiatric treatment -- without any research or evidence to support the risk of actual impacts -- do not constitute sufficient evidence that the presence of a service dog would fundamentally alter the nature of the psychiatric hospital. *See Tamara*, 964 F. Supp. 2d at 1084 (Reasoning the hospital's "arguments are speculative" and evidence "suggest[s] that the presence of a service animal might affect the ward, nut not that it will fundamentally alter its nature"). Like determinations made under the ADA, exclusion of a service dog based on fundamental alteration must be based on evidence and circumstances individual to the animal in question, "not based on fears or generalizations," speculation or unfounded assumptions. *See* 28 C.F.R. Part 36, Appx. A.

In particular, the Supreme Court has directed courts not to defer to medical providers' opinions in the absence of current, objective medical evidence. In *Bragdon v. Abbott*, 524 U.S. 624 (1998), a dentist refused to treat a patient who had HIV, in fear that the virus would be transmitted to him or his staff. The Court rejected the dentist's opinion because it was not based on medical or other objective evidence. "His belief that a significant risk existed, even if maintained in good faith, would not relieve him from liability. . . . [P]etitioner receives no special deference simply because he is a health care professional." *Id*. at 649.

Similarly, Del Amo must not receive deference to its opinions merely because it is a health care provider, even when those opinions are cloaked as "clinical judgment." Instead, the Court "should assess the objective reasonableness of the views of health care professionals without deferring to their individual judgments." *Bragdon*, 524 U.S. at 650. It must evaluate whether Del

Amo's staff decided to exclude Aspen "based on the objective, scientific information available to [them] and others in [their] profession." *Id.* at 649.[3]

In *Tamara,* the court rejected a hospital's argument that a service dog would fundamentally alter the nature of its service because one of the goals of the psychiatric ward was to "eliminate potential sources of stress and disruption." 964 F. Supp. 2d 1084. The court observed that the hospital's "arguments, however, are speculative: patients 'may be sedated,' patients 'often have severe psychosis,' and 'it is more likely than not that a number of patients will fixate on the animal.'" *Id.* It held that the service dog could not be excluded from the psychiatric ward.

Del Amo's arguments are equally speculative. As Dr. Solt testified, Del Amo never documented why it excluded Aspen. "There's no mention in the records of the decision, so *it's impossible to determine whether it's evidence-based or not, because it wasn't even there*." Solt Test., Tr. 4 Vol. 1 at 63:18-65:1 (emph. added).

At trial the Del Amo witnesses were also candid: Each one admitted they had no empirical basis for their opinion. They admitted they were making assumptions. Ms. Yahnian testified she had no data or facts to base her opinion that Aspen's presence would hinder C.L. Yahnian Test. Tr. 3 Vol. 4 at 65:23-66:17. She did not rely upon any methods or principles in forming her opinion. She did not research the impact of psychiatric service dogs on psychiatric treatment. *Id.* at 66:18-67:18. She did not discuss service dogs with the program

---

[3] Plaintiff anticipates Del Amo will cite *Olmstead v. L.C.,* 527 U.S. 581 (1999) and *Jenkins v. New York City Dept. of Homeless Serv.*, 643 F.Supp.2d 507 (S.D.N.Y. 2009) to argue that the Court should defer to its medical staff's opinion. Those cases are inapposite. They held that in defending claims under the "integration mandate" of Title II of the ADA, States could rely on the reasonable medical judgments of *public health officials*. *Olmstead*, 527 U.S.at 602. Also, *Jenkins* did not even dispute deference: The plaintiff presented no evidence to counter the physician's opinion. 643 F. Supp.2d at 516. Neither case undermines *Bragdon's* holding that Title III does *not* afford deference to medical professionals operating public accommodations.

11

founder or enquire how other psychiatric facilities accommodate psychiatric service dogs. *Id*. Her opinion was based on her time at Del Amo Hospital, on her view that C.L. was fragile and "had very poor stability to stand on her own," and that dogs are "not communicating." *Id*. at 65:23-66:17; 87:10-88:20. It was not based on any prior experience with Aspen or any service dogs because she has no experience working with service dogs. *Id*. at 66:9-67:24.

Ms. Rahimi, the program Director, testified that C.L. might not "fully benefit" from the program if she had Aspen with her. Rahimi Test. Tr. 3 Vol. 3 at 103:24-104:5. She admitted that she had no facts to support this assumption. *Id.* at 76:18-20, 104:1-25, 106:6-15, 117:2-5.

Dr. Hirsch, the program's erstwhile Medical Director, admitted he had no empirical basis for his opinion that Aspen's presence would interfere with C.L.'s treatment. Hirsch Test. Tr. 3 Vol. 3 at 8:16-21, 13:9-13; Hirsch Depo., Ex. 18 at 43:22-25. He did not know the specific tasks or work Aspen provides C.L. or what Aspen would do if on the ward. Hirsch Test. Tr. 3 Vol. 3. at 6:14-16, 7:11-22. Dr. Hirsch never discussed with C.L. whether Aspen's presence for inpatient treatment would impact her treatment; rather he was told of the decision to exclude C.L.'s service dog by the management team. *Id.* at 5:11-16; Hirsch Test. at Tr. 3 Vol. 2 at 44:7-11. Dr. Hirsch also has no background in research or clinical practice working with service dogs during treatment. At Del Amo he had seen one dog in the therapeutic environment, and in his private practice he had never treated a patient with a service dog. Hirsch Depo, Ex. 18 at 61:9-62:2. At trial he admitted he had not treated the patient with the service dog at Del Amo and had no firsthand experience for his supposition that a service dog would not allow a patient to more fully engage in treatment. Hirsch Test. Tr. 3 Vol. 3 at 9:13-20, 11:13-20. Dr. Hirsch has no basis in research for his opinion and has read no literature on the use of psychiatric service animals. *Id.* at 11:21-25; Hirsch

12

**PLAINTIFF'S POST-TRIAL BRIEFING AS ORDERED APRIL 30, 2021**

Depo, Ex. 18 at 62:3-8. Dr. Hirsch cannot articulate what a service dog is, and admits he does not know the difference between a service dog versus an emotional support animal or comfort animal. Hirsch Test. Tr. 3 Vol. 3 at 6:14-22, 18:10-12; Hirsch Depo., Ex. 18 at 35:9-25.

Dr. Solt admitted that she had "no evidence" upon which to base her opinion that Aspen's presence would distract C.L. to her detriment. Solt Test., Tr. 4 Vol. 1 at 69:7-15. Dr. Solt made no effort to determine if the NTC program founder or other programs had positions on psychiatric service dogs. *Id.* at 48:18-49:14. When asked what information she relied on for her opinion that Aspen would be a distraction to C.L., Dr. Solt stated that because Aspen performed tasks for C.L. related to her disability, C.L. "probably would make Aspen do those tasks" instead of focusing on the techniques being taught at Del Amo, and "it's likely that C.L. would be paying attention to Aspen during the whole process." *Id.* at 70:17-71:11. When asked if her opinions were based on an assumption, she responded, "I guess." *Id.* at 71:12-13. She admitted that her opinion that Del Amo would have to alter what it does also was an assumption. *Id.* at 76:13-77:19.[4]

Of course, Del Amo never asked C.L. how Aspen affects her response to therapy. C.L. has been highly motivated to treat and believes Aspen would help her during inpatient stays. C.L. testified that she goes to Del Amo to avoid committing suicide and because she wants to get better. C.L. Test. Tr. Day 2 Vol. 1 at 71:24-72:4; 74:3-9; 118:10-20. Aspen is one of the tools she chooses to use, but she also engages other methods for grounding and treatment as well. C.L. Test. Tr. 2 Vol. 2 at 54:11-55:4. Having Aspen does not make C.L. less receptive

---

[4] Testimony based on speculation requires no rebuttal. However, Dr. Reading, Plaintiff's expert psychologist with more than forty years clinical and academic experience, testified that he saw no empirical basis, no rationale drawn from psychological research or psychological theories, or any rationale whatsoever for stating that Aspen's presence at Del Amo would cause a detriment to C.L.'s therapy. Reading Test., Tr. 4 Vol. 3 at 9:4-10:11, 19:9-17, 20:18-21:15.

to Del Amo's treatment but rather more receptive, because Aspen gives C.L. fundamental support that makes less hypervigilant and more able to focus on treatment, for example. C.L. Test. Tr. 2 Vol. 2 at 103:10-104:3. Had Del Amo raised its concerns with C.L. at any point, she could have shared her perspective and perhaps bridged a solution or compromise, perhaps leading to more effective therapy.

2. <u>C.L.'s Use of Her Service Dog Would Not Constitute a Fundamental Alteration to Del Amo's Program.</u>

Even if it were true that Aspen's presence would diminish the quality of C.L.'s experience at Del Amo, that would not constitute a fundamental alteration to the Del Amo program. If Del Amo allowed Aspen to accompany C.L., Del Amo still would be able to provide an array of mental health services, group therapy, art therapy, the anger wall, and room and board in a secure setting, to C.L. and to other patients. The program itself would remain unchanged in its fundamental character, its essence. *See PGA Tour, Inc.,* 532 U.S. at 663. As Del Amo's own expert Dr. Solt testified, if C.L. went to Del Amo with Aspen, Del Amo would still be providing her with therapy, and with structure, and with tools or techniques. Solt Test., Tr. 4 Vol. 1 at 76:13-77:19.

Even if Del Amo had in fact made an individualized inquiry based on real facts and evidence, and determined (beyond mere speculation) that it would be best for Aspen not accompany C.L. during therapy sessions, Aspen could still accompany C.L. during her admission -- including downtime, sleeping, and showering, when C.L. would benefit from Aspen's tasks. As service dog expert Ms. Gonzalez testified without rebuttal, based on her experience, service dogs could "easily" be handled to not interfere in therapy. The handler could instruct the dog to remain "down," "stay" on the other side of a room, or could tether the dog to remain in sight but not performing tasks. Gonz. Test. Tr. 3 Vol. 2 at 18:9-20:1. However, unfortunately, Del Amo summarily refused Aspen admission,

1 without considering the tasks Aspen performs for C.L. or the impact excluding Aspen would have on C.L.'s participation. C.L. Test. Tr. 2 Vol. 1 at 102:19-103:14, 103:23-104:20.

Additionally, and importantly for people with disabilities, the decision to balance the benefits a service dog provides against any postulated loss in benefit of the program is and should be the sole choice of the service dog user herself. *See Sullivan By & Through Sullivan v. Vallejo City Unified Sch. Dist.*, 731 F. Supp. 947, 961 (E.D. Cal. 1990). "[D]eference must be shown to the manner in which a [disabled] person chooses to overcome the limitations created by her disabling condition." *Id.* at 958. As with any therapy and any patient, it is up to C.L. to embrace and implement any treatment plan or tool presented to her. It is ludicrous that Del Amo encourages C.L. to develop a "911 card" listing various de-escalation tools, *see* Yahnian Decl., Ex. 51 at ¶ 4 and Ex. 119 at 7-8, yet bars the tool she finds most effective. C.L. Test. Tr. 2 Vol. 1 at 50:21-51:22; *see also* Ex. 39 (C.L.'s 911 cards). C.L., not Del Amo, gets to choose whether to ground herself by sniffing an orange or signaling Aspen. The ADA does not permit discrimination against people with disabilities "for their own good." As the *Sullivan* court observed about Section 504:

> Put simply, the statute requires accommodation to the plaintiff's [disability]; it does not require that she accommodate to the views of [others] about her condition. In sum, as long as the choices the [disabled] person makes concerning how to effectively address her circumstances are reasonable, [the Act] both protects those choices from scrutiny, and prohibits discrimination against the disabled person on the basis of those choices.

731 F. Supp. at 958.

Del Amo's belief that C.L. should rely less on Aspen, or more on other means of managing her disability, is not a legitimate basis for excluding a service dog from a public accommodation. Del Amo presented no meaningful evidence

---

**15**

whatsoever that C.L.'s reliance on Aspen would in fact (or even likely) work some fundamental change to the nature of the program that Del Amo provides.

## CONCLUSION

Plaintiff respectfully requests that the Court find (1) that Aspen was a service dog at the time of trial and (2) that Del Amo did not sustain its burden to establish that Aspen's presence on the ward would cause a fundamental alteration in Del Amo's goods, services, facilities, privileges, advantages, or accommodations. Judgment should be entered in favor of Plaintiff C.L. and the requisite injunction should issue.

Dated: May 28, 2021      Respectfully Submitted,

DISABILITY RIGHTS LEGAL CENTER
BAZELON CENTER FOR MENTAL HEALTH LAW
DERBY, McGUINNESS & GOLDSMITH, LLP


*/s/ Celia McGuinness*
By Celia McGuinness
Attorneys for Plaintiff