Scott D. Buchholz, Esq. – State Bar No. 139979
Scott.buchholz@dbt.law
Moira S. Brennan, Esq. – State Bar No. 242126
Moira.brennan@dbt.law
**DUMMIT, BUCHHOLZ & TRAPP**
101 W. Broadway, Suite 1400
San Diego, California 92101-8122
(619) 231-7738
Fax    (619) 231-0886

Attorneys for Defendant, DEL AMO HOSPITAL, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| C.L., an individual,<br><br>                 Plaintiff,<br><br>        v.<br><br>DEL AMO HOSPITAL, INC. a California corporation; and DOES 1-10, inclusive,<br><br>                 Defendants.<br>_____ | Case No. 8:18-CV-00475-DOC (DFMX)<br><br>DEL AMO HOSPITAL'S SUPPLEMENTAL BRIEF ON REMAND FROM NINTH CIRCUIT COURT OF APPEAL<br><br>Hearing Date:  July 12, 2021<br>Time: 8:30 a.m.<br><br>Courtroom:  9D<br>Judge:  Hon. David O. Carter |

# **<u>TABLE OF CONTENTS</u>**

I.  ISSUE 1 – WHETHER C.L.'S DOG WAS MORE LIKELY THAN
NOT A SERVICE DOG AT THE TIME OF TRIAL .......................................1

1. The trial testimony by C.L. wherein she claimed to self-train her dog Aspen
and that Aspen was capable of performing service dog tasks was reasonably
found to be not credible ..............................................................................1

2. Plaintiff's expert, Katie Gonzalez, had not witnessed Aspen perform any
service dog tasks as is indicated by her testimony. .....................................2

3.  Katie Gonzalez relied exclusively on C.L.'s descriptions of how she trained
the dog and descriptions of how Aspen performed certain tasks................3

II. ISSUE 2 –WHETHER DEL AMO HOSPITAL PROVED ITS
AFFIRMATIVE DEFENSE OF FUNDAMENTAL ALTERATION..............3

1.  The clinical decisions regarding the best course of treatment for C.L. were
determined by the treatment team. ..............................................................4

2.  An individualized assessment for C.L. was completed ........................5

3.  C.L.'s attending psychiatrist, Dr. Hirsch's testimony...........................6

4.  Defense expert Anna Solt, M.D. ..........................................................7

III.  CONCLUSION .......................................................................................9

# **TABLE OF AUTHORITIES**

## **Cases**

*Arizona ex re. Goddard v. Harkins Amusement Enters, Inc.,*
 603 F.3d 666, 670 (9th Cir. 2012). .......................................................... 3

*Lentini v. California Center for the Arts, Escondido,* 370 F.3d 837, 845
(9th Cir. 2004)................................................................................ 4

*Tamara v. El Camino Hosp.* (2013) 964 F. Supp. 2d 1077 .................................. 4

DEL AMO HOSPITAL, INC.'S SUPPLEMENTAL BRIEF ON REMAND FROM NINTH CIRCUIT COURT OF
APPEAL

Consistent with the request of the District Court, Defendant Del Amo
Hospital, Inc. hereby submits this supplemental brief regarding the evidence
presented at trial in support of Del Amo Hospital, Inc.'s position on remand.

## I.    ISSUE 1 – WHETHER C.L.'S DOG WAS MORE LIKELY THAN NOT A SERVICE DOG AT THE TIME OF TRIAL

As stated in defendant's initial brief, it would be appropriate for the District
Court to clarify its Findings of Fact and Conclusions of Law regarding the bases for
finding C.L.'s testimony and that of her expert were insufficient to meet her burden
establishing Aspen was a trained service dog.

At trial the only testimony the Court could rely upon that Aspen was a trained
service dog was C.L.'s own testimony at trial that she self-trained the dog and that
Aspen could perform certain tasks.  Dkt. 199, 7:25-27; 11:24-27.  The District Court
stated in its Findings of Fact that: "Other than C.L.'s assertions, there is no evidence
in the record as accepted by the Court that Aspen was trained to perform, and could
perform, the outlined tasks." Dkt. 199, 7:25-17.

**1.    The trial testimony by C.L. wherein she claimed to self-train her dog Aspen and that Aspen was capable of performing service dog tasks was reasonably found to be not credible.**

Plaintiff claimed that Aspen performed the task of alerting her when her
anxiety spiked by putting her front paws on her.  Dkt 162, RT D2 V1, 45:12-15;
attached to Appendix as Exhibit A.  Plaintiff did not demonstrate that this behavior
was in response to an anxiety attack since Aspen would also put her front paws on
C.L. when she was excited to see her.  Dkt 175, RT D2 V2, 44:6-12, attached to
Appendix as Exhibit B.

Other behaviors C.L. described such as sitting outside the shower and alerting
if someone approached the front door are also pet dog behaviors.  Dkt 175, RT D2
V2, 48:15-49:20, attached to Appendix as Exhibit B.

DEL AMO HOSPITAL, INC.'S SUPPLEMENTAL BRIEF ON REMAND FROM NINTH CIRCUIT COURT OF
APPEAL

Aspen purportedly woke C.L. from nightmares but C.L. testified that this was a behavior she adopted on her own and was not a trained task.  Dkt 162, RT D2 V1, 34:5, attached to Appendix as Exhibit A.

When Aspen was three months old, Plaintiff attended a puppy class at Wags and Wiggles. Dkt 162, RT D2 V1, 32:12-18, attached to Appendix as Exhibit A.  Wags and Wiggles does not conduct training specific to service dogs and is not certified in service dog training. Dkt 175, RT D2 V2, 18:21-19:12, attached to Appendix as Exhibit B.  Plaintiff then took a basic obedience class at Wags and Wiggles. Dkt 175, RT D2 V2, 19:23-20:3, attached to Appendix as Exhibit B.

Plaintiff alleges that she likely trained Aspen to perform a cornering task, an about face task, and a boundary task in 2014.  Dkt 162, RT D2 VI, 62:21–63:22, attached to Appendix as Exhibit A.

Plaintiff also alleges that she trained Aspen to perform a medical alert and a task to help her stay alert while driving in 2015. Dkt 162, RT D2 VI, 63:23–65:4, 67:5–16, attached to Appendix as Exhibit A.

Plaintiff further alleges that she taught Aspen to perform the tasks of grounding, interruption of self-harm, and sitting guard outside of the shower.  Dkt 162, RT D2 VI, 40:10–43:25, 47:19–48:22, attached to Appendix as Exhibit A.

**2.    Plaintiff's expert, Katie Gonzalez, had not witnessed Aspen perform any service dog tasks as is indicated by her testimony.**

Ms. Gonzalez never observed Aspen engaging in a behavior responsive to C.L.'s psychological signs and symptoms.  Dkt 176, RT D3 V2, 48:21-49:21, attached to Appendix as Exhibit C.

Ms. Gonzalez never observed Aspen perform dynamic pressure in response to C.L. experiencing anxiety or a panic attack. Dkt 176, RT D3 V2, 48:1-16, attached to Appendix as Exhibit C.

Ms. Gonzalez conceded that in June 2019, she merely observed C.L. pick up

DEL AMO HOSPITAL, INC.'S SUPPLEMENTAL BRIEF ON REMAND FROM NINTH CIRCUIT COURT OF APPEAL

Aspen and place Aspen on her lap.  Dkt. 176, RT D3 V2, 46:1-10, 46:18-21, attached to Appendix as Exhibit C.

Ms. Gonzalez also observed Aspen going around the corner of a building in front of C.L.  Dkt 176, RT D3 V2, 46:25-47:5, attached to Appendix as Exhibit C. However, Ms. Gonzalez acknowledged that on this occasion, the dog did not stop or provide any alert task. Dkt 176, RT D3 V2, 47:10-15, attached to Appendix as Exhibit C.

Little Angels and Katie Gonzalez did not observe Aspen with C.L. until 2019, nor did any other individual, service dog trainer or otherwise, observe Aspen with C.L. and testify that Aspen was a trained service animal during this time period. Dkt 176, RT D3 V2, 30:3–9, 41:22–51:1, attached to Appendix as Exhibit C.

**3.**     **Katie Gonzalez relied exclusively on C.L.'s descriptions of how she trained the dog and descriptions of how Aspen performed certain tasks.**

The first, and only, instance in which Katie Gonzalez observed C.L. and Aspen together occurred in June 2019.  Dkt 176, RT D3 V2, 28:19–30:16, attached to Appendix as Exhibit C.

Ms. Gonzalez's testimony indicated that she did not observe service dog tasks, but rather observed behaviors typical of a well-behaved companion animal. Dkt 176, RT D3 V2, 48:18-49:21, attached to Appendix as Exhibit C.

## II.     ISSUE 2 –WHETHER DEL AMO HOSPITAL PROVED ITS AFFIRMATIVE DEFENSE OF FUNDAMENTAL ALTERATION

A plaintiff in a Title III ADA claim must prove the following elements in order to prevail: (1) that plaintiff is disabled within the meaning of the ADA; (2) that the defendant owns, leases, or operates a place of public accommodation; and (3) that plaintiff was denied public accommodation by the defendant due to his or her disability.  *Arizona ex re. Goddard v. Harkins Amusement Enters, Inc*., 603 F.3d 666, 670 (9th Cir. 2012).

"Hospitals may refuse to accommodate an individual with a disability if the accommodation would fundamentally alter the nature of the facility or service offered." *Tamara v. El Camino Hosp.*, 964 F. Supp. 2d 1077, 1083 (N.D. Cal 2013); 42 U.S.C. § 12182(b)(2)(A)(ii).) "Such an assertion is an affirmative defense." *Tamara, supra,* at 1083; *Lentini v. California Center for the Arts, Escondido,* 370 F.3d 837, 845 (9th Cir. 2004).

Plaintiff C.L. had been hospitalized on a voluntary basis in the NTC Program on three occasions prior to the time she sought admission with her dog.  Dkt 162, RT D2 V1, 17:6-10, 17:16-19; attached to Appendix as Exhibit A.  Dkt 180, RT D3 V4, 86:9-87:6, 88:9-17, 89:7-10, attached to Appendix as Exhibit D.   Thereafter, plaintiff sought voluntary admission to Del Amo Hospital's inpatient NTC Program on multiple occasions over a four-year period from April 2013 to August 2017.

**1.      The clinical decisions regarding the best course of treatment for C.L. were determined by the treatment team.**

Plaintiff sought treatment at Del Amo Hospital through their National Treatment Center Program (NTC Program) which is a specialized inpatient program for the purpose of trauma stabilization and resolution.  Dkt 176, RT D3 V2, 67:19-23, attached to Appendix as Exhibit C.

The NTC Program was overseen by a treatment team.  Dkt 184, RT D3 V3, 33:9-22, attached to Appendix as Exhibit E.  Dkt 176, RT D3 V2, 74:6-19, attached to Appendix as Exhibit C.

The treatment team consisted of the NTC Program Director who is a licensed clinical social worker, the NTC Program Coordinator, who is also a licensed clinical social worker, members of the nursing staff, and a psychiatrist.  Dkt. 176, RT D3 V2 76:8-77:21, attached to Appendix as Exhibit C.  Dkt 184, RT D3 V3, 33:9-22, attached to Appendix as Exhibit E.

/ / /

## 2. An individualized assessment for C.L. was completed

Program Coordinator Kristie Yahnian testified that C.L. was well known to the NTC Program and the treatment team, as she had three prior hospital admissions to the program. Dkt 180, RT D3 V4, 86:9-87:6, 88:9-17, 89:7-10, attached to Appendix as Exhibit D. As such, the treatment team was fully aware of C.L.'s pathologies and treatment needs during her hospital admissions wherein she sought admission with Aspen. Dkt 180, RT D3 V4, 86:9-87:6, 88:9-17, 89:7-10, attached to Appendix as Exhibit D.

Plaintiff contacted Del Amo Hospital prior to her April 2014 admission to ask about bringing her dog Aspen with her. Dkt. 180, RT D3 V4, 19:9-16, attached to Appendix as Exhibit D. Plaintiff told the Program Coordinator, Kristie Yahnian, that she would like to bring her dog with her for comfort and to help her work on her issues. Dkt. 180, RT D3 V4, 19:17-22, attached to Appendix as Exhibit D.

Program Coordinator Kristie Yahnian brought C.L.'s request to bring her dog to the treatment team and further described the bases for the treatment team's decision. Dkt. 180, RT D3 V4, 19:23-20:1, 21:9-25, attached to Appendix as Exhibit D.

Treatment within the NTC Program was individualized, highly structured, and intensive. Treatment modalities within the program included cognitive behavioral therapy, behavioral modification, trauma therapy, talk therapy, mindfulness, grounding, grief and loss therapy, and safety and containment. Dkt. 180, RT D3 V4 9:3-15, attached to Appendix as Exhibit D.

Patients are expected to support each other by listening and giving supportive feedback. Interaction among patients is a very important part of the therapeutic process. Dkt. 180, RT D3 V4 10:6-18, attached to Appendix as Exhibit D.

Yahnian took plaintiff's request to the NTC Treatment Team, and the team discussed the pros and cons of allowing plaintiff to bring her dog. Dkt. 180, RT D3

V4, 19:23-20:1, 21:9-25, 69:5-21, attached to Appendix as Exhibit D.

Yahnian believed that the dog would interfere with plaintiff's treatment, because plaintiff would rely on the dog rather than working other grounding techniques such as developing an internal dialogue to deal with her symptoms.  Dkt. 180, RT D3 V4 19:20-22:5, 65:12-66:8, attached to Appendix as Exhibit D. Mariam Rahimi, the Program Director, concurred that the dog would interfere with treatment.  Dkt 184, RT D3 V3, 102:16-20, 104:1-12, attached to Appendix as Exhibit E.

After discussing plaintiff's request, the treatment team decided that the dog's presence would interfere with plaintiff's treatment.  Dkt. 180, RT D3 V4 19:24-20:1, 71:3-12, attached to Appendix as Exhibit D.  Dkt. 176, RT D3 V2 92:12-93:6, attached to Appendix as Exhibit C

### 3.   C.L.'s attending psychiatrist, Dr. Hirsch's testimony

Dr. Hirsch who testified at trial was the attending psychiatrist for each of plaintiff's admissions to the Del Amo Hospital and was the admitting psychiatrist for all but one of plaintiff's admissions.  Dkt. 176, RT D3 V2 78:20-79:4, attached to Appendix as Exhibit C; trial exhibits 113, 114, 122, 125, 132, 139, 154, 165, 173, 183, 193, Admission Reports.

Dr. Hirsch, the NTC Medical Director and plaintiff's attending psychiatrist, agreed with the decision to exclude plaintiff's dog during plaintiff's hospitalizations. Dkt. 176, RT D3 V2 93:22-94:1, 94:7-14, attached to Appendix as Exhibit C.

In Dr. Hirsh's opinion, C.L.'s use of a psychiatric service dog to mitigate the symptoms for which she was being treated would not fit in with the methodology used in treatment.  Dkt. 176, RT D3 V2 100:20-101:5, attached to Appendix as Exhibit C.

In Dr. Hirsch's opinion, the presence of C.L.'s dog would interfere with her therapeutic treatment on the unit because the purpose of the NTC Program was to

help patients learn, gain, and utilize healthy methods of coping and functioning. Dkt. 176, RT D3 V2 94:7-14, 95:7-96:7, attached to Appendix as Exhibit C.

Dr. Hirsch believed that having her dog with her would interfere with the therapeutic process because the treatment of psychiatric disorders such as PTSD is directed at helping the individual become more tolerant of very uncomfortable feeling states both to understand where those uncomfortable feelings come from and to tolerate them better. Dkt. 176, RT D3 V2 95:7-96:7, 99:11-15, attached to Appendix as Exhibit C.

In Dr. Hirsch's clinical opinion, the therapeutic process during hospitalization required that the patient have a clear experience of the emotional states that are causing the patient difficulty, and the presence of a psychiatric service dog that would mitigate the full volume or intensity of those emotional states would interfere with that. Dkt. 176, RT D3 V2 95:25-96:7, 99:11-15, attached to Appendix as Exhibit C.

Dr. Hirsch applied the same standard in declining to treat other individuals who state that they require the use of external objects, situations, or substances as a means of dealing with emotions for which they are involved in therapy. Dkt. 176, RT D3 V3 95:18-96:7, attached to Appendix as Exhibit C.

This included patients who refused to give up alcohol or street drugs during treatment. Dkt. 176, RT D3 V3 95:18-96:7, attached to Appendix as Exhibit C.

### 4.    Defense expert Anna Solt, M.D.

Anna Solt, M.D. was called as an expert by Del Amo Hospital at trial. Dr. Solt is a Board Certified Psychiatrist who completed her residency at Harvard South Shore, psychiatry residency program affiliated with Harvard Medical School and the Boston Veterans Administration. Dkt. 177, RT D4 V1 7:22-25, 8:25-9:2, 9:6-19, attached to Appendix as Exhibit F.

Dr. Solt expressed the opinion with a reasonable degree of medical certainty

that the presence of the service dog would have interfered in plaintiff's clinical care. Dkt. 177, RT D4 V1 12:15-24, 22:10-23, attached to Appendix as Exhibit F.

Dr. Solt opined that it would be too tempting for plaintiff to try to utilize the service dog instead of implementing tools that are taught within the program. Dkt. 177, RT D4 V1 22:16-23, attached to Appendix as Exhibit F.

Based on Dr. Solt's review of plaintiff's medical records, Dr. Solt saw no indication that the efficacy of plaintiff's treatment at Del Amo was diminished and concluded that it was actually enhanced.  Dkt. 177, RT D4 V1 28:23-29:3, attached to Appendix as Exhibit F.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

DEL AMO HOSPITAL, INC.'S SUPPLEMENTAL BRIEF ON REMAND FROM NINTH CIRCUIT COURT OF APPEAL

### III.   CONCLUSION

C.L.'s testimony regarding the tasks her dog was capable of performing was not credible and no other person or evidence was presented to establish that Aspen qualified as a service dog.  As such, the appropriate action is for the District Court to clarify its Findings of Fact and Conclusions of Law to reflect the bases for a determination that C.L. was not credible and that Aspen was an emotional support dog and not a service dog.  If the District Court reaches the second issue, a finding that mandates the clinicians at Del Amo Hospital modify their treatment in such a manner that is inconsistent with their clinical judgment would be a disservice to their patients.  Such a mandate would fundamentally alter the manner in which Del Amo Hospital provides psychiatric services to their patients, including C.L.  The Court should appropriately disallow such a fundamental alternation.

Respectfully submitted,

DATED:  June 21, 2021                              DUMMIT, BUCHHOLZ & TRAPP

By:  /s/ *Moira S. Brennan*
_____
Scott D. Buchholz
Moira S. Brennan
Attorneys for Defendant, DEL AMO HOSPITAL, INC.

DEL AMO HOSPITAL, INC.'S SUPPLEMENTAL BRIEF ON REMAND FROM NINTH CIRCUIT COURT OF APPEAL