8:18-cv-000475-DOC - 6/3/2021 - Item Number 2

1

1    **UNITED STATES DISTRICT COURT**

2    **CENTRAL DISTRICT OF CALIFORNIA**

3    **HONORABLE DAVID O. CARTER, JUDGE PRESIDING**

4    - - - - - - -

5    C.L., an individual,          )
                                    )        **CERTIFIED**
6           Plaintiff,             )
                                    )
7       vs.                        ) No. 8:18-cv-000475-DOC
                                    )      Item Number 2
8    DEL AMO HOSPITAL, INC., a     )
     California corporation,       )
9                                   )
            Defendants.            )
10   _____)

11

12

13

14           REPORTER'S TRANSCRIPT OF PROCEEDINGS

15        Status Conference Re: Ninth Circuit Remand

16              SANTA ANA, California

17            Thursday, June 3, 2021

18

19

20

21

22   Debbie Gale, CSR 9472, RPR, CCRR
     Federal Official Court Reporter
23   United States District Court
     411 West 4th Street, Room 1-053
24   Santa Ana, California 92701
     (714) 558-8141

25

1   **APPEARANCES OF COUNSEL:**

2   FOR PLAINTIFF C.L., *an individual*:

3       Christopher H. Knauf
        KNAUF ASSOCIATES
4       2001 Wilshire Boulevard
        Suite 305
5       Santa Monica, California 90403
        310-829-4250
6       ck@goodlaw.biz

7       Alexandra M. Robertson
        KNAUF ASSOCIATES
8       2001 Wilshire Boulevard
        Suite 305
9       Santa Monica, California 90403
        310-829-4250
10      alex@goodlaw.biz

11

12  FOR DEFENDANT DEL AMO HOSPITAL, INC., *a California corporation*:

13

14      Moira S. Brennan
        DUMMIT BUCHHOLZ & TRAPP
15      101 West Broadway
        Suite 1400
16      San Diego, California 92101
        619-231-7738
        moira.brennan@dbtlaw.org
17

18  ALSO PRESENT:

19      (none)

20

21

22

23

24

25

8:18-cv-000475-DOC - 6/3/2021 - Item Number 2

3

| | | |
|---|---|---|
| 1 | **I N D E X** | |
| 2 | **PROCEEDINGS** | **PAGE** |
| 3 | STATUS CONFERENCE RE: NINTH CIRCUIT REMAND | |
| 4 | Appearances | 4 |
| 5 | Plaintiff's position (Mr. Knauf) | 4 |
| 6 | Defense' Position (Ms. Brennan) | 6 |
| 7 | Plaintiff's Rebuttal (Mr. Knauf) | 10 |
| 8 | Defense Argument re Fundamental Alteration | 13 |
| 9 | Plaintiff's Rebuttal re Fundamental Alteration | 17 |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |

8:18-cv-000475-DOC - 6/3/2021 - Item Number 2

4

|  | 1 | **SANTA ANA, CALIFORNIA, THURSDAY, JUNE 3, 2021** |
|---|---|---|
|  | 2 | **Item Number 2** |
|  | 3 | (5:45 p.m.) |
| 05:45 | 4 | THE COURT:  Counsel, good evening.  If you would |
|  | 5 | make your appearances. |
| 05:45 | 6 | **APPEARANCES** |
| 05:45 | 7 | MR. KNAUF:  Good evening, Your Honor.  Christopher |
|  | 8 | Knauf for Plaintiff C.L. |
| 05:45 | 9 | THE COURT:  And with you is -- |
| 05:45 | 10 | MS. ROBERTSON:  Alexandra Robertson for |
|  | 11 | Plaintiff C.L. |
| 05:45 | 12 | THE COURT:  And for the defendant? |
| 05:45 | 13 | MR. BRENNAN:  Moira Brennan on behalf of Del Amo |
|  | 14 | Hospital, Inc. |
| 05:45 | 15 | THE COURT:  Okay.  Now, the Court's read the |
|  | 16 | decision from the Circuit numerous times.  I wanted to get |
|  | 17 | your thoughts. |
| 05:46 | 18 | It's really a mandate to reconsider and/or to make |
|  | 19 | additional findings in this matter.  And I'm not certain if |
|  | 20 | reopening testimony would be valuable.  I don't think so; I |
|  | 21 | think it's the original record that we have before us. |
| 05:46 | 22 | So what are your thoughts on behalf of either |
|  | 23 | party, before I impart my wisdom? |
| 05:46 | 24 | **PLAINTIFF'S POSITION** |
| 05:46 | 25 | MR. KNAUF:  Your Honor, plaintiff would appreciate |

Case 8:18-cv-00475-DOC-DFM   Document 248   Filed 12/20/21   Page 5 of 28   Page ID #:6823
8:18-cv-000475-DOC - 6/3/2021 - Item Number 2

5

|  | 1 | a ruling on the service dog issue.  Plaintiff believes the |
|---|---|---|
|  | 2 | evidence is overwhelming that Aspen was certainly at the |
|  | 3 | time of trial a service animal, if not before trial.  And in |
|  | 4 | making that ruling, Your Honor, plaintiff would succeed in |
|  | 5 | proving her *prima facie* elements and enter judgment in favor |
|  | 6 | of plaintiff. |
| 05:46 | 7 | We understand the defense, uh, is -- |
| 05:47 | 8 | *(Court reporter requests clarification for the* |
|  | 9 | *record.)* |
| 05:47 | 10 | MR. KNAUF:  I apologize. |
| 05:47 | 11 | We understand that the defense is asserting a |
|  | 12 | fundamental alteration argument under the ADA as its |
|  | 13 | affirmative defense for which the defense would have the |
|  | 14 | burden of proof. |
| 05:47 | 15 | THE COURT:  And how would you how suggest, before |
|  | 16 | I turn to the defense, that the Court proceed with this |
|  | 17 | matter? |
| 05:47 | 18 | MR. KNAUF:  Your Honor, my understanding is that |
|  | 19 | we have a full trial, uh, an evidence -- |
| 05:47 | 20 | *(Court reporter requests clarification for the* |
|  | 21 | *record.)* |
| 05:47 | 22 | MR. KNAUF:  -- evidentiary record. |
| 05:47 | 23 | And, uh, we have additional -- we have briefing |
|  | 24 | post-trial, um, and we have now briefing before the Court, |
|  | 25 | essentially, augmenting the proposed findings of fact and |

Case 8:18-cv-00475-DOC-DFM   Document 248   Filed 12/20/21   Page 6 of 28   Page ID
#:6824
8:18-cv-000475-DOC - 6/3/2021 - Item Number 2

6

|          |    |                                                              |
|----------|----|--------------------------------------------------------------|
|          | 1  | conclusions of law at trial.                                 |
| 05:47    | 2  | THE COURT:  So does the Court have anything --               |
|          | 3  | does the Court have, then, from your perspective, a full      |
|          | 4  | panoply of briefing in this matter?  Is there anything else   |
|          | 5  | that you'd be requesting before I turn to the defense in      |
|          | 6  | terms of any extended briefing?                               |
| 05:48    | 7  | Anything other than the Court making this                     |
|          | 8  | decision.                                                     |
| 05:48    | 9  | MR. KNAUF:  At this moment, Your Honor, uh,                   |
|          | 10 | plaintiff does not.                                           |
| 05:48    | 11 | THE COURT:  Okay.  Let me turn to the defense for            |
|          | 12 | your wisdom, as well.                                         |
| 05:48    | 13 | **DEFENSE' POSITION**                                         |
| 05:48    | 14 | MR. BRENNAN:  We agree with the Court's assessment            |
|          | 15 | that the mandate directs that the findings of fact be         |
|          | 16 | clarified or supplemented because it seems to us there was    |
|          | 17 | some ambiguities in there.  The law was presented at trial    |
|          | 18 | and in various writings that, uh, no certification            |
|          | 19 | requirement -- that was not a defense of -- at trial, that    |
|          | 20 | the dog was not certified.                                    |
| 05:48    | 21 | And that the evidence was presented that C.L.'s              |
|          | 22 | testimony was the only evidence before the Court truly that   |
|          | 23 | said this dog's a service dog.  So we think on that basis is  |
|          | 24 | that the only thing the Court needs to do at this point is    |
|          | 25 | to clarify its original findings of fact to establish that    |

Case 8:18-cv-00475-DOC-DFM    Document 248    Filed 12/20/21    Page 7 of 28    Page ID #:6825
8:18-cv-000475-DOC - 6/3/2021 - Item Number 2

7

1    the basis for that finding was not based upon a

2    certification requirement, but it was based on the fact that

3    C.L. was the only one who presented evidence and said this

4    dog is a trained service dog.  But there was no, uh -- the

5    plaintiff's expert had to rely upon her word.  And plaintiff

6    read a book on how to train your dog.  And -- and I can read

7    a book on how to become an electrician, and say, "Okay.  I'm

8    an electrician, but that doesn't necessarily mean I know how

9    to wire a house."

05:49    10    So similarly, plaintiff can say that -- that this

11    is a trained service dog, but no one else had -- had seen

12    evidence of that.  And everything she described -- and it's

13    already in the record; we don't need any additional

14    testimony; we don't need --

05:50    15    *(Court reporter requests clarification for the*

16    *record.)*

05:50    17    THE COURT:  Just a moment.

05:50    18    Are you saying, then, that the record needs to be

19    supplemented or clarified?  Or are you saying that this is a

20    credibility determination concerning C.L.?

05:50    21    MR. BRENNAN:  I'm strongly saying this is a

22    credibility determination; that the Court relied upon C.L.'s

23    testimony and -- and the expert's testimony who also relied

24    on -- on what C.L. had told her.  And based upon that, that

25    the Court -- it was reasonable for the Court to find that

8:18-cv-000475-DOC - 6/3/2021 - Item Number 2

8

| | | |
|---|---|---|
| | 1 | C.L.'s testimony was not credible. |
| 05:50 | 2 | MR. KNAUF:  If I may, Your Honor? |
| 05:50 | 3 | THE COURT:  Just a moment. |
| 05:50 | 4 | How would that -- if the Court decided that the |
| | 5 | parties across-the-board were credible, in other words, no |
| | 6 | one was fabricating, then what's your response to that?  In |
| | 7 | other words, if this is not a credibility question, if this |
| | 8 | is -- very difficult question, quite frankly; society's |
| | 9 | floundering with this issue -- then what's your position? |
| 05:51 | 10 | MR. BRENNAN:  Well, I would find that fairly |
| | 11 | difficult.  It means that anyone who takes the stand and -- |
| | 12 | and says "I'm X" or "This is true," that the Court has to |
| | 13 | accept that as true.  So without -- |
| 05:52 | 14 | THE COURT:  And what part do you believe would be |
| | 15 | non-credible?  That she didn't read a book?  That she -- |
| 05:52 | 16 | MR. BRENNAN:  No. |
| 05:52 | 17 | THE COURT:  -- that -- what part would be |
| | 18 | non-credible? |
| 05:52 | 19 | MR. BRENNAN:  The actual fact that C.L.'s dog |
| | 20 | performs tasks directly related to her disability.  Because |
| | 21 | the things that she described in her trial testimony, uh, |
| | 22 | were similar to that of a pet dog. |
| 05:52 | 23 | She picks the dog up and puts the dog on her lab. |
| | 24 | Well, I can do that with a pet dog.  Uh, the dog barks when |
| | 25 | someone comes to the front door, but that is also very |

8:18-cv-000475-DOC - 6/3/2021 - Item Number 2

9

```
        1   common among pet dogs.

05:52   2           The expert, uh, didn't see the dog perform any

        3   tasks.  So the dog trainer expert, Gonzalez, she saw the dog

        4   in June 2019, but didn't see the dog perform any

        5   disability-related task.

05:53   6           So has to be a task related directly --

05:53   7           (Court reporter requests clarification for the

        8       record.)

05:53   9           MR. BRENNAN:  -- directly related to the

       10   individual's disability.

05:53  11           THE COURT:  One of the concerns the Circuit has

       12   and of course this Court has, is the disparity or inability

       13   to pay, um, for something that we might call

       14   "certification"; that people who have what they perceive to

       15   be the need of a service animal would be precluded because

       16   of cost.

05:53  17           How do you respond to that?

05:53  18           MR. BRENNAN:  I am a service dog advocate.  I

       19   am --

05:53  20           THE COURT:  No.  That's not the response that --

05:53  21           MR. BRENNAN:  So that -- it's --

05:53  22           THE COURT:  I --

05:53  23           MR. BRENNAN:  I don't think it's a question of

       24   whether an individual can train their dog or not train their

       25   dog.
```

8:18-cv-000475-DOC - 6/3/2021 - Item Number 2

05:54  1       I think this particular individual, C.L., had --

2  it was her perception, perhaps, and her opinion that she had

3  a trained service dog.  And that's not to say that in the

4  general population of individuals who cannot afford to pay,

5  they can certainly train their own dogs and have

6  accomplished service dogs who perform tasks directly related

7  to that individual's disability, even a psychiatric service

8  dog.  And I think that that's absolutely acceptable and --

9  and should be public policy.

05:54  10       However, this particular individual may have a

11  perception that "I have a trained service dog."  But I

12  believe that perception is not reality and not fact that

13  this particular individual does not have a trained service

14  dog.

05:54  15       THE COURT:  Okay.  Let me turn back to the

16  plaintiff.

05:55  17                    **PLAINTIFF'S REBUTTAL**

05:55  18       MR. KNAUF:  Your Honor, I -- I understand that

19  this trial occurred a while back, in July 2019.  Counsel's

20  completely misrepresenting the evidence that was presented

21  at trial.

05:55  22       Katie Gonzalez, uh, as we recall, impressed this

23  Court with her credentials as a 20-to-25-plus-year

24  experienced service dog trainer.  Runs her own Little Angel

25  Service Dogs in San Diego.  And, uh, the Court appreciated

8:18-cv-000475-DOC - 6/3/2021 - Item Number 2

11

1    her expert testimony.  The Court was concerned that Aspen

2    did not meet Mr. Gonzalez's program's certifications.  That

3    was the nature of the initial appeal.

05:55    4         However, for Counsel to sit here and say the

5    evidence didn't include Katie Gonzalez testifying under oath

6    to this Court that she personally observed C.L. and Aspen in

7    a public place for at least 90 minutes, if not two hours,

8    performing multiple tasks, and asking C.L. to describe the

9    manner which the dog was trained, is -- I'm -- I apologize,

10   Your Honor.  I actually am not usually this emotional in

11   response, but I -- I am taken by Counsel's representation of

12   the evidence at trial in this case.

05:56    13        THE COURT:  Okay.  And is there any response by

14   the defendant?

05:56    15        MR. BRENNAN:  Well, we would agree that Gonzalez

16   testified she saw the dog in June of 2019.  But when

17   questioned, she said that she saw the dog go around the

18   corner in front of C.L. and the dog is trained supposedly to

19   stop if there's a person on the other side.

05:56    20        She was asked, "Well, did -- was there a person on

21   the other side, and did the dog perform the task of

22   stopping?"  And Gonzalez says [sic], "No, there was no

23   person there."  So she did not observe that task.

05:56    24        When she was asked if, uh, she saw this task of

25   grounding, where the dog, when the individual is anxious or

Case 8:18-cv-00475-DOC-DFM   Document 248   Filed 12/20/21   Page 12 of 28   Page
ID #:6830
8:18-cv-000475-DOC - 6/3/2021 - Item Number 2

12

```
 1   emotionally distraught, the dog will sit on a person's lap
 2   to ground them, center them.  And Gonzalez testified that
 3   she -- that C.L. picked the dog up and placed her on her
 4   lap.
```

05:57    5        So the defendant's position is those are not

        6    trained tasks.  The dog wasn't doing anything that is a

        7    trained task.  Did not -- so Gonzalez did not actually

        8    observe that.  And then Gonzalez testified at trial she had

        9    not seen the dog at any other time; it was that 90-minute

    10    period in June 2019.

05:57    11        THE COURT:  All right.

05:57    12        Is there anything further then, or is this matter

    13    submitted?

05:57    14        MR. KNAUF:  Your Honor, again, uh, Counsel's --

    15    been a pleasure to work with on lig- -- litigation sense --

    16    completely misrepresenting the trial testimony in this case.

05:57    17        But, otherwise, on that issue, plaintiff submits,

    18    Your Honor.

05:57    19        THE COURT:  Counsel?

05:57    20        MR. BRENNAN:  Yeah, we would submit.

05:57    21        THE COURT:  All right.  Then let me bid you good

    22    evening.  And please drive carefully.  I'm sorry that the

    23    other matter took so long.  It's a criminal matter, though,

    24    and I had to put it before you because we've got marshals

    25    and they have to transport back.  So pardon us not getting

Case 8:18-cv-00475-DOC-DFM   Document 248   Filed 12/20/21   Page 13 of 28   Page ID #:6831
8:18-cv-000475-DOC - 6/3/2021 - Item Number 2

13

|       |    |                                                                         |
|-------|----|-------------------------------------------------------------------------|
|       | 1  | to you earlier.                                                          |
| 05:58 | 2  |           Good night.                                                    |
| 05:58 | 3  |           MR. KNAUF:  Your Honor, for clarification, please?             |
| 05:58 | 4  |           On the second issue of fundamental alteration,                |
|       | 5  | does Your Honor want to hear from counsel in that regard?               |
| 05:58 | 6  |           THE COURT:  Please.  I'm asking for anything in               |
|       | 7  | this regard; otherwise, it's submitted.                                 |
| 05:58 | 8  |           Thought that was clear.                                        |

05:58  9  **DEFENSE ARGUMENT RE FUNDAMENTAL ALTERATION**

05:58  10  MR. BRENNAN:  Well, with respect to the

11  fundamental alteration, the *Tamara v. El Camino Hospital*

12  case indicates that it -- whether or not a person, uh, has a

13  service dog or should be permitted to bring a service dog

14  into a facility, that's an individual assessment.

05:58  15  So there was trial testimony to the fact --

05:58  16  *(Court reporter requests clarification for the*

17  *record.)*

05:58  18  MR. BRENNAN:  -- there was an individual

19  assessment with respect to C.L.  And the treatment team at

20  the hospital determined that it was inappropriate to her

21  treatment to have the service dog on the premises during her

22  hospital admissions because it would interfere with her

23  treatment.

05:59  24  So it's not a question of whether it would

25  interfere with the entire operations on the unit or whether

1    it would interfere with other patients -- uh, and in that

2    regard, it -- it's not a health and safety issue, it's not,

3    um, going to interfere with the operations as far as other

4    patients go -- it was an individual assessment as to how it

5    would affect the treatment being provided in the hospital to

6    this particular individual, C.L.

05:59    7    And Dr. Hirsch testified at length that it was,

8    uh -- he was the, um, treating psychiatrist and the

9    psychiatrist assigned to C.L. during her hospital

10    admissions.  And he testified, in his opinion it would -- he

11    strongly agreed with excluding the dog because the dog would

12    interfere with her treatment to the extent that they want

13    these emotional responses to come up.

06:00    14    And so C.L. actually said she wants the dog there

15    to help with hypervigilance and some of her other symptoms

16    because the dog mediates those things.  It -- it prevents

17    her, so to speak, from being hypervigilant.

06:00    18    What happens in a psychiatric hospital is the

19    treatment team wants -- and the clinicians -- want this

20    person's, um, emotional responses to come up.  The patient's

21    in a safe environment so that these emotional responses that

22    they're having trouble with can come up.

06:00    23    So for the hospital, the psychiatrist to determine

24    along with other members'a the treatment team that the dog

25    would inhibit that -- by C.L.'s own assessment that that's

Case 8:18-cv-00475-DOC-DFM   Document 248   Filed 12/20/21   Page 15 of 28   Page
ID #:6833
8:18-cv-000475-DOC - 6/3/2021 - Item Number 2

15

|  | 1 | what she wants the dog there for -- uh, that is a completely |
|--|---|----|
|  | 2 | appropriate clinical decision. |
| 06:01 | 3 | So it would be a fundamental alteration to her |
|  | 4 | treatment and her treatment plan for them to make an |
|  | 5 | exception and say, yes, she can bring this dog in.  That -- |
|  | 6 | that's a clinical determination that should be made by the |
|  | 7 | medical and other health care professionals and not by the |
|  | 8 | person who's actually seeking the treatment. |
| 06:01 | 9 | If she was able to self-treat, she wouldn't need |
|  | 10 | the hospitalization.  So it's completely appropriate that on |
|  | 11 | a case-by-case basis for the hospital'a determine that this |
|  | 12 | individual's dog would -- |
| 06:01 | 13 | *(Court reporter requests clarification for the* |
|  | 14 | *record.)* |
| 06:01 | 15 | MR. BRENNAN:  -- would prevent -- forgot what I |
|  | 16 | said -- implementation of the -- of her treatment plan, of |
|  | 17 | what they intended as a means of treatment for this patient. |
| 06:02 | 18 | Uh, the other issue is she has trauma-related |
|  | 19 | issues and, um, one -- one'a the problems is that program's |
|  | 20 | no longer offered at -- it's hard -- it's unnatural for |
|  | 21 | me -- um, that program's no longer offered at Del Amo |
|  | 22 | hospital.  They no longer have that trauma teet- -- |
|  | 23 | treatment program. |
| 06:02 | 24 | So that raises, uh, a secondary issue that -- |
|  | 25 | that, if the Court were to decide that, okay.  Yes, this is |

|       |    |                                                                   |
|-------|----|-------------------------------------------------------------------|
|       | 1  | a service dog.  I've changed my mind.  This a [sic] service       |
|       | 2  | dog.                                                              |
| 06:02 | 3  | THE COURT:  Just a moment.                                         |
| 06:02 | 4  | You've got to slow down for this record.                           |
| 06:02 | 5  | MR. BRENNAN:  Sorry.                                               |
| 06:02 | 6  | THE COURT:  If you can't -- please.                               |
| 06:02 | 7  | MR. BRENNAN:  All right.                                           |
| 06:02 | 8  | If the Court reaches the secondary issue of                       |
|       | 9  | whether or not this was a fundamental alteration, one of the      |
|       | 10 | things that C.L., uh, was in insistent upon was she had to        |
|       | 11 | go to this particular program, because there was no similar       |
|       | 12 | program in the area and it would be too costly to go out of       |
|       | 13 | state or elsewhere to receive the same kind of treatment.         |
| 06:03 | 14 | So, uh, to now mandate that Del Amo accept this                   |
|       | 15 | patient to, uh -- to the trauma program with her dog is           |
|       | 16 | illogical because they no longer have this trauma program.        |
| 06:03 | 17 | She certainly has other options at this point.                    |
| 06:03 | 18 | THE COURT:  She was voluntarily admitting herself               |
|       | 19 | to Del Amo, wasn't she?                                            |
| 06:03 | 20 | MR. BRENNAN:  Correct.                                             |
| 06:03 | 21 | THE COURT:  So the initial choice lay -- was                     |
|       | 22 | really with C.L.; correct?                                         |
| 06:03 | 23 | MR. BRENNAN:  Correct.                                             |
| 06:03 | 24 | THE COURT:  Let me turn to the -- and the burden               |
|       | 25 | is on you.  And what's the standard?  In other words, what's      |

Case 8:18-cv-00475-DOC-DFM   Document 248   Filed 12/20/21   Page 17 of 28   Page
ID #:6835
8:18-cv-000475-DOC - 6/3/2021 - Item Number 2

17

|      |    |                                                              |
|------|----|--------------------------------------------------------------|
|      | 1  | my burden?                                                   |
| 06:03 | 2  | MR. BRENNAN:  That Del Amo hospital has                     |
|      | 3  | established through the evidence and testimony presented at  |
|      | 4  | trial that to admit the service dog in C.L.'s case, based on |
|      | 5  | the individual assessment, would be a fundamental           |
|      | 6  | alteration.                                                  |
| 06:04 | 7  | THE COURT:  Is it clear and convincing?  By                |
|      | 8  | preponderance?  What's the standard?                        |
| 06:04 | 9  | MR. BRENNAN:  I believe it's preponderance, but            |
|      | 10 | I'm not absolutely sure, to tell you the truth.             |
| 06:04 | 11 | THE COURT:  Counsel?                                        |
| 06:04 | 12 | MR. KNAUF:  I believe its preponderance,                   |
|      | 13 | Your Honor.                                                  |
| 06:04 | 14 | THE COURT:  Okay.  Preponderance on the other              |
|      | 15 | side.                                                        |
| 06:04 | 16 | Okay.  Let me turn back to the plaintiff.                   |
| 06:04 | 17 | MR. KNAUF:  Okay.                                           |
| 06:04 | 18 | **PLAINTIFF'S REBUTTAL RE FUNDAMENTAL ALTERATION**         |
| 06:04 | 19 | MR. KNAUF:  Your Honor, in terms of the                    |
|      | 20 | fundamental alteration defense, um, as the briefing notes,  |
|      | 21 | it's -- extremely high standard.  Congress spoke loudly.    |
|      | 22 | Uh, they want, um, as much feasible access to public places |
|      | 23 | with service dogs as possible.                              |
| 06:04 | 24 | Ninth Circuit has ruled on that in *Crowder v.*            |
|      | 25 | *Kit-* --                                                   |

Case 8:18-cv-00475-DOC-DFM   Document 248   Filed 12/20/21   Page 18 of 28   Page
ID #:6836
8:18-cv-000475-DOC - 6/3/2021 - Item Number 2

18

06:04     1          *(Court reporter requests clarification for the*

          2          *record.)*

06:04     3              MR. KNAUF:  *Crowder*, C-R-O-W-D-E-R, *v. Kitagawa*,

          4     K-I-T-A-G-A-W-A.

06:04     5              And, Your Honor, essentially, the individualized

          6     assessment that Counsel speaks of did not in fact occur.

          7     There was no discussion whatsoever.  There's no evidence in

          8     the -- in the trial testimony of anyone speaking with C.L.

          9     about any clinical judgment or any concern at all about

         10     whether or not Aspen would interfere with treatment.  So

         11     that's clearly established in the record.

06:05    12              All opinions of the medical staff were assumptions

         13     related to -- related to a fundamental misunderstanding of

         14     what a service dog is.  Um, and under the law, um, the

         15     service dog is part of a unit with the handler, and under

         16     the law the unit is allowed to attend public places such as

         17     hospitals.  And the DOJ guidance is clear:  Hospitals are

         18     included.  All places where the patient can go, the dog is

         19     also allowed because it is part of the handler.

06:06    20              The only time a hospital gets to kick out a dog is

         21     if it's not housebroken, it's not under the owner's control,

         22     it's a direct threat to the health or safety of other

         23     people; or somehow the dog's presence would be a fundamental

         24     alteration of the program, the entire experience, 24/7, for

         25     the better part of one to two weeks, not a one-hour group

Case 8:18-cv-00475-DOC-DFM   Document 248   Filed 12/20/21   Page 19 of 28   Page
ID #:6837
8:18-cv-000475-DOC - 6/3/2021 - Item Number 2

19

1   therapy program for which the dog could sit in the room and

2   not interfere whatsoever with any therapy.

06:06   3        None of this was explored with C.L.  None of this

4   was discussed with C.L.  She, uh, is extremely -- she's a

5   Ph.D.  She's extremely well-versed in, you know, what her

6   dog is supposed to do and not supposed to do.

06:06   7        And -- and had there been a discussion, this

8   perhaps would be a different case, but there was no

9   individualized assessment.

06:07  10        THE COURT:  Is it necessary to have a discussion

11   with C.L.?  Or is it only necessary from the defense's

12   argument and perspective that that discussion took place

13   amongst the doctors?  And then it becomes, once again, a

14   credibility issue, you know, how much do I believe that that

15   occurred?  And if so, why wasn't that conveyed?  I

16   understand that, but I'm not certain that replaying that

17   information to C.L. is the criteria or not.

06:07  18        By the same token, I need to go back in the record

19   now and take a very close look because my memory is at trial

20   there was a discussion about that.  And someplace in my

21   notes I have a recollection, or my memory, at least -- I'll

22   dig out my original notes plus the transcript -- that there

23   was a discussion and evidence was presented that, in fact,

24   the Del Amo team had somehow determined that this was

25   detrimental.  And I'll -- I'll find that in the transcripts,

|   | 1 | apparently. |
|---|---|---|
| 06:08 | 2 | MR. KNAUF:  Certainly, Your Honor. |
| 06:08 | 3 | We -- plaintiff does not believe that it's there. |
|   | 4 | And certainly -- |
| 06:08 | 5 | THE COURT:  Well, I know -- I know it's there, |
|   | 6 | Counsel, because I recall that.  Unfortunately, I don't |
|   | 7 | recall the extent of it.  So each of you now have until -- |
|   | 8 | give me a period of time because you're going to go through |
|   | 9 | the transcripts and point this out to me. |
| 06:08 | 10 | MR. KNAUF:  I can give you one cite of -- |
| 06:08 | 11 | THE COURT:  No.  Not now.  It's going -- |
| 06:08 | 12 | MR. KNAUF:  Okay. |
| 06:08 | 13 | THE COURT:  It's going to be in writing. |
| 06:08 | 14 | You're going to disavow it's there. |
| 06:08 | 15 | And, Counsel, you're going to find it if it is |
|   | 16 | there. |
| 06:08 | 17 | MR. KNAUF:  And this is the discussion of whether |
|   | 18 | it was discussed with C.L.? |
| 06:08 | 19 | THE COURT:  No.  I want the full panoply, whether |
|   | 20 | discussed with C.L. or whether it was discussed amongst the |
|   | 21 | staff.  In other words, I don't know what's there. |
| 06:08 | 22 | I do recall, though, when I go back, I promise you |
|   | 23 | there was a discussion at trial about the team having |
|   | 24 | determined that this was detrimental to C.L.'s well-being, |
|   | 25 | to her treatment.  I know that as a fact. |

06:09  1          MR. KNAUF:  Correct.

06:09  2          THE COURT:  I just don't -- well, you said it

       3  wasn't true a moment ago.

06:09  4          That discussion took place, and I have a clear

       5  recollection of that.

06:09  6          MR. KNAUF:  It -- Your Honor, appreciate the

       7  distinction.  I apologize for -- for my error.

06:09  8          THE COURT:  No.  I think in good faith you're

       9  trying to narrow it.  But I want the whole discussion.  I

      10  can't remember if this was just amongst the team, if it was

      11  conveyed to C.L., if it even matters.  But I want you now to

      12  do the work and to find that for the Court.

06:09 13          MR. KNAUF:  Understood, Your Honor.  It -- certain

      14  part of that is in plaintiff's brief, Your Honor.  And we

      15  can -- we're happy to supplement that.  Happy to do it.

06:09 16          THE COURT:  You don't have a choice, but thank

      17  you.

06:09 18          MR. KNAUF:  I -- I --

06:09 19          THE COURT:  I'm going to joke with you for a

      20  moment.  That's an order.

06:09 21          Now, all I'm doing is trying to be courteous to

      22  give you some time to ferret that out, you know, with one

      23  another so I don't disturb your holiday or your weekend or

      24  your travel plans or whatever.

06:09 25          MR. KNAUF:  And, if I may, Your Honor?

8:18-cv-000475-DOC - 6/3/2021 - Item Number 2

22

| | | |
|---|---|---|
| 06:09 | 1 | Understanding the Court's concern about the level |
| | 2 | of deference for clinical determinations -- |
| 06:10 | 3 | THE COURT:  Right. |
| 06:10 | 4 | MR. KNAUF:  -- that's what this is about -- |
| 06:10 | 5 | THE COURT:  Right. |
| 06:10 | 6 | MR. KNAUF:  -- um, your Honor, *Bragdon v. Abbott* |
| | 7 | talks about this. |
| 06:10 | 8 | THE COURT:  Counsel, listen:  I'm offering you |
| | 9 | everything -- |
| 06:10 | 10 | MR. KNAUF:  Okay.  Okay. |
| 06:10 | 11 | THE COURT:  I'm offering you a clear record on |
| | 12 | both sides.  And what you're doing is taking a swing at the |
| | 13 | wind.  I'm offering you additional briefing. |
| 06:10 | 14 | MR. KNAUF:  An additional hearing, Your Honor? |
| 06:10 | 15 | THE COURT:  Absolutely. |
| 06:10 | 16 | MR. KNAUF:  Understood. |
| 06:10 | 17 | THE COURT:  I'm offering both of you everything, |
| | 18 | so I hope to get this right.  And what -- |
| 06:10 | 19 | MR. KNAUF:  Unders- -- |
| 06:10 | 20 | THE COURT:  -- I'm hearing now, "Well, Judge, if |
| | 21 | you look at this and you look at this" -- in fact, you can |
| | 22 | supplement the record, as far as I'm concerned.  I don't |
| | 23 | think it's necessary.  I think it's a decision I make on the |
| | 24 | original record.  But I'm asking very humble questions. |
| 06:10 | 25 | What is the standard? |

8:18-cv-000475-DOC - 6/3/2021 - Item Number 2

23

06:10    1              Is it really a preponderance on a fundamental

         2    alteration?

06:10    3              Does this really have to be conveyed to C.L.?

06:10    4              Is it good faith discussion within the team?

06:10    5              Or, what happens if it's not credible, from my

         6    perspective? -- so I never even get there with fundamental

         7    alteration.

06:10    8              MR. KNAUF:  Under -- understood, Your Honor.

06:10    9              THE COURT:  But I know it was in the record.  I

         10   know there was some discussion about the team having

         11   stated -- I just don't recall whether this was conveyed to

         12   C.L. or not.  I don't recall the extent of this.  I need

         13   your help.  But if you don't give it to me, then I'll make

         14   the best decision I can.  I'm offering you both everything.

06:11    15             MR. KNAUF:  Understood, Your Honor.

06:11    16             THE COURT:  So what do you need?  Give me a time

         17   schedule.

06:11    18             MR. KNAUF:  Two weeks?

06:11    19             THE COURT:  Fine.

06:11    20             MR. BRENNAN:  We would agreed with that.

06:11    21             THE COURT:  Why don't you two have a discussion.

06:11    22             MR. KNAUF:  We're -- we're -- agree --

06:11    23             THE COURT:  That's an order.  Get up, move towards

         24   each other, get a calendar, tell me the dates that you'd

         25   like.

8:18-cv-000475-DOC - 6/3/2021 - Item Number 2

24

```
06:11   1              MR. KNAUF:  Uh, hearing date --

06:11   2              THE COURT:  No, Counsel.  That's an order.  It's

        3   not a request now.  Talk to each other now.

06:11   4              MR. KNAUF:  We agreed on --

06:11   5              THE COURT:  Now, Counsel.  Thank you very much.

        6   We're wasting time.  I'm being kind and trying to shape that

        7   around your families, your other court appearances.

06:11   8         (Counsel confer.)

06:12   9              MR. KNAUF:  Your Honor, parties are agreed on

       10   briefing within two weeks --

06:12  11              THE COURT:  Okay.

06:12  12              MR. KNAUF:  -- of today.

06:12  13              THE COURT:  Give me a date.

06:12  14              MR. KNAUF:  That date would be -- Ay-yi-yi.  Well,

       15   let's make it that Friday.

06:12  16              Friday the 18th for briefing, simultaneous

       17   briefing.

06:12  18              THE COURT:  Okay.

06:12  19              MR. KNAUF:  And then we have -- hearing the

       20   following week.

06:12  21              THE COURT:  Which would be?

06:12  22              MR. KNAUF:  We decided a week later, according to

       23   the Court's --

06:12  24              THE COURT:  No.  I want the date now.

06:13  25              MR. KNAUF:  That would be 24th or 25th.  Uh, can't
```

|       |    |                                                        |
|-------|----|--------------------------------------------------------|
|       | 1  | do 25th.  24th of June.                                |
| 06:13 | 2  | THE COURT:  Kelly, I'm here so --                      |
| 06:13 | 3  | MR. KNAUF:  Or 23rd.                                   |
| 06:13 | 4  | THE COURT:  No, Counsel.  Quit.  Just give me a        |
|       | 5  | date.  That's all I'm asking.  We've gone from the 24th to |
|       | 6  | the 23rd, to the 25th.  I'm just humbly saying to you, if I |
|       | 7  | impose it on you, that will be end of the discussion.  So if |
|       | 8  | I would've said the 24th and you had another date, we  |
|       | 9  | wouldn't have another discussion about that.           |
| 06:13 | 10 | I'm humbly asking you to guide your own calendars,     |
|       | 11 | for goodness sakes.  And I can't get an answer from you, |
|       | 12 | either one of you.                                     |
| 06:13 | 13 | MR. KNAUF:  Okay.  Your Honor, we're gonna need        |
|       | 14 | to --                                                  |
| 06:13 | 15 | THE COURT:  No.  You two are going to have a           |
|       | 16 | discussion now and quit wasting my court reporter's fingers. |
|       | 17 | That's an order.  Come up with a date and come up with a |
|       | 18 | time.  And the Court's going to be available to you.   |
| 06:13 | 19 | *(Court and court clerk confer.)*                      |
| 06:14 | 20 | THE COURT:  Counsel --                                 |
| 06:14 | 21 | MR. KNAUF:  June 29th for the hearing, Your Honor?     |
| 06:14 | 22 | THE CLERK:  That is not available, Your Honor.         |
| 06:14 | 23 | THE COURT:  Nope.  Not available.  Pick another        |
|       | 24 | date.                                                  |
| 06:14 | 25 | MR. KNAUF:  28th.                                      |

8:18-cv-000475-DOC - 6/3/2021 - Item Number 2

26

| 06:14 | 1 | THE CLERK:  Not available, Your Honor. |
| 06:14 | 2 | THE COURT:  Not available. |
| 06:14 | 3 | THE CLERK:  Gonna have to be July. |
| 06:14 | 4 | MR. BRENNAN:  Yes, okay. |
| 06:14 | 5 | THE CLERK:  July 12th. |
| 06:14 | 6 | MR. BRENNAN:  July 12th? |

06:14   7      MR. KNAUF:  Is that the first available, July?  If

8    that's the first available, July, then that's what it is.

06:14   9      THE COURT:  Okay.

06:14  10      Well, listen, then very humbly thank both of you.

11    Is that agreeable with each of the parties?

06:15  12      MR. BRENNAN:  Yes.

06:15  13      THE COURT:  Okay.  That will be our date for

14    hearing.

06:15  15      And I forgot, in this mishmash of dates, is there

16    the simultaneous briefing due on...?

06:15  17      MR. BRENNAN:  The 18th.  June 18th.

06:15  18      THE COURT:  June 18th?

06:15  19      MR. KNAUF:  Yes, Your Honor.

06:15  20      THE COURT:  June 18th.

06:15  21      Is there a reply that you're going to be

22    requesting?  Because I'm not going to take a *sua sponte*

23    reply.  In other words, if you want a response to the

24    simultaneous briefing, I'll give it to you.  But what I

25    won't do is accept one of you then deciding that you're

| | | |
|---|---|---|
| | 1 | going to reply, unless you both agree.  But you could each |
| | 2 | have a reply after the simultaneous briefing, if you want. |
| 06:15 | 3 | MR. KNAUF:  Plaintiff would suggest no replies. |
| 06:15 | 4 | MR. BRENNAN:  We would agree:  No replies. |
| 06:15 | 5 | THE COURT:  Okay.  Then we've got the date.  Okay? |
| 06:15 | 6 | Then, listen, drive safely.  Take good care of |
| | 7 | yourselves. |
| 06:15 | 8 | MR. KNAUF:  Thank you, Your Honor. |
| 06:15 | 9 | MR. BRENNAN:  Thank you. |
| 06:15 | 10 | THE COURT:  Thank you very much. |
| 06:15 | 11 | *(Proceedings adjourned at 6:15 p.m.)* |
| 06:15 | 12 | -oOo- |
| 06:15 | 13 | |
| | 14 | |
| | 15 | |
| | 16 | |
| | 17 | |
| | 18 | |
| | 19 | |
| | 20 | |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |

8:18-cv-000475-DOC - 6/3/2021 - Item Number 2

28

```
06:15    1                         -oOo-

06:15    2

06:15    3                      CERTIFICATE

06:15    4

06:15    5         I hereby certify that pursuant to Section 753,

         6    Title 28, United States Code, the foregoing is a true and

         7    correct transcript of the stenographically reported

         8    proceedings held telephone in the above-entitled matter and

         9    that the transcript page format is in conformance with the

        10    regulations of the Judicial Conference of the United States.

06:15   11

06:15   12    Date:  December 20, 2021

06:15   13

06:15   14

06:15
06:15                              /s/ Debbie Gale
06:15   15                         _____
06:15                              DEBBIE GALE, U.S. COURT REPORTER
06:15   16                         CSR NO. 9472, RPR, CCRR

06:15   17

        18

        19

        20

        21

        22

        23

        24

        25
```